*Hearing Date and Time: May 14, 2014 at 10:30 a.m. (prevailing Eastern Time)*
*Objection Deadline: May 7, 2014 at 4:00 p.m. (prevailing Eastern Time)*

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Adam C. Rogoff
Stephen D. Zide
Anupama Yerramalli
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Proposed Counsel for the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                                                   :
In re:                                                             :    Chapter 11
                                                                   :
GENCO SHIPPING & TRADING LIMITED, et al.,                          :    Lead Case No. 14-11108 (SHL)
                                                                   :
                                Debtors.                            :    Jointly Administered
                                                                   :
-------------------------------------------------------------------X

### DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF BLACKSTONE ADVISORY PARTNERS L.P. AS FINANCIAL ADVISOR TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

TO THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE:

Genco Shipping & Trading Limited ("**Genco**") and certain of its direct and indirect

subsidiaries, as chapter 11 debtors and debtors in possession (each a "**Debtor**" and collectively

the "**Debtors**"[1] or the "**Company**") in the above-referenced chapter 11 cases (the "**Chapter 11**

---

[1] The Debtors and, if applicable, the last four digits of their taxpayer identification numbers are as follows: Genco Shipping & Trading Limited (9758), Genco Investments LLC, Genco Management (USA) LLC (3865), Genco RE Investments LLC, Genco Ship Management LLC (7604), Genco Acheron Limited (9293), Genco Aquitaine Limited (8217), Genco Ardennes Limited (8215), Genco Augustus Limited (3622), Genco Auvergne Limited (8233), Genco Avra Limited (5557), Genco Bay Limited (5558), Genco Beauty Limited (9761), Genco Bourgogne Limited (8236), Genco Brittany Limited (8237), Genco Carrier Limited (9763), Genco Cavalier LLC (9764), Genco Challenger Limited (6074), Genco Champion Limited (6073), Genco Charger Limited (6072), Genco Claudius Limited (3620), Genco Commodus Limited (3619), Genco Constantine Limited (3617), Genco Explorer Limited (9764), Genco Hadrian Limited (3608), Genco Hunter Limited (6158), Genco Knight Limited (9773), Genco Languedoc Limited (8238), Genco Leader Limited (9774), Genco Loire Limited (8239), Genco London Limited (3610), Genco Lorraine

Cases"), hereby submit this application (the "**Application**") for the entry of an order (the "**Order**"), substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Company to retain and employ Blackstone Advisory Partners L.P. (the "**Advisor**") as financial advisor to the Company *nunc pro tunc* to the Petition Date (as defined herein), in accordance with the terms and conditions set forth in the engagement letter between Genco and the Advisor, dated as of December 23, 2013 (the "**Engagement Letter**"), a copy of which is annexed as **Exhibit B** attached hereto and incorporated by reference herein, pursuant to sections 105(a), 327 and 328 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), (b) approving the provisions of the Engagement Letter, including the compensation arrangement and indemnification, contribution and reimbursement provisions set forth therein, (c) modifying the time-keeping requirements of Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**") and General Order M-447, the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases ("**General Order M-447**") in connection with the Advisor's engagement, and (d) granting such other relief as is just and proper.  In support of this Application, the Company submits the Declaration of Jamie O'Connell, a Senior Managing Director and member of the Restructuring and Reorganization Group of the Advisor (the "**O'Connell Declaration**")], a copy of which is attached hereto as **Exhibit C**, and respectfully represents as follows:

---

Limited (8242), Genco Mare Limited (5641), Genco Marine Limited (9775), Genco Maximus Limited (3613), Genco Muse Limited (5276), Genco Normandy Limited (8243), Genco Ocean Limited (5645), Genco Picardy Limited (8244), Genco Pioneer Limited (9767), Genco Predator Limited (6075), Genco Progress Limited (9776), Genco Prosperity Limited (9777), Genco Provence Limited (8246), Genco Pyrenees Limited (8599), Genco Raptor LLC (9767), Genco Reliance Limited (9768), Genco Rhone Limited (8248), Genco Spirit Limited (5650), Genco Success Limited (9769), Genco Sugar Limited (9778), Genco Surprise Limited (9385), Genco Thunder LLC (9769), Genco Tiberius Limited (3614), Genco Titus Limited (3615), Genco Vigour Limited (9770), Genco Warrior Limited (6076), and Genco Wisdom Limited (9771). The Debtors' business address is 299 Park Avenue, New York, NY 10171. Neither Baltic Trading Limited nor its subsidiaries are Debtors.

## BACKGROUND, JURISDICTION AND VENUE

1.      On April 21, 2014 (the "**Petition Date**"), the Company filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 327, and 328 of the Bankruptcy Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Rules 2014-1 and 2016-1.

## THE COMPANY'S BUSINESS AND RESTRUCTURING EFFORTS

5.      With a fleet of fifty-three (53) vessels (each a "**Vessel**") having a carrying capacity of approximately 3,810,000 deadweight tons traversing the globe, the Company is one of the world's largest drybulk shippers. Operating in over 1,000 ports of call located in over 110 countries, including in the Far East, South and Central America, Europe, West Africa, and the United States, the Company charters its sizable fleet worldwide to third-party customers through fixed-rate and spot-market related time charters, the latter of which makes the Company's revenues susceptible to rate fluctuations in the drybulk shipping market. Along with their thirty-three (33) direct employees based out of the Company's global (and only) headquarters in Manhattan, New York, the Company relies upon third-party technical ship managers to crew, manage, supply and maintain the Vessels.

6.      Substantially all of the Company's liabilities consist of funded debt (*i.e.*, non-trade debt and derivative liability). As of the date hereof, the Company had over $1.3

billion outstanding under its secured and unsecured debt facilities, comprised of the following: (a) a $1.377 billion senior secured credit facility with Wilmington Trust, National Association as successor administrative agent and successor collateral agent, which matures on July 20, 2017 (as amended, the "**2007 Credit Facility**"); (b) a $100 million senior secured credit facility with Crédit Agricole Corporate and Investment Bank, as agent and security trustee, which matures on August 17, 2017 (as amended, the "**$100 Million Credit Facility**"); (c) a $253 million senior secured credit facility with Deutsche Bank Luxembourg S.A. as agent, which matures on August 14, 2015 (as amended, the "**$253 Million Credit Facility**", together with the 2007 Credit Facility and the $100 Million Credit Facility, the "**Credit Facilities**"); and (d) $125 million of unsecured 5% Convertible Senior Notes due 2015 (the "**Convertible Notes**") under an indenture dated July 27, 2010, with the Bank of New York Mellon as indenture trustee. The Vessels – which constitute substantially all of the Company's tangible material assets – are pledged under the Credit Facilities pursuant to the terms of the applicable credit and security documents relating to such facilities.

7.     As described in the First Day Declaration, in the months prior to the Petition Date, the Company evaluated, in consultation with its advisors, options to restructure the Company's liabilities and deleverage its balance sheet while increasing liquidity through a new capital investment. The Company engaged in extensive discussions and negotiations with representatives of the prepetition agents and the majority of the lenders under each of the Credit Facilities, as well as an ad hoc group of holders of Convertible Notes, on the terms of a consensual restructuring.

8.     On April 3, 2014, the Company entered into a Restructuring Support Agreement (the "**RSA**") with over 98% of the lenders holding claims under the 2007 Credit

Facility, 100% of the lenders holding claims under the $100 Million Credit Facility, 100% of the lenders holding claims under the $253 Million Credit Facility, and over 82% of the holders of claims under the Convertible Notes. The RSA provides for the Company to solicit acceptances for a prepackaged plan of reorganization (the "**Prepack Plan**")[2] which, through a global settlement, (a) deleverages the Company's balance sheet by approximately $1.2 billion in debt through a conversion of all of the debt under the 2007 Credit Facility and the Convertible Notes into equity of Reorganized Genco; (b) amends and restates the terms of each of the $100 Million Credit Facility and the $253 Million Credit Facility; and (c) through forgoing value otherwise distributable to senior or other creditors, (i) leaves all other unsecured creditors unimpaired, and (ii) allows for existing holders of equity interests in Genco to participate in the Company's long-term recovery through the issuance of warrants. In addition, the Prepack Plan is supported by a fully committed $100 million rights offering. The hallmark of the Prepack Plan is to facilitate a global settlement with the Supporting Creditors to the RSA that allows for the Company's global operations to remain unaffected by the financial restructuring and, in exchange for proceeding on an expeditious basis, provide a recovery to all stakeholders, including equity holders, through a voluntary reallocation of value.

9. The Company distributed the Prepack Plan and Disclosure Statement for the Prepack Plan to those holders of impaired claims entitled to vote, and after receiving acceptances from the requisite amount of holders of claims in the Credit Facilities, the Company commenced these Chapter 11 Cases. The Company will continue to accept votes postpetition on the Prepack Plan from the Convertible Noteholders, while moving towards confirmation of the

---

[2] Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Prepack Plan.

Prepack Plan and emergence from Chapter 11 in accordance with the consensual milestones in the RSA.

10.    Additional factual background regarding the Company, including its business operations, capital and debt structure, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the First Day Declaration.

## RELIEF REQUESTED

11.    By this Application, the Company seeks entry of an order (a) authorizing the employment and retention of the Advisor as the Company's financial advisor, *nunc pro tunc* to the Petition Date, in accordance with the terms and conditions set forth in the Engagement Letter; (b) approving the provisions of the Engagement Letter, including the proposed compensation arrangement (the "**Fee Structure**") and the indemnification, contribution and reimbursement provisions set forth in the Engagement Letter under section 328(a) of the Bankruptcy Code; (c) modifying the time-keeping requirements of Local Rule 2016-1 and General Order M-447 in connection with the Advisor's engagement; and (d) granting such other relief as is just and proper.

## THE ADVISOR'S RETENTION

12.    To effectively restructure the Company's businesses and effectuate a successful Prepack Plan of reorganization, the Company believes that it requires the services of a capable and experienced financial advisory firm such as the Advisor.  Indeed, the Advisors' retention is integral to the Company's success in these Chapter 11 Cases because the Advisor's resources and capabilities, together with its prepetition experience advising the Company, complements the services offered by the Company's other restructuring advisors.

13.     Accordingly, the Company proposes to engage the Advisor as its financial advisor in these Chapter 11 Cases, and respectfully submits that the Advisor's retention is in the best interest of the Company, its estates, and other parties-in-interest.

### THE ADVISOR'S QUALIFICATIONS

14.     As detailed in the O'Connell Declaration, the Advisor's affiliate, The Blackstone Group L.P. (collectively with the Advisor and their affiliates, "**Blackstone**") is a leading global alternative asset manager and provider of financial advisory services listed on the New York Stock Exchange (ticker symbol: BX).  The Advisor's restructuring and reorganization advisory operation is one of the leading advisory services providers to companies and creditors in restructurings and bankruptcies.  The Advisor's professionals have extensive experience working with financially troubled companies in complex financial restructurings.  Since 1991, the Advisor has advised on hundreds of distressed situations, both in and out of bankruptcy proceedings, involving over $1 trillion of total liabilities.

15.     The members and senior executives of the Advisor's restructuring and reorganization practice have been particularly active in large, complex and high-profile bankruptcies and restructurings, having advised in the following chapter 11 reorganizations: AbitibiBowater Inc.; Central European Distribution Corp. (CEDC); Delta Air Lines, Inc.; Eastman Kodak Company; Enron Corporation; Excel Maritime Carriers, Ltd.; Flying J. Inc.; Houghton Mifflin Harcourt Publishing Company; Lee Enterprises Inc.; Los Angeles Dodgers LLC; Patriot Coal Corporation; Nortek, Inc.; SemGroup; Simmons Bedding Company; Tribune Co.; W. R. Grace & Co.; and Winn-Dixie Stores, Inc.  In addition, the restructuring group has provided general restructuring advice to such major companies as Ford Motor Company, The Goodyear Tire & Rubber Company, International Lease Finance Corporation (ILFC) and Xerox Corporation.

## ADVISOR'S PREPETITION SERVICES

16.     The Advisor was retained by the Company on December 10, 2013 to provide financial advice with respect to the Company's restructuring.  During the approximately four months before the Petition Date, the Advisor was extensively involved in designing and implementing the Prepack Plan.  In particular, the Advisor engaged in extensive due diligence of the Company's business, including its operations, assets, capital structure, contractual arrangements and cash management in order to build a foundation for a restructuring strategy.  The Advisor worked closely with Company personnel to develop a dynamic financial model and a comprehensive four-year business plan to forecast the Company's operational performance, cash flows and liquidity.  This financial model enabled the Advisor and the Company to evaluate restructuring frameworks.  The Advisor was then responsible for presenting the business plan and a restructuring framework to financial and legal advisors to the various creditor groups as well as to certain holders of 2007 Facility claims, $253 million Facility claims, $100 million Facility claims and Convertible Note claims.  The Advisor was active in the negotiations of the restructuring framework with the various creditor groups.  In addition, the Advisor participated in numerous meetings of the Company's Board of Directors during the period leading up to the Petition Date.  The Advisor also worked with management to develop a 13-week cash flow forecast, negotiated the terms of the cash collateral motion and assisted counsel with various first-day pleadings.  Finally, the Advisor supported counsel in the development of the Disclosure Statement and other Plan-related documents.

17.     As a result of the prepetition work performed by the Advisor on behalf of the Company, the Advisor has acquired significant knowledge of the Company's financial affairs, debt structure, business operations, capital structure, key stakeholders, financing documents and other related material information.  Likewise, in providing prepetition services to

the Company, the Advisor's professionals have worked closely with the Company's management, board of directors, and other advisors.  If this Application is approved, several of the Advisor's professionals, all with substantial expertise in the areas discussed above, will continue to provide services to the Company.  Notably, Timothy Coleman and Jamie O'Connell will lead the team of the Advisor's professionals and will work closely with the Company's management and other professionals throughout the reorganization process.  Accordingly, as a result of the Advisor's representation of the Company prior to the commencement of these Chapter 11 Cases and the Advisor's extensive experience representing chapter 11 debtors, the Advisor is well qualified to provide these services and represent the Company during these Chapter 11 Cases.

### SERVICES TO BE PROVIDED

18.    Subject to further order of the Court, and consistent with the terms of the Engagement Letter, the Advisor's anticipated services in these Chapter 11 Cases include the following:[3]

    a.    Assist in the evaluation of the Company's businesses and prospects;

    b.    Assist in the development of the Company's long-term business plan and related financial projections;

    c.    Assist in the development of financial data and presentations to the Company's Board of Directors, various creditors and other third parties;

    d.    Analyze the Company's financial liquidity and evaluate alternatives to improve such liquidity;

---

[3] The summary of the Engagement Letter in this Application is qualified in its entirety by reference to the provisions of the Engagement Letter.  To the extent there is any discrepancy between the summary contained in the Application and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control.  Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Engagement Letter.

e.   Analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the Restructuring;

f.   Provide strategic advice with regard to restructuring or refinancing the Company's Obligations;

g.   Evaluate the Company's debt capacity and alternative capital structures;

h.   Participate in negotiations among the Company and its creditors, suppliers, lessors and other interested parties;

i.   Value securities offered by the Company in connection with a Restructuring;

j.   Advise the Company and negotiate with lenders with respect to potential waivers or amendments of various credit facilities;

k.   Assist in arranging financing for the Company (which may include, without limitation, debtor in possession financing), as requested;

l.   Provide expert witness testimony concerning any of the subjects encompassed by the other financial advisory services; and

m.   Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring, as requested and mutually agreed.

## PROFESSIONAL COMPENSATION

19.   The Advisor's decision to advise and assist the Company in connection with these Chapter 11 Cases is subject to its ability to be retained in accordance with the terms of the Engagement Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code.

20.   Specifically, the Engagement Letter provides for the following compensation (the "**Fee Structure**"):

a.   <u>Monthly Fee</u>.  The Company shall pay the Advisor a monthly advisory fee (the "**Monthly Fee**") of $175,000 in cash, with the first Monthly Fee paid upon the execution of the Engagement Letter by both parties and such additional

installments of such Monthly Fee payable in advance on each monthly anniversary of the "Effective Date" (December 10, 2013). Commencing with the fourth Monthly Fee, 50% of the Monthly Fee shall be credited against the Restructuring Fee (defined below) when and if paid and commencing with the seventh Monthly Fee, 100% of the Monthly Fee shall be credited against the Restructuring Fee when and if paid (the "**Crediting Mechanism**").

b.    Capital Raising Fee. The Company shall pay the Advisor a capital raising fee (the "**Capital Raising Fee**") calculated as 1.0% of the total issuance size for an affirmative debtor in possession financing facility (exclusive of cash collateral) and 5.0% of the issuance amount for an equity financing on new money raised from external parties who are not creditors of the Company (excluding any public offering of securities.)

c.    Restructuring Fee. The Company shall pay a restructuring fee of $5,750,000 (the "**Restructuring Fee**") upon the consummation of a Restructuring (as defined in the Engagement Letter)[4] and subject to the Crediting Mechanism.

d.    Expense Reimbursements.

(1)    In addition to the fees described above, the Company agrees to reimburse the Advisor for all reasonable and documented out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of Advisor's external legal counsel (not to exceed $75,000 except as provided in the Indemnification Agreement (as defined below) without the Company's prior consent in its sole discretion) and other necessary expenditures,

---

[4]    As provided for in the Engagement Letter, a Restructuring shall be deemed to have been consummated upon (a) the binding execution and effectiveness of all necessary waivers, consents, amendments or restructuring agreements between the Company and its creditors involving the compromise of the face amount of such Obligations (as defined within the Engagement Letter) or the conversion of all or part of such Obligations into alternative securities, including equity, in the case of an out-of-court restructuring; or (b) the execution, confirmation and consummation of a Prepack Plan of Reorganization pursuant to an order of the Bankruptcy Court, in the case of an in-court restructuring. A Restructuring shall be deemed to exclude any assumption at face value of Obligations in connection with the sale or disposition of any subsidiaries, joint ventures, assets or lines of business of the Company and the restructured Obligations shall exclude any Obligations in respect of which a Restructuring Fee has previously been paid.

payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

(2)     Further, in connection with the reimbursement, contribution and indemnification provisions set forth in the Engagement Letter and Attachment A of the Engagement Letter (the "**Indemnification Agreement**"), which is incorporated herein by reference, the Company agrees to reimburse each Indemnified Party (as defined in the Indemnification Agreement) for all actual, reasonable and documented out-of-pocket expenses (including actual, reasonable and documented fees, expenses and disbursements of external legal counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, or otherwise responding to, or assisting in the defense of any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement (as defined in the Indemnification Agreement) or the Indemnification Agreement, whether or not pending or threatened, whether or not any Indemnified Party is a party, whether or not resulting in any liability and whether or not such action, claim, suit, investigation or proceeding is initiated or brought by us.

21.     If at any time before the expiration of twelve (12) months following the termination of the Advisor's engagement, a definitive agreement with respect to a Restructuring is executed and a Restructuring is thereafter consummated, the Advisor is entitled to the Restructuring Fee, except if the Advisor terminates its engagement for any reason or the Company terminates the Advisor's engagement for cause.

22.     The Advisor intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, General Order M-447 and any other applicable procedures and orders of the Court, including any order granting this Application (to the extent compliance is not waived).  To that end, contemporaneously herewith, the Company has filed its Motion for Entry of an Order Establishing Procedures for Interim Compensation and

Reimbursement of Expenses of Professionals, pursuant to which the Advisor intends to submit requests for compensation.

23.     Further, because the Company is seeking to retain the Advisor under section 328(a) of the Bankruptcy Code, the Company requests that: (a) the Advisor not be required to file time records in accordance with Local Rule 2016-1 and General Order M-447 and (b) except with respect to the United States Trustee (the "**U.S. Trustee**") and in recognition of the practice in this jurisdiction, the Advisor's compensation and expense reimbursements not be subject to any standard of review other than section 328(a) of the Bankruptcy Code (for the avoidance of doubt, except with respect to the U.S. Trustee, the Advisor's fees and expenses would not be subject to review under section 330 of the Bankruptcy Code).

24.     The Advisor will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these Chapter 11 Cases.  However, as the Advisor's compensation will be calculated and paid based on certain transaction fees (in addition to flat Monthly Fees), the Advisor requests that it not be required to file time records in accordance with General Order M-447.  Rather, the Advisor will maintain records, in summary format, of services rendered for the Company, including summary descriptions of those services, the approximate time expended in providing those services in half-hour increments and the identity of the individuals who provided those services. The Advisor will present such records to the Court in its fee applications. To the extent that the Advisor would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, other applicable procedures and orders of the Court, the Company respectfully requests that this Court waive such requirements.  For the avoidance of doubt, the Company requests permission for the Advisor to submit only summary

time records kept in half-hour increments for the Advisor's personnel in its applications for payment of compensation.

25.    The Advisor and the Company have also agreed that in the event the Advisor seeks reimbursement for attorneys' fees during the term of the Chapter 11 Cases, the invoices and supporting time records from such attorneys shall be included in the Advisor's own application, both interim and final, and such invoices and time records shall be subject to General Order M-447 and the approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a) of the Bankruptcy Code.

26.    The Company believes that the Fee Structure is consistent with, and typical of, compensation arrangements entered into by the Advisor and other comparable firms in connection with the rendering of similar services under similar circumstances.   In determining the Fee Structure and the reasonableness of such compensation, the Company compared the Advisor's fee proposal to other proposals received by the Company in the financial advisor selection process. After such comparison, followed by discussions and arm's-length negotiations, the Company believes that the Fee Structure is reasonable, market-based, and designed to compensate the Advisor fairly for its work and to cover customary overhead expenses.

27.    The Advisor's strategic and financial expertise, as well as its financing skills and restructuring capabilities, some or all of which has and will be required by the Company during the term of the Advisor's engagement, were all important factors to the Company in determining the Fee Structure.  The Company believes that the ultimate benefit of the Advisor's services hereunder cannot be measured by reference to the number of hours to be

expended by the Advisor's professionals in the performance of such services.  The Company and the Advisor have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of the Advisor and its professionals in connection with these Chapter 11 Cases and in light of the fact that: (a) such commitment may foreclose other opportunities for the Advisor and (b) the actual time and commitment required of the Advisor and its professionals to perform its services under the Engagement Letter may vary substantially from week-to-week and month-to-month, creating "peak load" issues for the Advisor.

28.     As of the Petition Date, the Company does not owe the Advisor any fees for services performed or expenses incurred under the Engagement Letter.  According to the books and records of the Company, during the 90-day period before the Petition Date, the Advisor received approximately $885,637 for professional services performed and expenses incurred.[5]  Pursuant to the terms of the Engagement Letter, the Advisor is paid monthly, in advance.  As of the Petition Date, the Company had a credit balance of approximately $110,833; such credit balance will be applied against the Company's first postpetition invoice.

### INDEMNIFICATION, CONTRIBUTION AND REIMBURSEMENT OF ADVISOR

29.     As part of the overall compensation payable to Advisor under the terms of the Engagement Letter, the Company has agreed to certain indemnification, contribution, and reimbursement obligations set forth in the Indemnification Agreement and incorporated herein by reference.

---

[5] The funds paid to the Advisor in the 90-day period preceding filing cover fees and expenses for the five-month period beginning December 10, 2013 and ending May 9, 2014.

30.     The terms of the Engagement Letter and Indemnification Agreement were fully negotiated at arm's-length between Genco and the Advisor and the Company respectfully submits that these indemnification, contribution, and reimbursement provisions are reasonable.

31.     Moreover, consistent with the practice in this jurisdiction, the Company requested, and the Advisor agreed, that the Court approve the indemnification, contribution, and reimbursement provisions reflected on Attachment A to the Engagement Letter.  The Company believes that the indemnification provisions of the Engagement Letter are appropriate under the circumstances.

### EFFORTS TO AVOID DUPLICATION OF SERVICES

32.     The Advisor's services are intended to complement, and not duplicate, the services to be rendered by any other professional retained by the Company in these Chapter 11 Cases.  The Advisor has informed the Company that it understands that the Company has retained and may retain additional professionals during the term of the engagement and will use its reasonable efforts to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Company.

### ADVISOR'S DISINTERESTEDNESS

33.     The Advisor has reviewed the list of parties-in-interest provided by the Company. To the best of the Advisor's knowledge as of the date hereof, and except to the extent disclosed herein and in the O'Connell Declaration, the Advisor: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Company's estates; and (c) has no connection to the Company, their creditors or related parties.

34.     Given the large number of parties-in- interest in these Chapter 11 Cases, despite the efforts to identify and disclose the Advisor's relationships with parties-in-interest in

these Chapter 11 Cases, the Advisor is unable to state with certainty that every client relationship or other connection has been disclosed in the O'Connell Declaration. The Advisor will make continued inquiries following the filing of the Application, on a periodic basis, with additional disclosures to this Court if necessary or otherwise appropriate.

35.    The Company is informed that the Advisor will not share any compensation to be paid by the Company, in connection with services to be performed after the Petition Date, with any other person, other than other principals and employees of the Advisor, to the extent required by section 504 of the Bankruptcy Code.

**<u>BASIS FOR RELIEF</u>**

**A.     The Bankruptcy Code Permits the Employment and Retention of the Advisor on <u>Terms Substantially Similar to Those In the Engagement Letter</u>**

36.    The Company seeks approval of the Engagement Letter, including the Fee Structure and the Indemnification Agreement pursuant to section 328(a) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code authorizes a debtor to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a).

37.    In addition, section 328(a) of the Bankruptcy Code provides, in relevant part, that debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327. . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a). Accordingly, section 328 permits the compensation of professionals, including financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the

- 17 -

Fifth Circuit recognized in <u>Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.</u>):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).

38.     As discussed above and in the O'Connell Declaration, the Advisor satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code.  Additionally, given the numerous issues that the Advisor may be required to address in the performance of its services for the Company, under the Engagement Letter, the Advisor's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for the Advisor's services for engagements of this nature, the Company believes that the terms and conditions of the Engagement Letter are fair, reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

39.     As set forth above, and notwithstanding approval of the Engagement Letter under section 328 of the Bankruptcy Code, the Advisor intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, General Order M-447 and any other applicable procedures and orders of the Court, with certain limited modifications.

40.     Specifically, the Company requests that the requirements of Local Rule 2016-1 and General Order M-447 be tailored to the nature of the Advisor's engagement and its compensation structure.    The Advisor has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees on a fixed-rate basis and the payment of the fees described in the Engagement Letter, which, as set forth above, is customary in the investment banking industry.    Additionally, it is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys.    As discussed above, however, the Advisor's personnel, when formally retained in chapter 11 cases, and when required by Local Rules, do, and in these Chapter 11 Cases, will, keep summary time records in half-hour increments describing their daily activities and the identity of persons who performed such tasks. In addition, apart from the time-recording practices described above, the Advisor's personnel do not maintain their time records on a "project category" basis.    As such, the Company requests modification of the requirements under Local Rule 2016-1 and General Order M-447.

41.     The Company believes that the Fee Structure appropriately reflects the nature and scope of services to be provided by the Advisor, the Advisor's substantial experience with respect to financial advisory services and the fee structures typically utilized by the Advisor and other leading investment banks and financial advisors who do not bill their clients on an hourly basis.

42.     Indeed, monthly fee and transaction fee arrangements in other large chapter 11 cases have been routinely approved and implemented by courts in this jurisdiction. See, e.g., In re Patriot Coal Corp., No. 12-12900 (SCC) (Bankr. S.D.N.Y. Sept. 5, 2012); In re Gen. Mar. Corp., No. 11-15285 (MG) (Bankr. S.D.N.Y. Dec. 15, 2011); In re Sbarro, Inc., No. 11-11527 (SCC) (Bankr. S.D.N.Y. May 4, 2011); In re Ion Media Networks, Inc., No. 09-13125

(Bankr. S.D.N.Y. July 13, 2009); In re Charter Commc'ns, Inc., No. 09-11435 (Bankr. S.D.N.Y. Apr. 15, 2009); In re Motors Liquidation Co. (f/k/a Gen. Motors Corp.), No. 09-50026 (REG) (Bankr. S.D.N.Y. June 25, 2009); In re Bally Total Fitness of Greater New York, Inc., No. 08-14818 (BRL) (Bankr. S.D.N.Y. Jan., 28, 2009).

**B.    The Indemnification, Contribution, and Reimbursement
Terms of the Engagement Letter Are Appropriate**

43.    The indemnification, contribution and reimbursement provisions in the Engagement Letter were fully negotiated between the Company and the Advisor. The Company and the Advisor believe that the indemnification provisions in the Engagement Letter are customary and reasonable for financial advisory engagements both out-of-court and in chapter 11 cases. See, e.g., In re Patriot Coal Corp., No. 12-12900 (SCC) (Bankr. S.D.N.Y. Sept. 5, 2012); In re Gen. Mar. Corp., No. 11-15285 (MG) (Bankr. S.D.N.Y. Dec. 15, 2011); In re Sbarro, Inc., No. 11-11527 (SCC) (Bankr. S.D.N.Y. May 5, 2011); In re Great Atlantic & Pacific Tea Co., No. 10-24549 (RDD) (Bankr. S.D.N.Y. Jan. 13, 2011); In re Motors Liquidation Co. (f/k/a Gen. Motors Corp.), No. 09-50026 (REG) (Bankr. S.D.N.Y. June 25, 2009); In re Bally Total Fitness of Greater New York, Inc., No. 08-14818 (BRL) (Bankr. S.D.N.Y. Jan. 28, 2009). Accordingly, the Company respectfully submits that the terms of the indemnification provisions are reasonable and customary and should be approved in these Chapter 11 Cases.

**C.    The Retention of the Advisor Is Critical to the Company's Success**

44.    Denial of the relief requested herein will deprive the Company of the assistance of uniquely qualified financial advisors. Moreover, with approximately four months of services provided to the Company, a denial of the Advisor's employment would result in an unjust disadvantage to the Company and all parties-in-interest because of the Advisor's understanding of the Company's operations. Indeed, if the Company were forced to engage a

new financial advisor who lacks a thorough understanding of the Company's businesses and the initiatives that have been implemented over the course of the last several months, such change would mandate the commitment of significant and costly resources to educate a replacement.

45.      Based on the foregoing, the Company submits that it has satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to support entry of an order authorizing the Company to retain and employ the Advisor in these Chapter 11 Cases on the terms described herein and in the Engagement Letter.

<u>**NOTICE**</u>

46.      No trustee, examiner or creditors' committee has been appointed in these Chapter 11 Cases.  Notice of this Application has been given to: (a) the Office of the United States Trustee for the Southern District of New York; (b) counsel to Wilmington Trust, National Association, solely in its capacity as successor administrative and successor collateral agent under the 2007 Credit Facility; (c) counsel to (i) Crédit Agricole Corporate & Investment Bank, as agent and as security trustee under the $100 Million Credit Facility and (ii) Deutsche Bank Luxembourg S.A., as agent and Deutsche Bank AG Filiale Deutschlandgeschäft, as security agent and bookrunner under the $253 Million Credit Facility; (d) the indenture trustee for the Convertible Notes, The Bank of New York Mellon; (e) counsel for the Supporting Noteholders; (f) the holders of the forty (40) largest unsecured claims against the Company on a consolidated basis; (g) the Internal Revenue Service; (h) the United States Attorney for the Southern District of New York; (i) the United States Securities and Exchange Commission; and (j) any such other party entitled to notice pursuant to Local Bankruptcy Rule for the Southern District of New York 9013-1(b).  The Company submits that no other or further notice need be given.

**<u>NO PRIOR REQUEST</u>**

47.    No previous request for the relief sought herein has been made to this or any other court.

### CONCLUSION

WHEREFORE, the Company respectfully requests that the Court enter the Order granting the relief requested therein and such other and further relief as the Court may deem proper.

Dated: New York, New York
      April 29, 2014

**GENCO SHIPPING & TRADING LIMITED**, on its own behalf

By:    /s/ John. C. Wobensmith_____
          Name: John C. Wobensmith
          Its: Chief Financial Officer

On behalf of the other Debtors listed on Schedule 1 hereto:

By:    /s/ John. C. Wobensmith_____
          Name: John C. Wobensmith
          Its: Authorized Signatory

## SCHEDULE I

1.   Genco Acheron Limited
2.   Genco Aquitaine Limited
3.   Genco Ardennes Limited
4.   Genco Augustus Limited
5.   Genco Auvergne Limited
6.   Genco Avra Limited
7.   Genco Bay Limited
8.   Genco Beauty Limited
9.   Genco Bourgogne Limited
10.  Genco Brittany Limited
11.  Genco Carrier Limited
12.  Genco Cavalier LLC
13.  Genco Challenger Limited
14.  Genco Champion Limited
15.  Genco Charger Limited
16.  Genco Claudius Limited
17.  Genco Commodus Limited
18.  Genco Constantine Limited
19.  Genco Explorer Limited
20.  Genco Hadrian Limited
21.  Genco Hunter Limited
22.  Genco Investments LLC
23.  Genco Knight Limited
24.  Genco Languedoc Limited
25.  Genco Leader Limited
26.  Genco Loire Limited
27.  Genco London Limited
28.  Genco Lorraine Limited
29.  Genco Management (USA) LLC
30.  Genco Mare Limited
31.  Genco Marine Limited
32.  Genco Maximus Limited
33.  Genco Muse Limited
34.  Genco Normandy Limited
35.  Genco Ocean Limited
36.  Genco Picardy Limited
37.  Genco Pioneer Limited
38.  Genco Predator Limited
39.  Genco Progress Limited
40.  Genco Prosperity Limited
41.  Genco Provence Limited
42.  Genco Raptor LLC
43.  Genco Pyrenees Limited
44.  Genco RE Investments LLC
45.  Genco Reliance Limited
46.  Genco Rhone Limited
47.  Genco Ship Management LLC
48.  Genco Spirit Limited
49.  Genco Success Limited
50.  Genco Sugar Limited
51.  Genco Surprise Limited
52.  Genco Thunder LLC
53.  Genco Tiberius Limited
54.  Genco Titus Limited
55.  Genco Vigour Limited
56.  Genco Warrior Limited
57.  Genco Wisdom Limited

**<u>EXHIBIT A</u>**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
                                                  :
In re:                                            :   Chapter 11
                                                  :
GENCO SHIPPING & TRADING LIMITED, et al.,         :   Lead Case No. 14-11108 (SHL)
                                                  :
                          Debtors.                :   Jointly Administered
                                                  :   Related Docket No. __
---------------------------------------------------------------X

## ORDER AUTHORIZING THE EMPLOYMENT AND
## RETENTION OF BLACKSTONE ADVISORY PARTNERS L.P.
## AS FINANCIAL ADVISOR TO THE
## DEBTORS NUNC PRO TUNC TO THE PETITION DATE

Upon the application (the "**Application**")[1] of Genco Shipping & Trading Limited

("**Genco")** and certain of its direct and indirect subsidiaries, as chapter 11 debtors and debtors in

possession (each a "**Debtor**" and collectively the "**Debtors**" or the "**Company**") in the above-

referenced chapter 11 cases for entry of an order pursuant to sections 327(a) and 328 of the

Bankruptcy Code, Rules 2014(a) and 2016 of the Bankruptcy Rules and Rules 2014-1 and 2016-

1 of the Local Rules, authorizing the Company to retain and employ Blackstone Advisory

Partners L.P. ("**Blackstone**") as their financial advisor in accordance with the terms and

conditions set forth in the Engagement Letter, *nunc pro tunc* to the Petition Date, as described in

the Application and the O'Connell Declaration; and the Court having jurisdiction to consider the

Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and

consideration of the Application and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b)(2); and venue being proper in this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice of the Application being adequate and appropriate

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set for such terms in the Application or the Prepack Plan, as applicable.

under the particular circumstances has been given; and a hearing having been held to consider the relief requested in the Application (the "**Hearing**"); and upon consideration of the Application, the O'Connell Declaration, the record of the Hearing and all proceedings had before the Court; and the Court having found and determined that the relief sought in the Application is in the best interests of the Company's estates, their creditors and other parties-in-interest, and that the legal and factual bases set forth in the Application and the O'Connell Declaration establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and the Court being satisfied based on the representations made in the Application and the O'Connell Declaration, and the Court hereby finds that (a) Blackstone does not hold or represent an interest adverse to the Company's estates and (b) Blackstone is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code as required by section 327(a) of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Rule 2014-1; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Application is hereby granted as set forth herein.

2.      In accordance with sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Rules 2014-1 and 2016-1, the Company is authorized to employ and retain Blackstone in accordance with the terms and conditions set forth in the Engagement Letter, to pay fees and reimburse expenses, and to provide indemnification, contribution and/or reimbursement to Blackstone on the terms and at the times specified in the Engagement Letter, *nunc pro tunc* to the Petition Date.

3.      The provisions set forth in the Engagement Letter (and all attachments thereto) are hereby approved, except as otherwise expressly provided herein to the contrary.

4.      Blackstone will file applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code and such Bankruptcy Rules as may then be applicable, from time to time, and such procedures as may be fixed by order of this Court; *provided, however*, that the requirements of the Bankruptcy Code, the Bankruptcy Rules, Local Rule 2016-1 and General Order M-447 are hereby modified such that Blackstone's professionals shall be required only to keep summary time records in half-hour increments, Blackstone's professionals shall not be required to keep time records on a project category basis and Blackstone shall not be required to provide or conform to any schedules of hourly rates.

5.      Blackstone shall be compensated in accordance with the terms of the Engagement Letter and, in particular, all of Blackstone's fees and expenses in these Chapter 11 Cases, including the Monthly Fee, the Capital Raising Fee and the Restructuring Fee, are hereby approved pursuant to section 328(a) of the Bankruptcy Code.  Notwithstanding anything to the contrary herein, the fees and expenses payable to Blackstone pursuant to the Engagement Letter shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code, except by the U.S. Trustee.  This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Blackstone's compensation and expense reimbursements under sections 330 and 331 of the Bankruptcy Code, and the U.S. Trustee retains all rights to object to Blackstone's interim and final fee applications (including the Monthly Fee, the Capital Raising Fee, the Restructuring Fee and expense reimbursement) on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of

the Bankruptcy Code.  If the U. S. Trustee raises an objection to Blackstone's interim or final fee applications based on the standard provided for in section 330 of the Bankruptcy Code, then the Court retains the right to review such interim or final applications pursuant to section 330 of the Bankruptcy Code, but only as to any such objection raised by the U. S. Trustee.  Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding on the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of Blackstone's compensation.

6.      Pursuant to the terms of the Engagement Letter, Blackstone is entitled to reimbursement by the Company for reasonable expenses incurred in connection with the performance of its engagement under the Engagement Letter, including, without limitation, the reasonable fees, disbursements and other charges of Blackstone's counsel (which counsel shall not be required to be retained pursuant to section 327 of the Bankruptcy Code or otherwise), in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, any applicable orders of this Court and the Fee Guidelines promulgated by the Office of the United States Trustee, provided, that Blackstone shall not seek reimbursement for any services provided by Blackstone's counsel to the Company and, provided further, that Blackstone may only seek reimbursement for services in connection with retention and fee application preparation, except as otherwise provided herein with respect to claims for indemnification and, provided further, that Blackstone shall submit the invoices of Blackstone's counsel together with any application seeking allowance of reimbursement for the fees, disbursements and other charges of its counsel.

7.      In the event that the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, then Blackstone shall be entitled to be paid any fee to the extent such fee is earned by Blackstone in accordance with the terms of the Engagement Letter.

8.      Notwithstanding anything to the contrary in the Engagement Letter, indemnification, contribution and reimbursement provisions are hereby modified and restated in their entirety as follows::

a.      All requests of Blackstone for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall Blackstone be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

b.      In the event that Blackstone seeks reimbursement from the Company for reasonable attorneys' fees in connection with a request by Blackstone for payment of indemnity pursuant to the Engagement Letter, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in Blackstone's own application (both interim and final) and such invoices and time records shall be subject to the Fee Guidelines and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

c.      Blackstone shall not be entitled to reimbursement by the Company for any fees, disbursements and other charges of Blackstone's counsel other than those incurred in connection with a request of Blackstone for payment of indemnity and as otherwise provided in this Order.

d.      In no event shall Blackstone be indemnified if the Company or representatives of the estates assert a claim

- 5 -

> for, and a court determines by final order that such claim arose out of, Blackstone's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

9.      Notwithstanding anything in the Application or the Engagement letter to the contrary, Blackstone shall (i) to the extent that Blackstone uses the services of independent contractors, subcontractors or employees of foreign affiliates or subsidiaries (collectively, the "Contractors") in the Chapter 11 Cases, Blackstone shall pass-through the cost of such Contractors to the Company at the same rate that Blackstone pays the Contractors; (ii) seek reimbursement for actual costs only; and (iii) ensure that the Contractors are subject to the same conflict checks as required for Blackstone and (iv) shall file with the Court such disclosures required by Bankruptcy Rule 2014.

10.     The Company and Blackstone are authorized and empowered to take all actions necessary to implement the relief granted in and pursuant to this Order.

11.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.     The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

Dated: New York, New York
       May __, 2014

_____
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT B**

## **Engagement Letter**



The Blackstone Group

December 23, 2013

Mr. John C. Wobensmith, CFA
Chief Financial Officer
Genco Shipping & Trading Limited
299 Park Avenue, 12th Floor
New York, NY 10171

Dear John:

    This letter confirms the understanding and agreement (the "**Agreement**") between Blackstone Advisory Partners L.P. ("**Blackstone**") and Genco Shipping & Trading Limited (together with any affiliates and subsidiaries, the "**Company**") regarding the retention of Blackstone by the Company effective as of December 10, 2013 (the "**Effective Date**") as its financial advisor for the purposes set forth herein.

    Under this Agreement, Blackstone will provide financial advisory services to the Company in connection with a possible restructuring of certain liabilities of the Company and will assist the Company in analyzing, structuring, negotiating and effecting the Restructuring pursuant to the terms and conditions of this Agreement. As used in this Agreement, the term "**Restructuring**" shall mean, collectively, (i) any restructuring, reorganization (whether or not pursuant to chapter 11 of the United States Bankruptcy Code ("**Chapter 11**")) and/or recapitalization of the Company and/or sale or other disposition of substantially all of the assets of the Company affecting existing or potential debt obligations or other claims, including, without limitation, senior debt, junior debt, trade claims, general unsecured claims, and preferred stock (collectively, the "**Obligations**"), and/or (ii) any complete or partial repurchase, refinancing, extension or repayment by the Company of any of the Obligations.

    The financial advisory services to be rendered by Blackstone are expected to include the following:

    (a)    Assist in the evaluation of the Company's businesses and prospects;

    (b)    Assist in the development of the Company's long-term business plan and related financial projections;

    (c)    Assist in the development of financial data and presentations to the Company's Board of Directors, various creditors and other third parties;

The Blackstone Group® L.P.
345 Park Avenue
New York, NY 10154
212 583 5000

(d)     Analyze the Company's financial liquidity and evaluate alternatives to improve such liquidity;

(e)     Analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the Restructuring;

(f)     Provide strategic advice with regard to restructuring or refinancing the Company's Obligations;

(g)     Evaluate the Company's debt capacity and alternative capital structures;

(h)     Participate in negotiations among the Company and its creditors, suppliers, lessors and other interested parties;

(i)     Value securities offered by the Company in connection with a Restructuring;

(j)     Advise the Company and negotiate with lenders with respect to potential waivers or amendments of various credit facilities;

(k)     Assist in arranging financing for the Company (which may include, without limitation, debtor-in-possession financing), as requested;

(l)     Provide expert witness testimony concerning any of the subjects encompassed by the other financial advisory services; and

(m)     Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring, as requested and mutually agreed.

Notwithstanding anything contained in this Agreement to the contrary, Blackstone shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity. Blackstone makes no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a Restructuring. Blackstone is retained under this Agreement solely to provide advice regarding a Restructuring and is not being retained to provide "crisis management."

The Company will pay the following fees to Blackstone for its financial advisory services:

(i)     a monthly advisory fee (the "**Monthly Fee**") in the amount of $175,000, per month, in cash, with the first Monthly Fee payable upon the execution of this Agreement by both parties and additional installments of such Monthly Fee payable in advance on each monthly anniversary of the Effective Date, *provided* that commencing with the fourth Monthly Fee, 50% of the Monthly Fee shall be credited against the Restructuring Fee when and if paid and commencing with the seventh Monthly Fee, 100% of the Monthly Fee shall be credited against the Restructuring Fee when and if paid;

(ii)    a capital raising fee (the "**Capital Raising Fee**") calculated as 1.0% of the total issuance size for an affirmative debtor-in-possession financing facility (exclusive of cash collateral) and 5.0% of the issuance amount for an equity financing on new money raised from external parties who are not creditors of the Company (excluding any public offering of securities);

(iii)   an additional fee (the "**Restructuring Fee**") equal to $5,750,000.  Except as otherwise provided herein, a Restructuring shall be deemed to have been consummated upon (a) the binding execution and effectiveness of all necessary waivers, consents, amendments or restructuring agreements between the Company and its creditors involving the compromise of the face amount of such Obligations or the conversion of all or part of such Obligations into alternative securities, including equity, in the case of an out-of-court restructuring; or (b) the execution, confirmation and consummation of a Plan of Reorganization pursuant to an order of the Bankruptcy Court, in the case of an in-court restructuring.  The Restructuring Fee will be earned and payable, in immediately available funds, on consummation of the Restructuring.

Notwithstanding the foregoing, (a) a Restructuring specifically shall be deemed to exclude any assumption at face value of Obligations in connection with the sale or disposition of any subsidiaries, joint ventures, assets or lines of business of the Company and (b) the restructured Obligations shall exclude any Obligations in respect of which a Restructuring Fee has previously been paid; and

(iv)    reimbursement of all reasonable and documented out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of Blackstone's counsel (not to exceed $75,000 except as provided in the Indemnification Agreement (as defined below) without the Company's prior consent in its sole discretion and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

In the event that the Company is or becomes a debtor under Chapter 11, the Company shall use its commercially reasonable efforts to promptly apply to the bankruptcy court having jurisdiction over the Chapter 11 case or cases (the "**Bankruptcy Court**") for the approval pursuant to sections 327 and 328 of Chapter 11 of (A) this Agreement, including the attached indemnification agreement, and (B) Blackstone's retention by the Company under the terms of this Agreement and subject to the standard of review provided in section 328(a) of Chapter 11 and not subject to any other standard of review under section 330 of Chapter 11.  The Company shall supply Blackstone with a draft of such application and any proposed order authorizing Blackstone's retention sufficiently in advance of the filing of such application and proposed order to enable Blackstone and its counsel to review and comment thereon.  Blackstone shall have no obligation to provide any services under this Agreement in the event that the Company

becomes a debtor under Chapter 11 unless Blackstone's retention under the terms of this Agreement is approved under section 328(a) of Chapter 11 by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is reasonably acceptable to Blackstone in all respects. Blackstone acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, Blackstone's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of Chapter 11 and any applicable fee and expense guideline orders; provided, however, that Blackstone shall not be required to maintain time records and, provided further, that Blackstone shall not be required to maintain receipts for expenses in amounts less than $75. Blackstone represents and warrants to the Company that as of the date hereof, to its knowledge after reasonable inquiry, there is no reason why it could not be retained by the Company in the event that the Company becomes a debtor under Chapter 11. In the event that the Company becomes a debtor under Chapter 11 and Blackstone's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Blackstone hereunder as promptly as practicable in accordance with the terms hereof and the retention order. Prior to commencing a Chapter 11 case, the Company shall pay all invoiced amounts to Blackstone in immediately available funds by wire transfer.

With respect to Blackstone's retention under sections 327 and 328 of Chapter 11, the Company acknowledges and agrees that Blackstone's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Company during the term of Blackstone's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Company of Blackstone's services hereunder could not be measured merely by reference to the number of hours to be expended by Blackstone's professionals in the performance of such services. The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Blackstone and its professionals hereunder over the life of the engagement, and in light of the fact that such commitment may foreclose other opportunities for Blackstone and that the actual time and commitment required of Blackstone and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given the numerous issues which Blackstone may be required to address in the performance of its services hereunder, Blackstone's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Blackstone's services for engagements of this nature in an out-of-court context, the Company agrees that the fee arrangements hereunder (including the Monthly Fee, Capital Raising Fee, and Restructuring Fee) are reasonable under the standards set forth in 11 U.S.C. Section 328(a).

The advisory services and compensation arrangement set forth in this Agreement do not encompass other financial advisory services or transactions that may be undertaken by Blackstone at the request of the Company, including the arranging of debt or equity capital (except as provided above), issuing fairness opinions or any other specific services not set forth

in this Agreement.  The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between Blackstone and the appropriate party.

Except as contemplated by the terms hereof or as required by applicable law or legal process, for a period of two years from the date hereof, Blackstone and its Representatives (as defined below) shall keep confidential all non-public information provided to it by or at the request of the Company ("**Confidential Information**"), and shall not disclose such Confidential Information to any third party or to any of its or its affiliates' directors, officers, employees or attorneys, accountants, consultants, or professional advisors (collectively, **"Representatives"**) except to those persons who have a need to know such information in connection with Blackstone's performance of its responsibilities hereunder and who are advised of the confidential nature of the Confidential Information and who agree to abide by the confidentiality provisions of this Agreement.   Blackstone will be responsible for its Representatives' compliance with the confidentiality provisions of this Agreement.   Blackstone and its Representatives will use the Confidential Information only in connection with the performance of its services under this Agreement.

Confidential Information does not include any information which (i) is or becomes publicly available other than as a result of a disclosure by Blackstone or any of its Representatives, (ii) is already in Blackstone's or any of its Representatives' possession prior to disclosure by the Company, (iii) is or becomes available to Blackstone or any of its Representatives from a source other than the Company without any violation of any known confidentiality obligation, or (iv) is independently developed by Blackstone or on its behalf without reference to Confidential Information.

In the event Blackstone or any of its Representatives are required or requested by law, rule, regulation, legal, judicial or administrative process, subpoena or court order, or by a governmental, regulatory or self-regulatory authority to disclose any Confidential Information, then Blackstone will, unless prohibited by law, give the Company as prompt prior notice as is commercially practicable in the circumstances, will reasonably cooperate with the Company's efforts (at no out of pocket cost or expense to Blackstone) to prevent or narrow the scope of such disclosure or obtain a protective order to maintain its confidentiality, and will disclose only that portion of the Confidential Information as Blackstone's counsel advises is required. Notwithstanding the foregoing, notice to the Company shall not be required where disclosure is made (i) in response to a request by a regulatory or self-regulatory authority or (ii) in connection with a routine audit or examination by a bank examiner or auditor and such audit or examination does not reference the Company or this Agreement.

Each party hereto recognizes its responsibilities under applicable U.S. securities laws regarding material, non-public information.

Promptly after written request by the Company following the termination of this Agreement, Blackstone shall return or destroy, at its sole option, all Confidential Information received during the course of its engagement and shall confirm in writing that all such

Confidential Information has been so returned or destroyed. Notwithstanding the foregoing, Recipient and its Representatives may retain Confidential Information to comply with applicable law or regulation or professional standards, subject to all other obligations of Recipient and its Representatives in this Agreement.

Blackstone's breach or threatened breach of the confidentiality provisions of this Agreement may present the Company with difficulty in proving monetary damages. Accordingly, the Company shall be entitled to obtain an injunction or other equitable relief related to Blackstone's alleged breach or imminent breach of such confidentiality provisions without posting a bond or other security. The Company's delay in enforcing or deciding not to enforce the confidentiality provisions of this Agreement on one or more occasions does not represent a waiver that would foreclose the Company from petitioning a court for performance of such term or any other term in the future. Only a written waiver or amendment executed by both parties will have legal effect.

The Company will furnish or cause to be furnished to Blackstone such information as Blackstone reasonably believes appropriate to its assignment (all such information so furnished being the "**Information**"). The Company further agrees that it will provide Blackstone with reasonable access to the Company and its directors, officers, employees and advisers. The Company shall inform Blackstone promptly upon becoming aware of any material developments relating to the Company which the Company reasonably expects may impact on the proposed Restructuring or if the Company becomes aware that any Information provided to Blackstone is, or has become, untrue, unfair, inaccurate or misleading in any way. Furthermore, the Company warrants and undertakes to Blackstone in respect of all Information supplied by the Company, that the Company has not obtained any such Information other than by lawful means and that disclosure to Blackstone will not breach any agreement or duty of confidentiality owed to third parties. The Company recognizes and confirms that Blackstone (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, (c) is entitled to rely upon the Information without independent verification, and (d) will not make an appraisal of any assets in connection with its assignment.

In the event that the Information belonging to the Company is stored electronically on Blackstone's computer systems, Blackstone shall not be liable for any damages resulting from unauthorized access, misuse or alteration of such information by persons not acting on its behalf, provided that Blackstone exercises the same degree of care in protecting the confidentiality of, and in preventing unauthorized access to, the Company's information that it exercises with regard to its own most sensitive proprietary information.

Except as required by applicable law, any advice to be provided by Blackstone under this Agreement shall not be disclosed publicly or made available to third parties (other than the Company's other professional advisors or, if appropriate in the Company's judgment, in any

filings, other required disclosure, or testimony in a Chapter 11 proceeding) without the prior written consent of Blackstone.  All services, advice and information and reports provided by Blackstone to the Company in connection with this assignment shall be for the sole benefit of the Company and shall not be relied upon by any other person.

The Company acknowledges and agrees that Blackstone will provide its financial advisory services exclusively to the members of the Board of Directors and senior management of the Company and not to the Company's shareholders or other constituencies. The Board of Directors and senior management will make all decisions for the Company regarding whether and how the Company will pursue a Restructuring and on what terms and by what process.  In so doing, the Board of Directors and senior management will also obtain the advice of the Company's legal, tax and other business advisors and consider such other factors which they consider appropriate before exercising their independent business judgment in respect of a Restructuring.  The Company further acknowledges and agrees that Blackstone has been retained to act solely as financial advisor to the Company and does not in such capacity act as a fiduciary for the Company or any other person.  Blackstone shall act as an independent contractor and any duties of Blackstone arising out of its engagement pursuant to this Agreement shall be owed solely to the Company.

Certain communications and correspondence from Blackstone and work product and analyses prepared by Blackstone for the Company in connection with its engagement hereunder will be in preparation for litigation over the restructuring of the Company or for the assistance of counsel and, accordingly, will be subject to the attorney-client privilege and work-product doctrine and will be designated as such.

In consideration of Blackstone's agreement to provide financial advisory services to the Company in connection with this Agreement, it is agreed that the Company will indemnify Blackstone and its agents, representatives, members and employees.  A copy of our standard form of indemnification agreement is attached to this Agreement as Attachment A.

Blackstone's engagement hereunder may be terminated upon 30 days' written notice without cause by either the Company or Blackstone; termination for cause by either party will occur forthwith. Notwithstanding the foregoing, (a) the provisions relating to the payment of fees and expenses accrued through the date of termination, the status of Blackstone as an independent contractor and the limitation as to whom Blackstone shall owe any duties will survive any such termination, (b) any such termination shall not affect the Company's obligations under the indemnification agreement attached as Attachment A or Blackstone's confidentiality obligations hereunder and (c) Blackstone shall be entitled to the Restructuring Fee in the event that at any time prior to the expiration of 12 months following the termination of this Agreement a definitive agreement with respect to a Restructuring is executed and a Restructuring is thereafter consummated, except that if Blackstone terminates its engagement for any reason or the Company terminates Blackstone's engagement for cause, Blackstone shall not be entitled to any

Restructuring Fee.  For purposes of this paragraph, "cause" shall mean gross negligence, willful misconduct or a material breach of this Agreement.

The Company represents that neither it nor any of its subsidiaries, any director or officer of the Company or any of its subsidiaries, nor, to the knowledge of the Company or any of its subsidiaries, any affiliate of the Company or any of its subsidiaries, is an individual or entity ("Person") that is, or is owned or controlled by a Person that is:  (i) the subject of any U.S. economic sanctions (including those administered or enforced by the U.S. Department of Treasury's Office of Foreign Assets Control) or similar sanctions imposed by another relevant sanctions authority (collectively, "Sanctions"); (ii) located, organized or resident in a country or territory that is the subject of Sanctions that broadly prohibit dealings with that country or territory; or (iii) not in compliance in all material respects with all applicable anti-money laundering laws and Sanctions.

Notwithstanding anything to the contrary provided elsewhere herein, none of the provisions of this Agreement shall in any way limit the activities of The Blackstone Group L.P. and its affiliates in their businesses distinct from the restructuring advisory business of The Blackstone Group L.P., provided that the confidential information is not made available to representatives of The Blackstone Group L.P. and its affiliates who are not involved in the restructuring advisory business of The Blackstone Group L.P.  Should the confidential information be made available to a representative of The Blackstone Group L.P. and its affiliates who is not involved in the restructuring advisory business of The Blackstone Group L.P., such representative shall be bound by this Agreement in accordance with its terms.  While this Agreement is in effect and for a one year period following its termination, Blackstone will not represent any other client in any effort to purchase or exercise control over equity, debt, or assets of the Company or in any effort to collect any debt from the Company, except with the prior written approval of the Company.

This Agreement (including the attached indemnification agreement) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect or impair such provision or the remaining provisions of this Agreement in any other respect, which will remain in full force and effect.  No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

Any action or proceeding brought by either party hereto against the other based hereon or arising out of or relating to Blackstone's engagement hereunder (including without limitation with respect to the Indemnification Agreement but solely as it relates to any action, claim, suit, investigation or proceeding between the parties; in the event that any action, claim, suit, investigation or proceeding is commenced by a third party in a separate jurisdiction, each party hereto may enforce the indemnification agreement in such jurisdiction, including without limitation by joinder), shall be brought and maintained exclusively in the courts of the State of

New York located in the City and County of New York or in the United States District Court for the Southern District of New York; provided, if the Company commences a Chapter 11 case, all legal proceedings pertaining to this engagement arising after such case is commenced may be brought in the Bankruptcy Court handling such case. Each party hereto irrevocably submits to the jurisdiction of the courts of the State of New York located in the City and County of New York and the United States District Court for the Southern District of New York and appellate courts from any thereof for the purpose of any action or proceeding based hereon or arising out of or relating to Blackstone's engagement hereunder and irrevocably agrees to be bound by any judgment rendered thereby in connection with such action or proceedings. Each party hereto hereby irrevocably waives, to the fullest extent permitted by law, any objection it may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that such action or proceeding has been brought in an inconvenient forum and agrees not to plead or claim the same.

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to Blackstone the duplicate copy of this Agreement and the indemnification agreement attached hereto as Attachment A.

Very truly yours,

BLACKSTONE ADVISORY PARTNERS L.P.

By:_____

Name:    Timothy R. Coleman
Title:      Senior Managing Director

Accepted and Agreed to as
of the date first written above:

GENCO SHIPPING & TRADING LIMITED

By:_____

    Name:  John C. Wobensmith
    Title:  Chief Financial Officer

ATTACHMENT A

December 23, 2013

Blackstone Advisory Partners L.P.
345 Park Avenue
New York, NY  10154

INDEMNIFICATION AGREEMENT

Ladies and Gentlemen:

This letter will confirm that we have engaged Blackstone Advisory Partners L.P. ("**Blackstone**") to advise and assist us in connection with the matters referred to in our letter of agreement dated as of December 23, 2013 (the "**Engagement Letter**").  In consideration of your agreement to act on our behalf in connection with such matters, we agree to indemnify and hold harmless you and your affiliates and your and their respective partners (both general and limited), members, officers, directors, employees and agents and each other person, if any, controlling you or any of your affiliates (you and each such other person being an "**Indemnified Party**") from and against any losses, claims, damages, expenses and liabilities whatsoever, whether they be joint or several, related to, arising out of or in connection with the engagement (the "**Engagement**") under the Engagement Letter and will reimburse each Indemnified Party for all expenses (including reasonable fees, expenses and disbursements of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, or otherwise responding to, or assisting in the defense of any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement or this agreement, whether or not pending or threatened, whether or not any Indemnified Party is a party, whether or not resulting in any liability and whether or not such action, claim, suit, investigation or proceeding is initiated or brought by us.  You and we also agree that the party not assuming the defense of such action, claim, suit, investigation or proceeding shall cooperate with the party assuming the defense the ("**Defending Party**") and give, and so far as it is able to procure the giving of, all such information and render all such assistance to the Defending Party as the Defending Party may reasonably request in connection with any such action, claim, suit, proceeding, investigation or judgment and not to take any action which might reasonably be expected to prejudice the defense of any such action, claim, suit, proceeding, investigation or judgment without the consent of the Defending Party (such consent not to be unreasonably withheld).  In the event that Blackstone is requested or authorized by us or required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, arising as a result of or in connection with the Engagement, we will, so

long as Blackstone is not a party to the proceeding in which the information is sought, pay Blackstone the reasonable fees and expenses of its counsel incurred in responding to such a request. We will not, however, be liable under the foregoing indemnification provision for any losses, claims, damages or liabilities (or fees, expenses, or disbursements relating thereto) to the extent finally judicially determined by a court of competent jurisdiction to have resulted from Blackstone's gross negligence, or willful misconduct.  We also agree that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to us or our owners, parents, affiliates, security holders or creditors for or in connection with the Engagement except to the extent of any such liability for losses, claims, damages or liabilities incurred by us that are finally judicially determined by a court of competent jurisdiction to have resulted from Blackstone's gross negligence, or willful misconduct.

If the indemnification provided for in the preceding paragraph is for any reason (other than the gross negligence or willful misconduct of Blackstone as provided above) unavailable to an Indemnified Party in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such Indemnified Party hereunder, we shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages or liabilities (and reasonable fees, expenses, and disbursements of counsel relating thereto) in such proportion as is appropriate to reflect not only the relative benefits received (or anticipated to be received) by you, on the one hand, and us, on the other hand, from the Engagement but also the relative fault of each of you and us, as well as any other relevant equitable considerations; provided, however, to the extent permitted by applicable law, in no event shall your aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by you under the Engagement Letter.  For the purposes of this agreement, the relative benefits to us and you of the Engagement shall be deemed to be in the same proportion as (a) the total value paid or contemplated to be paid or received or contemplated to be received by us, our security holders and our creditors in the transaction or transactions that are subject to the Engagement, whether or not any such transaction is consummated, bears to (b) the fees paid or to be paid to Blackstone under the Engagement Letter (excluding any amounts paid as reimbursement of expenses).

Neither party to this agreement will, without the prior written consent of the other party (which consent will not be unreasonably withheld), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder (a "**Judgment**"), whether or not we or any Indemnified Party are an actual or potential party to such claim, action, suit or proceeding.  In the event that we seek to settle or compromise or consent to the entry of any Judgment, we agree that such settlement, compromise or consent (i) shall include an unconditional release of Blackstone and each other Indemnified Party hereunder from all liability arising out of such claim, action, suit or proceeding, (ii) shall not include a statement as to, or an admission of, fault, culpability or a failure to act by or on behalf of Blackstone or each other Indemnified Party, and (iii) shall not impose any continuing obligations or restrictions on Blackstone or each other Indemnified Party.

Promptly after receipt by an Indemnified Party of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such person will notify us in writing of such complaint or of the commencement of such action or proceeding, but failure to so notify us will not relieve us from any liability which we may have hereunder or otherwise, except to the extent that such failure materially prejudices our rights or the defense of such action or proceeding.  If we so elect or are requested by such Indemnified Party, we will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to Blackstone and the payment of the fees and disbursements of such counsel.

In the event, however, that having common counsel would present such counsel with a conflict of interest that would prevent such counsel as serving as common counsel or if we fail to assume the defense of the action or proceeding in a timely manner, then such Indemnified Party may employ separate counsel reasonably satisfactory to us to represent or defend it in any such action or proceeding and we will pay the fees and disbursements of such counsel; provided, however, that we will not be required to pay the fees and disbursements of more than one separate counsel for all Indemnified Parties in any single action or proceeding or, where the retention of only one separate counsel would be reasonable, any related actions or proceedings.  In any action or proceeding the defense of which we assume, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense.

The foregoing reimbursement, indemnity and contribution obligations of ours under this agreement shall be in addition to any rights that an Indemnified Party may have at common law or otherwise, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of ours and such Indemnified Party.  We agree that the indemnity and reimbursement obligations of ours set out herein shall be in addition to any liability which we may otherwise have under the Engagement Letter and applicable law.

The provisions of this agreement shall apply to the Engagement, as well as any additional engagement of Blackstone by us in connection with the matters which are the subject of the Engagement, and any modification of the Engagement or additional engagement and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

This agreement and the Engagement Letter shall be governed by, and construed in accordance with the laws of the State of New York applicable to contracts executed in and to be performed in that state.

Very truly yours,

GENCO SHIPPING & TRADING LIMITED

By: _____

Name:  John C. Wobensmith

Title:  Chief Financial Officer

Accepted and Agreed
to as of the date first
written above:

BLACKSTONE ADVISORY PARTNERS L.P.

By: _____

Senior Managing Director

## **EXHIBIT C**

**O'Connell Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
                              :

In re:                           :     Chapter 11
                              :

GENCO SHIPPING & TRADING LIMITED, et al.,   :     Lead Case No. 14-11108 (SHL)
                              :

           Debtors.              :     Jointly Administered
                              :

---------------------------------------------------------------X

### DECLARATION OF JAMIE O'CONNELL IN SUPPORT OF THE DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF BLACKSTONE ADVISORY PARTNERS L.P. AS FINANCIAL ADVISOR TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

**JOHN JAMES O'CONNELL III** makes this declaration under 28 U.S.C. § 1746, and

states the following:

        1.      I am over 18 and competent to testify.  I am a Senior Managing Director and

member of the Restructuring and Reorganization Group of Blackstone Advisory Partners L.P.

(the "**Advisor**").  The Advisor's affiliate, The Blackstone Group L.P. (collectively with the

Advisor and their affiliates "**Blackstone**"), is a global alternative asset manager and provider of

financial advisory services listed on the New York Stock Exchange that maintains offices at 345

Park Avenue, New York, New York 10154.

        2.      I am authorized to submit this declaration (the "**Declaration**") in support of the

application (the "**Application**") of Genco Shipping & Trading Limited ("**Genco**") and certain of

its direct and indirect subsidiaries, as chapter 11 debtors and debtors in possession (each a

"**Debtor**" and collectively the "**Debtors**"[1] or the "**Company**") in the above-referenced chapter

---

[1] The Debtors and, if applicable, the last four digits of their taxpayer identification numbers are as follows: Genco Shipping & Trading Limited (9758), Genco Investment LLC, Genco Management (USA) LLC (3865), Genco RE Investments LLC, Genco Ship Management LLC (7604), Genco Acheron Limited (9293), Genco Aquitaine Limited (8217), Genco Ardennes Limited (8215), Genco Augustus Limited (3622), Genco Auvergne Limited (8233), Genco

11 cases (the "**Chapter 11 Cases**"), for (a) the entry of an order, authorizing the Company to

retain and employ the Advisor as financial advisor to the Company *nunc pro tunc* to the Petition

Date, pursuant to sections 105(a), 327 and 328 of title 11 of the United States Code (the

"**Bankruptcy Code**"), (b) approving the provisions of the Engagement Letter, including the

compensation arrangement and indemnification, contribution and reimbursement provisions set

forth therein, and (c) modifying the time-keeping requirements of Local Rule 2016-1 and

General Order M-447 in connection with the Advisor's engagement.

3.     The facts set forth in this Declaration are based upon my personal knowledge,

information and belief, or client matter records kept in the ordinary course of business that were

reviewed either by me or other employees of Blackstone under my supervision and direction.  If

called and sworn as a witness, I could and would testify competently to the facts set forth herein.

### THE ADVISOR'S QUALIFICATIONS

4.     Blackstone is a leading global alternative asset manager and provider of financial

advisory services listed on the New York Stock Exchange (ticker symbol: BX).  The Advisor's

restructuring and reorganization advisory operation is one of the leading advisory services

---

Avra Limited (5557), Genco Bay Limited (5558), Genco Beauty Limited (9761), Genco Bourgogne Limited (8236), Genco Brittany Limited (8237), Genco Carrier Limited (8763), Genco Cavalier LLC (9764), Genco Challenger Limited (6074), Genco Champion Limited (6073), Genco Charger Limited (6072), Genco Claudius Limited (3620), Genco Commodus Limited (3619), Genco Constantine Limited (3617), Genco Explorer Limited (9764), Genco Hadrian Limited (3608), Genco Hunter Limited (6158), Genco Knight Limited (9773), Genco Languedoc Limited (8238), Genco Leader Limited (9774), Genco Loire Limited (8239), Genco London Limited (3610), Genco Lorraine Limited (8242), Genco Mare Limited (5641), Genco Marine Limited (9775), Genco Maximus Limited (3613), Genco Muse Limited (5276), Genco Normandy Limited (8243), Genco Ocean Limited (5645), Genco Picardy Limited (8244), Genco Pioneer Limited (9767), Genco Predator Limited (6075), Genco Progress Limited (9776), Genco Prosperity Limited (9777), Genco Provence Limited (8246), Genco Pyrenees Limited (8599), Genco Raptor LLC (9767), Genco Reliance Limited (9768), Genco Rhone Limited (8248), Genco Spirit Limited (5650), Genco Success Limited (9769), Genco Sugar Limited (9778), Genco Surprise Limited (9385), Genco Thunder LLC (9769), Genco Tiberius Limited (3614), Genco Titus Limited (3615), Genco Vigour Limited (9770), Genco Warrior Limited (6076), and Genco Wisdom Limited (9771). The Debtors' business address is 299 Park Avenue, New York, NY 10171.  Neither Baltic Trading Limited nor its subsidiaries are Debtors.

providers to companies and creditors in restructurings and bankruptcies.   The Advisor's professionals have extensive experience working with financially troubled companies in complex financial restructurings.   Since 1991, the Advisor has advised on hundreds of distressed situations, both in and out of bankruptcy proceedings, involving over $1 trillion of total liabilities.

5.      The members and senior executives of the Advisor's restructuring and reorganization practice have assisted and advised numerous chapter 11 debtors in the development of plans of reorganization and are experienced in analyzing restructuring and related chapter 11 issues.   The members and senior executives of the Advisor's restructuring and reorganization practice have been particularly active in large, complex and high-profile bankruptcies and restructurings, having advised in the following chapter 11 reorganizations, among others: AbitibiBowater Inc.; Central European Distribution Corp. (CEDC); Delta Air Lines, Inc.; Eastman Kodak Company; Enron Corporation; Excel Maritime Carriers, Ltd.; Flying J. Inc.; Houghton Mifflin Harcourt Publishing Company; Lee Enterprises Inc.; Los Angeles Dodgers LLC; Patriot Coal Corporation; Nortek, Inc.; SemGroup; Simmons Bedding Company; Tribune Co.; W. R. Grace & Co.; and Winn-Dixie Stores, Inc.   In addition, the restructuring group has provided general restructuring advice to such major companies as Ford Motor Company, The Goodyear Tire & Rubber Company, International Lease Finance Corporation (ILFC) and Xerox Corporation.

6.      The Advisor has been advising the Company on strategic and restructuring initiatives for approximately four months pursuant to the conditions set forth in the engagement letter between Genco and the Advisor, effective as of December 10, 2013 (the "**Engagement Letter**").  During this time, the Advisor was extensively involved in designing and implementing

- 3 -

the Prepack Plan.   In particular, the Advisor engaged in extensive due diligence of the Company's business, including its operations, assets, capital structure, contractual arrangements and cash management in order to build a foundation for a restructuring strategy.   The Advisor worked closely with Company personnel to develop a dynamic financial model and a comprehensive four-year business plan to forecast the Company's operational performance, cash flows and liquidity.   This financial model enabled the Advisor and the Company to evaluate restructuring frameworks.   The Advisor was then responsible for presenting the business plan and a restructuring framework to financial and legal advisors to the various creditor groups as well as to certain holders of 2007 Facility claims, $253 million Facility claims, $100 million Facility claims and Convertible Note claims.   The Advisor was active in the negotiations of the restructuring framework with the various creditor groups.   In addition, the Advisor participated in numerous meetings of the Company's Board of Directors during the period leading up to the Petition Date.   The Advisor also worked with management to develop a 13-week cash flow forecast, negotiated the terms of the cash collateral motion and assisted counsel with various first-day pleadings.   Finally, the Advisor supported counsel in the development of the Disclosure Statement and other Plan-related documents.

7.      As a result of the prepetition work performed on behalf of the Company, the Advisor has acquired significant knowledge of the Company's financial affairs, debt structure, business operations, capital structure, key stakeholders, financing documents, and other related material information.   Likewise, in providing prepetition services to the Company, the Advisor's professionals have worked closely with the Company's management, board of directors, and other advisors.   If this Application is approved, several of the Advisor's professionals, all with substantial expertise in the areas discussed above, will continue to provide services to the

Company. In particular, Tim Coleman and I will lead the team of the Advisor's professionals and will work closely with the Company's management and other professionals throughout the reorganization process. Accordingly, as a result of the Advisor's representation of the Company prior to the commencement of these Chapter 11 Cases and the Advisor's extensive experience representing chapter 11 debtors, the Advisor is well-qualified to provide these services and represent the Company during these Chapter 11 Cases.

### SERVICES TO BE PROVIDED

8.      Subject to further order of the Court, and consistent with the terms of the Engagement Letter, the Advisor's anticipated services in these Chapter 11 Cases include the following:[2]

    a.      Assist in the evaluation of the Company's businesses and prospects;

    b.      Assist in the development of the Company's long-term business plan and related financial projections;

    c.      Assist in the development of financial data and presentations to the Company's Board of Directors, various creditors and other third parties;

    d.      Analyze the Company's financial liquidity and evaluate alternatives to improve such liquidity;

    e.      Analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the Restructuring;

    f.      Provide strategic advice with regard to restructuring or refinancing the Company's Obligations;

---

[2] The summary of the Engagement Letter in this Declaration is qualified in its entirety by reference to the provisions of the Engagement Letter. To the extent there is any discrepancy between the summary contained in this Declaration and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control. Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Engagement Letter.

- 5 -

    g.        Evaluate the Company's debt capacity and alternative capital structures;

    h.        Participate in negotiations among the Company and its creditors, suppliers, lessors and other interested parties;

    i.        Value securities offered by the Company in connection with a Restructuring;

    j.        Advise the Company and negotiate with lenders with respect to potential waivers or amendments of various credit facilities;

    k.        Assist in arranging financing for the Company (which may include, without limitation, debtor in possession financing), as requested;

    l.        Provide expert witness testimony concerning any of the subjects encompassed by the other financial advisory services; and

    m.        Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring, as requested and mutually agreed.

### P<small>ROFESSIONAL</small> C<small>OMPENSATION</small>

9.      The Advisor's decision to advise and assist the Company in connection with these Chapter 11 Cases is subject to its ability to be retained in accordance with the terms of the Engagement Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code.

10.      Specifically, the Engagement Letter provides for the following compensation (the "**Fee Structure**"):

    a.        <u>Monthly Fee</u>.  The Company shall pay the Advisor a monthly advisory fee (the "**Monthly Fee**") of $175,000 in cash, with the first Monthly Fee paid upon the execution of the Engagement Letter by both parties and such additional installments of such Monthly Fee payable in advance on each monthly anniversary of the "Effective Date" (December 10, 2013). Commencing with the fourth Monthly Fee, 50% of the Monthly Fee shall be credited against the Restructuring Fee (defined below) when and if paid and commencing with the seventh Monthly Fee, 100%

of the Monthly Fee shall be credited against the Restructuring Fee when and if paid (the "**Crediting Mechanism**").

b.    Capital Raising Fee.  The Company shall pay the Advisor a capital raising fee (the "**Capital Raising Fee**") calculated as 1.0% of the total issuance size for an affirmative debtor in possession financing facility (exclusive of cash collateral) and 5.0% of the issuance amount for an equity financing on new money raised from external parties who are not creditors of the Company (excluding any public offering of securities.

c.    Restructuring Fee.  The Company shall pay a restructuring fee of $5,750,000 (the "**Restructuring Fee**") upon the consummation of a Restructuring (as defined in the Engagement Letter)[3] and subject to the Crediting Mechanism.

d.    Expense Reimbursements.

(1)    In addition to the fees described above, the Company agrees to reimburse the Advisor for all reasonable and documented out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of Advisor's external legal counsel (not to exceed $75,000 except as provided in the Indemnification Agreement (as defined below) without the Company's prior consent in its sole discretion) and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

(2)    Further, in connection with the reimbursement, contribution and indemnification provisions set forth in the Engagement Letter and Attachment A of the Engagement Letter (the "**Indemnification**

---

[3] As provided for in the Engagement Letter, a Restructuring shall be deemed to have been consummated upon: (a) the binding execution and effectiveness of all necessary waivers, consents, amendments or restructuring agreements between the Company and its creditors involving the compromise of the face amount of such Obligations (as defined in the Engagement Letter) or the conversion of all or part of such Obligations into alternative securities, including equity, in the case of an out-of-court restructuring; or (b) the execution, confirmation and consummation of a Prepack Plan of Reorganization pursuant to an order of the Bankruptcy Court, in the case of an in-court restructuring.  A Restructuring shall be deemed to exclude any assumption at face value of Obligations in connection with the sale or disposition of any subsidiaries, joint ventures, assets or lines of business of the Company and the restructured Obligations shall exclude any Obligations in respect of which a Restructuring Fee has previously been paid.

**Agreement**"), the Company agrees to reimburse each Indemnified Party (as defined in the Indemnification Agreement) for all actual, reasonable and documented out-of-pocket expenses (including actual, reasonable and documented fees, expenses and disbursements of external legal counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, or otherwise responding to, or assisting in the defense of any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement (as defined in the Engagement Letter) or the Indemnification Agreement, whether or not pending or threatened, whether or not any Indemnified Party is a party, whether or not resulting in any liability and whether or not such action, claim, suit, investigation or proceeding is initiated or brought by us.

11.    If at any time before the expiration of twelve (12) months following the termination of the Advisor's engagement, a definitive agreement with respect to a Restructuring is executed and a Restructuring is thereafter consummated, the Advisor is entitled to the Restructuring Fee, except if the Advisor terminates its engagement for any reason or the Company terminates the Advisor's engagement for cause.

12.    The Advisor intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, General Order M-447 and any other applicable procedures and orders of the Court, including any order granting this Application (to the extent compliance is not waived).  To that end, contemporaneously herewith or shortly after, the Company has or will file a Motion for Entry of an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, pursuant to which the Advisor intends to submit requests for compensation.

13.    Further, because the Company is seeking to retain the Advisor under section 328(a) of the Bankruptcy Code, the Company requests that: (a) the Advisor not be required to

file time records in accordance with Local Rule 2016-1 and General Order M-447 and (b) except with respect to the U.S. Trustee and in recognition of the practice in this jurisdiction, the Advisor's compensation and expense reimbursements not be subject to any standard of review other than section 328(a) of the Bankruptcy Code. For the avoidance of doubt, except with respect to the U.S. Trustee, the Advisor's fees and expenses would not be subject to review under section 330 of the Bankruptcy Code.

14.    If the application is granted, the Advisor will file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, General Order M-447, General Order M-412, Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals and any applicable orders of this Court.

15.    The Advisor will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these Chapter 11 Cases. However, as the Advisor's compensation will be calculated and paid based on certain transaction fees (in addition to flat Monthly Fees), the Advisor requests that it not be required to file time records in accordance with Local Rule 2016-1 and General Order M-447. Rather, the Advisor will maintain records, in summary format, of services rendered for the Company, including summary descriptions of those services, the approximate time expended in providing those services in hourly increments and the identity of the individuals who provided those services. The Advisor will present such records to the Court in its fee applications. To the extent that the Advisor would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Trustee Guidelines or other

applicable procedures and orders of the Court, the Company respectfully requests that this Court waive such requirements.  For the avoidance of doubt, the Company requests permission for the Advisor to submit only summary time records kept in half-hour increments  for the Advisor's personnel in its applications for payment of compensation.

16.    The Advisor and the Company have also agreed that in the event the Advisor seeks reimbursement for attorneys' fees during the term of the Chapter 11 Cases, the invoices and supporting time records from such attorneys shall be included in the Advisor's own application, both interim and final, and such invoices and time records shall be subject to General Order M-447 and the approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a) of the Bankruptcy Code.

17.    The Fee Structure is consistent with, and typical of, compensation arrangements entered into by the Advisor and other comparable firms in connection with the rendering of similar services under similar circumstances. The Advisor's strategic and financial expertise, as well as restructuring capabilities, some or all of which has and will be required by the Company during the term of the Advisor's engagement, were all important factors in determining the Fee Structure.  The Company and the Advisor have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of the Advisor and its professionals in connection with these Chapter 11 Cases and in light of the fact that: (a) such commitment may foreclose other opportunities for the Advisor, and (b) the actual time and commitment required of the Advisor and its professionals to perform its services under the

- 10 -

Engagement Letter may vary substantially from week-to-week and month-to-month, creating "peak load" issues for the Advisor.

18.    As of the Petition Date, the Company does not owe the Advisor any fees for services performed or expenses incurred under the Engagement Letter.   The Advisor has received approximately $885,637 for professional services performed and expenses incurred during the 90-day period before the Petition Date.[4]   Pursuant to the terms of the Engagement Letter, the Advisor is paid monthly, in advance.   As of the Petition Date, the Company had a credit balance of approximately $110,833; such credit balance will be applied against the Company's first postpetition invoice.

## INDEMNIFICATION, CONTRIBUTION AND REIMBURSEMENT OF ADVISOR

19.    As part of the overall compensation payable to Advisor under the terms of the Engagement Letter, the Company has agreed to certain indemnification, contribution, and reimbursement obligations set forth in the Indemnification Agreement and incorporated herein by reference.   I believe that the Indemnification Provisions are customary and reasonable terms of consideration for financial advisors such as the Adviser in connection with in-court and out-of-court restructuring activities.   The Advisor negotiated the Engagement Letter, including the Indemnification Provisions, with the Company in good faith and at arm's length.

## EFFORTS TO AVOID DUPLICATION OF SERVICES

20.    The Advisor's services are intended to complement, and not duplicate, the services to be rendered by any other professional retained by the Company in the Chapter 11 Cases.   The Advisor has informed the Company that it understands the Company has retained and may retain additional professionals during the term of the engagement and will use its

---

[4] The funds paid to the Advisor in the 90-day period preceding filing cover fees and expenses for the five-month period beginning December 10, 2013 and ending May 9, 2014.

reasonable efforts to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Company.

### ADVISOR'S DISINTERESTEDNESS

21.     In connection with its proposed retention by the Company in these cases, the Advisor undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Company.  Kaori Curran, a Vice President in the Compliance Group (the "**Compliance Manager**") of Blackstone, is responsible for, among other things, the day-to-day operation of the compliance function at Blackstone.  As part of that job, she maintains, for purposes of monitoring and avoiding conflicts of interest, a list (the "**Restricted List**") of companies with which Blackstone or one of its investment vehicles is doing business, either as an advisor, an investor or with respect to which Blackstone is in possession of material nonpublic information or has entered into a confidentiality agreement.  The Compliance Manager of Blackstone and her staff have received the names of individuals and entities that may be parties-in-interest in these chapter 11 cases (the "**Parties-in-Interest List**") attached as Schedule 1 to the *Declaration and Statement of Kaori Curran and Disclosure Statement of Blackstone Advisory Partners L.P. in Support of the Application of the Debtors for Authority to Employ and Retain Blackstone Advisory Partners L.P. as Financial Advisor to the Debtors* (the "**Curran Declaration**"), which is attached as **Exhibit D** to the Application, and have compared this to the Restricted List to determine the existence of any possible conflicts (the "**Conflict Check**"), the results of which are disclosed in the Curran Declaration.

22.     As part of its diverse practice, the Advisor appears in numerous cases, proceedings and transactions involving many different professionals, including attorneys,

- 12 -

accountants, investment bankers and financial consultants, some of whom may represent claimants and parties-in-interest in the Company's Chapter 11 Cases. Further, Blackstone or companies in which it has investments have in the past been, and may in the future be, represented by several attorneys and law firms in the legal community, some of whom may be involved in this proceeding. In addition, the Advisor has in the past worked, and will likely in the future work, with or against other professionals involved in this case in matters unrelated to this case. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these business relations constitutes interests materially adverse to the Company's estate herein, and none are in connection with this case.

23.     Affiliates of Blackstone serve as general partners for and manage a number of investment vehicles (collectively, the "**Blackstone Funds**"). The investors in the Blackstone Funds include many large financial institutions, some of which may be parties-in-interest in the Chapter 11 Cases, but also include affiliates of Blackstone and various of its officers and employees (collectively, the "**Employees**") including Employees working on the Chapter 11 Cases. In their capacity as limited partners, these Employees have personal investments in the Blackstone Funds, but have no control over investment decisions or over business decisions made at the Blackstone Funds.

    a.    Among other things, some of the Blackstone Funds are (a) passive investors in other funds (the "**Investment Funds**") managed by a number of non-traditional money managers, (b) active direct investors in a number of portfolio companies (the "**Equity Funds**"), (c) active direct investors in real estate including leases, mortgages, fee interests, real estate investment trusts, real estate development, construction, and operation ("**BREP**"), and (d) investors in a variety of debt instruments and mezzanine loans or similar securities including closed-end publicly listed vehicles ("**Income Funds**").

- 13 -

b.      As would be the case with respect to a mutual fund investment, neither Blackstone, the Blackstone Funds nor the Employees have any control over the investments made by the Investment Funds in which the Blackstone Funds are invested, including investment purchases, investment divestitures, and the timing of such activities.

c.      Some of the Investment Funds may invest in distressed debt and may hold or acquire debt of the Company.  To avoid any appearance of impropriety, where the Blackstone Funds may receive information that the Investment Funds are investing in companies in which Blackstone is acting as an advisor, Blackstone maintains internal procedures designed to preclude the dissemination of such information to the Employees who are providing such advisory services.  No Employee working on the Company's Chapter 11 Cases receives information concerning the individual investments of the Investment Funds in which the Blackstone Funds are invested.

d.      Blackstone maintains investment control over the Equity Funds, BREP, and the Income Funds (the "**Managed Funds**").

e.      Blackstone maintains a strict separation between its Employees assigned to the Company's Chapter 11 Cases and the Employees assigned to the Blackstone Funds.

f.      Likewise, no confidential information concerning the Company is permitted to be communicated to the Employees working for the Blackstone Funds.

g.      It is possible that companies owned, in whole or in part, by some of the Blackstone Funds may have a relationship with the Company or otherwise appear on the Parties-in-Interest List.  The Company may purchase or supply goods and services to, and may be an obligor to, or a creditor of, one or more companies that the Advisor is advising or in which some of the Blackstone Funds have an investment.  These relationships are unrelated to the services the Advisor intends to provide in the Company's Chapter 11 Cases. Blackstone maintains that these relationships are subject to the internal confidentiality procedures outlined immediately above, and thus, have no meaningful bearing on the Advisor's ability to advise the Company. Blackstone does not possess enough information concerning the dealings of the numerous companies in

- 14 -

which some of the Blackstone Funds have an investment to detect connections between such companies and the Company.

24.     The Advisor and certain of its members and employees may have represented, may currently represent, and likely will represent, in matters wholly unrelated to the Company's Chapter 11 Cases, entities that are listed on the Parties-in-Interest List.

25.     Blackstone does not believe that any of their involvement with any of the entities in the Parties-in-Interest List will adversely affect the Company in any way.  Blackstone has not represented, does not represent, and will not represent any entity on the Parties-in-Interest List in the Company's Chapter 11 Cases nor have any relationship with any such entity which would be adverse to the Company.  Blackstone does not believe that any potential relationship it may have with any entity on the Parties-in-Interest List would interfere with or impair the Advisor's representation of the Company in their Chapter 11 Cases.

26.     Given the size of Blackstone and the breadth of its client base, it is possible that Blackstone may now or in the future be retained by one or more of the entities on the Parties-in-Interest List in unrelated matters without my knowledge.  In addition, the Company has numerous customers, creditors and other parties with whom they may maintain business relationships and some may not be included as an entity on the Parties-in-Interest List.  The Company has been informed that Blackstone will conduct an ongoing review of its electronic files to ensure that no disqualifying circumstances have arisen.  To the extent that Blackstone discovers any such parties, or enters into any new, material relationship with an entity on the Parties-in-Interest List, it will supplement this disclosure to the Court promptly.  Other than as disclosed herein, to the best of my knowledge, Blackstone has no other relationship with the Company of which I am aware.

- 15 -

27.     To the best of my knowledge, except as set forth in the Curran Declaration: (a) the Advisor has no relevant connection with any of the Company, the Company's creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any other party with an actual or potential interest in these Chapter 11 Cases or their respective attorneys or accountants, (b) the Advisor (and the Advisor's professionals) are not creditors, equity security holders, or insiders of any of the Company, (c) neither the Advisor nor any of its professionals is or was, within two years of the Petition Date, a director, officer, or employee of the Company and (d) neither the Advisor nor its professionals holds or represents an interest materially adverse to the Company, its estates or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Company, or for any other reason. Accordingly, I believe that the Advisor is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code and the Advisor's employment is permissible under sections 327(a) and 328(a) of the Bankruptcy Code.

28.     I am not related or connected to and, to the best of my knowledge, no other professional of Blackstone who will work on this engagement is related or connected to, any United States Bankruptcy Judge for the Southern District of New York or any of the District Judges for the Southern District of New York who handle bankruptcy cases, or any employee in the Office of the U.S. Trustee except that I am a guest lecturer in an advanced bankruptcy seminar at Columbia Law School taught by the Honorable Robert E. Gerber.

29.     No promises have been received by the Advisor as to compensation in connection with the Chapter 11 Cases, other than as outlined in the Engagement Letter, and the Advisor has no agreement with any other entity to share any compensation received with any person other than the principals and employees of the Advisor.

- 16 -

30.     Blackstone will periodically review its files during the pendency of its engagement by the Company to ensure that no conflicts or other disqualifying circumstances exist or arise.   If any new relevant facts or relationships are discovered or arise during the pendency of these chapter 11 cases, Blackstone will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration as required by Bankruptcy Rule 2014.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct, to the best of my information, knowledge and belief.

Executed on April 29, 2014

By: /s/ John James O'Connell III
    **JOHN JAMES O'CONNELL III**
    Senior Managing Director
    Blackstone Advisory Partners L.P.

## <u>EXHIBIT D</u>

**Curran Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
                                                    :
In re:                                              :    Chapter 11
                                                    :
GENCO SHIPPING & TRADING LIMITED, et al.,           :    Lead Case No. 14-11108 (SHL)
                                                    :
                            Debtors.[1]             :    Jointly Administered
                                                    :
-----------------------------------------------------------------X

**DECLARATION AND STATEMENT OF KAORI CURRAN AND DISCLOSURE
STATEMENT OF BLACKSTONE ADVISORY PARTNERS L.P. IN SUPPORT OF THE
APPLICATION OF THE DEBTORS TO EMPLOY AND RETAIN BLACKSTONE
ADVISORY PARTNERS L.P. AS FINANCIAL ADVISOR TO THE DEBTORS**

I, Kaori Curran, declare:

1.      I am a Vice President of The Blackstone Group L.P. ("***Blackstone***"), and I

am one of the professionals responsible for, among other things, the day-to-day operation of the

compliance function at Blackstone Advisory Partners L.P. (the "***Advisor***").  As part of my job, I

---

[1]    The Debtors and, if applicable, the last four digits of their taxpayer identification numbers are as follows: Genco
Shipping & Trading Limited (9758), Genco Investments LLC, Genco Management (USA) LLC (3865), Genco
RE Investments LLC, Genco Ship Management LLC (7604), Genco Acheron Limited (9293), Genco Aquitaine
Limited (8217), Genco Ardennes Limited (8215), Genco Augustus Limited (3622), Genco Auvergne Limited
(8233), Genco Avra Limited (5557), Genco Bay Limited (5558), Genco Beauty Limited (9761), Genco
Bourgogne Limited (8236), Genco Brittany Limited (8237), Genco Carrier Limited (9763), Genco Cavalier
LLC (9764), Genco Challenger Limited (6074), Genco Champion Limited (6073), Genco Charger Limited
(6072), Genco Claudius Limited (3620), Genco Commodus Limited (3619), Genco Constantine Limited (3617),
Genco Explorer Limited (9764), Genco Hadrian Limited (3608), Genco Hunter Limited (6158), Genco Knight
Limited (9773), Genco Languedoc Limited (8238), Genco Leader Limited (9774), Genco Loire Limited (8239),
Genco London Limited (3610), Genco Lorraine Limited (8242), Genco Mare Limited (5641), Genco Marine
Limited (9775), Genco Maximus Limited (3613), Genco Muse Limited (5276), Genco Normandy Limited
(8243), Genco Ocean Limited (5645), Genco Picardy Limited (8244), Genco Pioneer Limited (9767), Genco
Predator Limited (6075), Genco Progress Limited (9776), Genco Prosperity Limited (9777), Genco Provence
Limited (8246), Genco Pyrenees Limited (8599), Genco Raptor LLC (9767), Genco Reliance Limited (9768),
Genco Rhone Limited (8248), Genco Spirit Limited (5650), Genco Success Limited (9769), Genco Sugar
Limited (9778), Genco Surprise Limited (9385), Genco Thunder LLC (9769), Genco Tiberius Limited (3614),
Genco Titus Limited (3615), Genco Vigour Limited (9770), Genco Warrior Limited (6076), and Genco
Wisdom Limited (9771). The Debtors' business address is 299 Park Avenue, New York, NY 10171.  Neither
Baltic Trading Limited nor its subsidiaries are Debtors.

am responsible for maintaining, for purposes of monitoring and avoiding conflicts of interest, a list of companies with which the Advisor, Blackstone or one of its affiliates is doing business, either as an advisor or an investor or with respect to which the Advisor, Blackstone or one of its affiliates is in possession of material, nonpublic information or has entered into a confidentiality agreement.

2.        On February 27, 2014, my colleagues and I received an initial list of Parties-In-Interest ("***PII***") from the Debtors.  On April 24, 2014, my colleagues and I received an updated list of PII from the Debtors, which updated list is attached hereto as Schedule 1.

3.        Blackstone is a multi-faceted, international financial advisory and asset management firm with numerous legally distinct and separate affiliates.  Blackstone and its affiliates other than the Advisor are referred to herein as the "***Advisor Affiliates***".  In that regard, the Advisor is operated as a distinct entity, separated from Blackstone and the Advisor Affiliates.

4.        Because the Advisor is the only Blackstone entity being retained by the Debtors, and because the Advisor Affiliates are not involved in any material respect with the professional services provided by the Advisor, we have researched only our records relating to the Advisor to determine connections with the PII.

5.        The Blackstone Legal and Compliance Department has undertaken a review of the PII to determine possible conflicts relating to the Debtors and, subject to the foregoing limitations and the following disclosures, no material conflicts have been found.

(a)        Advisor Affiliates serve as general partners for and manage a number of private investment funds (the "***Blackstone Funds***"), of which the investors are primarily hundreds of unrelated third parties.  From time to time, there may be PII that are investors in the Blackstone Funds.  Furthermore, from time to time, a Blackstone Fund or an Advisor Affiliate may hold, directly or through a pooled investment vehicle, an interest in a security or other instrument issued by or related to a PII, and the Advisor and

its personnel have no investment discretion, control of, or involvement with any of these activities.

(b)     Some of the financial institutions that are PII and certain other PII may have co-invested with Blackstone Funds or may have extended credit or provided investment banking services to Blackstone, the Advisor Affiliates, the Blackstone Funds or companies owned by the Blackstone Funds. Such PII may engage in one or more of the foregoing activities in the future. The Advisor and its personnel have no control of, or involvement with any of these activities.

(c)     From time to time, Advisor Affiliates may enter into confidentiality agreements with PII. The Advisor and its personnel have no control of, involvement with or knowledge of these agreements.

(d)     The Advisor has been retained to provide financial advisory services to Akin Gump Strauss Hauer & Feld LLP, as counsel to the Official Committee of Unsecured Creditors of Edison Mission Energy. Wells Fargo Bank, N.A., one of the PII, is co-chair of the Official Committee of Unsecured Creditors of Edison Mission Energy. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and the Advisor does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

(e)     The Advisor has been engaged to provide financial advisory services to a foreign affiliate of Barclays Capital Inc. in connection with a possible transaction. Barclays Capital Inc. is one of the PII. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and the Advisor does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

(f)     The Advisor has been engaged to provide financial advisory services to Davis Polk & Wardwell LLP, as counsel to JPMorgan Chase Bank, N.A., in connection with the chapter 11 case of Cengage Learning, Inc. J.P. Morgan Securities Inc., one of the PII, is an affiliate of JPMorgan Chase Bank, N.A. This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and the Advisor does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

(g)     The Advisor has been engaged to provide financial advisory services to a group of equity holders of a company that cannot be

identified for confidentiality reasons, as this engagement is not yet public.  Oaktree Capital Management, L.P., one of the PII, is a member of this group of equity holders.  This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and the Advisor does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

(h)      The Advisor has been engaged to provide financial advisory services to White & Case LLP, as counsel to a group of lenders to LightSquared Inc.  UBS Securities LLC, one of the PII, is the arranger, documentation agent and syndication agent for the lenders.  This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and the Advisor does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

(i)      The Advisor has been engaged to provide financial advisory services to a company in connection with a potential acquisition that has not been announced and therefore cannot be disclosed for confidentiality reasons.  J.P. Morgan Securities, LLC, one of the PII, is serving as co-financial advisor together with the Advisor in connection with this potential acquisition, and is also providing the debt financing to the potential acquirer.  This engagement is wholly unrelated to the Debtors and these chapter 11 cases, and the Advisor does not believe that the interests of the Debtors or their estates are adversely affected by this engagement.

6.      The Advisor currently holds no direct or indirect interest in any debt or equity securities of the Debtors.

7.      The Advisor has performed reasonable due diligence for possible conflicts with the PII in the Debtors' chapter 11 cases.  The following is a list of the categories that the Advisor has searched with respect to the PII:

(a)      Debtor Entities;
(b)      Non-Debtor Affiliates;
(c)      Directors and Officers (including Subsidiary Directors and Officers);
(d)      Business Affiliations of Directors;
(e)      Former Directors and Officers;
(f)      Federal, State, Industry and International Regulatory Agencies;
(g)      Known Shareholders;
(h)      Entities in which the Debtors have an Equity Interest;

4

(i)      Technical Managers' Employees' Unions;

(j)      Secured Lenders, Creditors, Mortgagees and Professionals;

(k)      Unsecured 5.00% Convertible Senior Notes – Holders and Professionals;

(l)      Professionals;

(m)      Insurance and Benefits Carriers, Brokers and Administrators;

(n)      Deposit Banks;

(o)      Litigation Adversaries;

(p)      Current and Recent Charterers;

(q)      Brokers;

(r)      Pool-Related Entities;

(s)      Contract Counter-Parties;

(t)      Utilities;

(u)      Lessors/Lessees (Sub and Super);

(v)      Vendors;

(w)      Top Unsecured Creditors;

(x)      Office of the United States Trustee (Manhattan Office); and

(y)      Bankruptcy Judges (S.D.N.Y.).

8.      The list of PII was provided by Debtors' counsel and may change during the pendency of the Debtors' chapter 11 cases. Should the Advisor learn that a relationship with any of the PII should be disclosed in the future, a supplemental declaration with such disclosure will be filed.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

April 29, 2014

/s/ Kaori Curran
**KAORI CURRAN**
Vice President, The Blackstone Group L.P.

## Genco Shipping & Trading Limited *et al.*

*Retention Checklist (as of April 24, 2014)*

### Debtor Entities

1. Genco Acheron Limited
2. Genco Aquitaine Limited
3. Genco Ardennes Limited
4. Genco Augustus Limited
5. Genco Auvergne Limited
6. Genco Avra Limited
7. Genco Bay Limited
8. Genco Beauty Limited
9. Genco Bourgogne Limited
10. Genco Brittany LLC
11. Genco Carrier Limited
12. Genco Cavalier LLC
13. Genco Challenger Limited
14. Genco Champion Limited
15. Genco Charger Limited
16. Genco Claudius Limited
17. Genco Commodus Limited
18. Genco Constantine Limited
19. Genco Explorer Limited
20. Genco Hadrian Limited
21. Genco Hunter Limited
22. Genco Investments LLC
23. Genco Knight Limited
24. Genco Languedoc Limited
25. Genco Leader Limited
26. Genco Loire Limited
27. Genco London Limited
28. Genco Lorraine Limited
29. Genco Management (USA) LLC
30. Genco Mare Limited
31. Genco Marine Limited
32. Genco Maximus Limited
33. Genco Muse Limited
34. Genco Normandy Limited
35. Genco Ocean Limited
36. Genco Picardy Limited
37. Genco Pioneer Limited
38. Genco Predator Limited
39. Genco Progress Limited
40. Genco Prosperity Limited
41. Genco Provence Limited
42. Genco Pyrenees Limited
43. Genco Raptor LLC
44. Genco RE Investments LLC
45. Genco Reliance Limited
46. Genco Rhone Limited
47. Genco Ship Management LLC
48. Genco Shipping & Trading Limited
49. Genco Spirit Limited
50. Genco Success Limited
51. Genco Sugar Limited
52. Genco Surprise Limited
53. Genco Thunder LLC
54. Genco Tiberius Limited
55. Genco Titus Limited
56. Genco Vigour Limited
57. Genco Warrior Limited
58. Genco Wisdom Limited

### Non-Debtor Affiliates

1. Baltic Bear Limited
2. Baltic Breeze Limited
3. Baltic Cougar Limited
4. Baltic Cove Limited
5. Baltic Fox Limited
6. Baltic Hare Limited
7. Baltic Hornet Limited
8. Baltic Jaguar Limited
9. Baltic Leopard Limited
10. Baltic Lion Limited
11. Baltic Mantis Limited
12. Baltic Panther Limited
13. Baltic Scorpion Limited
14. Baltic Tiger Limited
15. Baltic Trading Limited
16. Baltic Wasp Limited
17. Baltic Wind Limited
18. Baltic Wolf Limited

KL2 2832135.10

## Directors and Officers (including subsidiary D's & O's)

1. Alfred E. Smith, IV
2. Basil G. Mavroleon
3. Harry A. Perrin
4. John C. Wobensmith
5. Mark F. Polzin
6. Nathaniel C. A. Kramer
7. Peter C. Georgiopoulos
8. Rear Admiral Robert C. North, USCG (Ret.)
9. Robert Gerald Buchanan

## Business Affiliations of Directors

1. AE Smith Associates, LLC
2. Aegean Marine Petroleum Network, Inc.
3. Alfred E. Smith Memorial Foundation
4. American Bureau of Shipping
5. Association of Ship Brokers and Agents
6. Baltic Exchange
7. Baltic Trading Limited
8. Brown and Yellow International Holdings LLC
9. Charles R. Weber Company, Inc.
10. Concordia University Wisconsin
11. Connecticut Maritime Association
12. Connecticut Maritime Association Education Foundation (CAMEF)
13. Constantine Georgiopoulos
14. Farms Fiduciary Corporation
15. Fleet Acquisition LLC
16. General Maritime Corporation
17. Grand River Academy Growth Foundation
18. Hellenic Chamber of Commerce
19. Intertanko
20. K2 Global Consulting, N.A., LLC
21. Kroll Bond Rating Agency
22. Laurel Fiduciary Corporation
23. Lifetopia
24. Maritime Aquarium
25. Maritime Equity Partners LLC
26. Maritime Foundation Knowledge Center
27. Mutual of America Capital Management Corporation
28. Nevada Capital Corporation Limited
29. New York Maritime Inc. (NYMAR)
30. New York World Scale Committee
31. Next Health, LLC
32. NK MediaLab LLC
33. North American Marine Environmental Protection Association (NAMEPA)
34. North American Maritime Ministry Association (NAMMA)
35. North Star Maritime, Inc.
36. Oaktree Capital Management, L.P.
37. Provectus Pharmaceuticals, Inc.
38. Ranch Fiduciary Corporation
39. Saint Vincent Catholic Medical Centers
40. The Marwood Group
41. The Oversight Company
42. Tony Blair Faith Foundation
43. Vinson & Elkins
44. WeberSeas (Hellas) S.A.

## Former Directors and Officers

1. Stephen A. Kaplan

## Federal, State, Industry and International Regulatory Agencies

1. American Bureau of Shipping (ABS)
2. DNV GL AS
3. European Commission
4. European Union
5. Internal Revenue Service
6. International Association of Classification Societies
7. International Labour Organization (ILO)
8. International Maritime Organization (IMO)
9. Lloyd's Register of Shipping (Lloyd's)
10. Maritime Environment Protection Committee (MEPC)
11. Nasdaq Global Select Market
12. New York Stock Exchange
13. Republic of the Marshall Islands
14. Securities and Exchange Commission (SEC)
15. The Baltic Exchange
16. U.S. Bureau of Safety and Environmental Enforcement (BSEE)
17. U.S. Coast Guard
18. U.S. Department of Justice

19.  U.S. Environmental Protection Agency (EPA)
20.  U.S. Treasury


**<u>Known Shareholders and Professionals</u>**

1.   A.R.T. Advisors, LLC
2.   Alexis Lemon
3.   Alfred E Smith, IV
4.   AllianceBernstein L.P.
5.   Alpha Asset Management A.E.D.A.K.
6.   Alpine Group USVI, LLC
7.   Aperio Group, LLC
8.   Apostolos Zafolias
9.   Ashok K Katyal
10.  Aurelius Capital Management, LP
11.  Bank of America Merrill Lynch (US)
12.  Barclays Capital Inc.
13.  Basil Fikaris
14.  Basil G Mavroleon
15.  BlackRock Financial Management, Inc.
16.  BlackRock Institutional Trust Company, N.A.
17.  BMO Harris Bank N.A.
18.  BMO Nesbitt Burns Inc.
19.  BNY Mellon Asset Management
20.  BNY Mellon Wealth Management
21.  Bridgeway Capital Management, Inc.
22.  Brown Rudnick LLP (attorney for certain shareholders)
23.  California Public Employees' Retirement System
24.  Cambridge Investment Research Advisors, Inc.
25.  Charles D. Hyman & Company
26.  Charles Schwab Investment Management, Inc.
27.  Ching-Hui Hsiao
28.  Christopher Schilling
29.  Christos Kyrkorianos
30.  CIBC Asset Management Inc.
31.  Citadel Investment Group, L.L.C.
32.  Citi Investment Research (US)
33.  Claren Road Asset Management, LLC
34.  Commonwealth Financial Network
35.  Creative Planning, Inc.

36.  Credit Suisse Securities (USA) LLC
37.  Daniel S. Och
38.  D. E. Shaw & Co., L.P.
39.  Dechert LLP
40.  Deutsche Asset Management Americas
41.  Deutsche Bank Securities Inc.
42.  Dialectic Capital Management, LLC
43.  Dimensional Fund Advisors, L.P.
44.  Dimensional Fund Advisors, Ltd.
45.  Dimitris D Ioannides
46.  DWS Investment GmbH
47.  First New York Capital Corp.
48.  Fleet Acquisition, L.L.C.
49.  Florida State Board of Administration
50.  Forty4 Asset Management LLC
51.  Geode Capital Management, L.L.C.
52.  Gina M Colosi
53.  Glenmede Investment Management LP
54.  GMO LLC
55.  Goldman Sachs & Company, Inc.
56.  Group One Trading, L.P.
57.  Harold A Perrin
58.  Helen Samartzis
59.  Highbridge Capital Management, LLC
60.  Invesco PowerShares Capital Management LLC
61.  Invesco, Ltd.
62.  Iwamoto, Kong & Co., Inc.
63.  J.P. Morgan Securities Inc.
64.  James P. Vatis
65.  Jane Street Capital, L.L.C.
66.  Jennifer Stella
67.  John C. Wobensmith
68.  Joseph Adamo
69.  Joseph Farello
70.  Kirkland & Ellis (attorney for a shareholder)
71.  Knight Capital Americas LLC
72.  Ladenburg Thalmann Financial Services Inc.
73.  Lazard Asset Management, L.L.C.
74.  Ling Qi Weng
75.  LMR Partners LLP
76.  Loring, Wolcott & Coolidge Fiduciary Advisors, LLP
77.  LSV Asset Management
78.  Lyxor Asset Management

79. Manulife Asset Management Limited
80. Marc Sandomenico
81. Marina P. Fakiris
82. Mark F Polzin
83. Matthew A. Doherty
84. Maude Whitty-Milhomme
85. Mellon Capital Management Corporation
86. Millennium Management LLC
87. Mohawk Capital LLC
88. Morgan Stanley & Co. International Limited
89. Morgan Stanley & Co. LLC
90. Morgan Stanley Wealth Management
91. Nathaniel C A Kramer
92. National Asset Management, Inc.
93. Nevada Capital Corporation, Ltd.
94. Nomura Securities Co., Ltd.
95. Northern Trust Global Investments Limited
96. Northern Trust Investments, N.A.
97. Oaktree Capital Management, L.P.
98. Och-Ziff Capital Management Group LLC
99. Och-Ziff Holding Corporation
100. Och-Ziff Holding II LLC
101. Optimum Investment Advisors, LLC
102. OZ Management LP
103. OZ Management II LP
104. Paloma Partners Management Company
105. Parametric Portfolio Associates LLC
106. Peter C. Georgiopoulos
107. Peter G. Allen
108. PineBridge Investments LLC
109. ProFund Advisors LLC
110. Prospera Financial Services
111. Quantlab Capital Management, LLC
112. RBC Capital Markets Wealth Management
113. RBC Capital Partners
114. RBC Global Asset Management (U.S.) Inc.
115. Rhizome Partners, LP
116. Robert C North
117. Robert E. Dishman
118. Robert Gerald Buchanan
119. Ropes & Gray LLP
120. Rothschild Investment Corporation
121. Royce & Associates, LLC
122. Sabrina Bogosian
123. San Francisco Sentry Investment Group
124. Schleber Finanz-Consult GmbH

125. SFE Investment Counsel, Inc.
126. SG Americas Securities, L.L.C.
127. Shoba M. Rampersaud
128. Sid N Rao
129. Spot Trading LLC
130. State Street Global Advisors (US)
131. Steve C. Vassilakis
132. Strategic Value Partners LLC
133. SunAmerica Asset Management Corp.
134. Susquehanna Financial Group, LLLP
135. Swapan Biswas
136. Symmetry Peak Management, LLC
137. T. Rowe Price Associates, Inc.
138. Tak Tung Leung
139. Tess C. Pineda
140. The Vanguard Group, Inc.
141. TIAA-CREF
142. Timber Hill LLC
143. Tower Research Capital LLC
144. Two Sigma Investments, LLC
145. UBS Securities LLC
146. Vericimetry Advisors LLC
147. Vermillion Asset Management, LLC
148. Walleye Trading, LLC
149. Wells Fargo Advisors
150. Wells Fargo Bank, N.A.
151. Wolverine Asset Management, LLC
152. Yee Wan Soon

**Entities in which the Debtors Have an Equity Interest**

1. Jinhui Shipping and Transportation Limited
2. Korea Line Corporation
3. Dry Ships Inc.
4. Samsun Logix Corporation

**Technical Managers' Employees' Unions**

1. Amalgamated Union of Seafarers – Hong Kong
2. Associated Marine Officers' and Seamen's Union of the Philippines
3. Hong Kong Seafarers' Co-ordination Committee
4. Hong Kong Seamen's Union
5. International Bargaining Forum (IBF)

6. International Transport Workers' Federation (ITF)
7. Marine Transport Workers' Trade Union of Ukraine
8. Merchant Navy Officers' Guild – Hong Kong
9. National Union of Seafarers of India (NUSI)
10. The Maritime Union of India (MUI)

**Secured Lenders, Creditors, Mortgagees, and Professionals**

*$100 Million Term Loan Facility*

1. Crédit Agricole Corporate and Investment Bank (Agent and Security Trustee)
2. Crédit Industriel et Commercial (Lender)
3. Skandinaviska Enskilda Banken ABk Branch (Lender)

*$253 Million Term Loan Facility Lenders*

1. BNP Paribas (Lender, Lead Arranger)
2. Crédit Agricole Corporate and Investment Bank (Lender, Lead Arranger)
3. Deutsche Bank AG (Swap Provider)
4. Deutsche Bank AG Filiale Deutschlandgeschäft (Lender, Lead Arranger, Security Agent and Bookrunner)
5. Deutsche Bank Luxembourg S.A. (Agent)
6. DVB Bank SE (Lender, Lead Arranger)
7. Skandinaviska Enskilda Banken AB (Lender, Lead Arranger)
8. Paul, Weiss, Rifkind, Wharton & Garrison LLP  (Counsel)

*2007 Facility Lenders*

1. Houlihan Lokey Capital, Inc. (Financial Advisor)
2. Milbank, Tweed, Hadley & McCloy, LLP (Counsel)
3. Wilmington Trust, N.A. (Administrative and Collateral Agent)
4. AEC (LUX) S.A.R.L
5. AES (Lux) S.a.r.l

6. Alden Global Opportunities Master Fund, LP
7. Alden Global ADFERO BPI Fund, LTD. ANS US Holdings Ltd.
8. Apollo Centre Street Partnership, L.P.
9. Apollo Credit Opportunity Fund III LP
10. Apollo Franklin Partnership L.P.
11. Apollo Special Opportunities Managed Account L.P.
12. Apollo Zeus Strategic Investments
13. Bank of America NA
14. Bell Atlantic Master Trust
15. Canyon Value Realization Fund LP
16. CCP Credit Acquisition Holdings LLC
17. CCP Credit Acquisition Holdings, L.L.C.
18. CCP II Acquisition Holdings, LLC
19. CCP II Credit Acquisition Holdings LLC
20. Centerbridge Special Credit Partners II, L.P.
21. Citibank, N.A.
22. Credit Value Master Fund III, LP
23. Credit Value Partners Distressed Duration Master Fund, LP
24. Deutsche Bank AG Cayman Islands Branch
25. Dungan Partners, LP
26. Gracie Credit Opportunities Master Fund LP
27. Mangosteen
28. Map 139 Segregated Portfolio of LAM SPC
29. Midtown Acquisitions L.P.
30. OCP Investment Trust
31. Onex Debt Opportunity Fund, Ltd.
32. P Gracie Ltd.
33. Panning Master Fund, LP
34. Permal Stone Lion Fund LP
35. Sankaty Credit Opportunities V-A, L.P.
36. Sankaty Credit Opportunities V-A2 (Master), L.P.
37. Sankaty Credit Opportunities V-B, L.P.
38. SOL LOAN FUNDING LLC
39. Solus Senior High Income Fund LP
40. SPCP Group LLC
41. Stone Lion Capital Partners L.P.
42. Stone Lion Portfolio LP
43. Strategic Value Master Funds Ltd
44. Strategic Value Special Situations Master Fund II, LP

45. The Canyon Value Realization Master Fund, L.P.
46. Turnpike Limited
47. ULT Loan Funding 1 LLC
48. Venor Capital Master Fund Ltd
49. Wilshier Alden Global Event Driven Opportunities Segregated Portfolio

*Letter of Credit Providers*

1. Citibank, N.A. DnB Bank ASA

**Unsecured 5.00% Convertible Senior Notes - Holders and Professionals**

1. Akin Gump (Counsel to Ad Hoc Group of Noteholders)
2. J.P. Morgan Securities, LLC (Broker)
3. Jefferies (Financial Advisor to Ad Hoc Group of Noteholders)
4. The Bank Of New York Mellon (Trustee)
5. Wells Fargo Bank, N.A. (Servicer)
6. Advantage Capital Management
7. Alden Global Opportunities Master Fund, LP
8. Alden Global ADFERO BPI Fund, LTD.
9. Aristeia Capital, LLC
10. Bank of America Merrill Lynch Proprietary Trading
11. Buckley Muething Capital Management Company
12. Citigroup Global Markets, Inc. (Broker)
13. Euroclear Bank
14. Fidelity Management & Research Company
15. Fidelity Securities Fund: Fidelity Leveraged Company Stock Fund
16. Fidelity Advisor Series I
17. Fidelity Advisor Leveraged Company Stock Fund
18. GoldenTree Asset Management, L.P. (U.S.)
19. Goldman Sachs & Co.
20. Great Eastern Shipping Company Limited
21. J. Goldman Master Fund L.P.
22. Kayne Anderson Capital Advisors, L.P.
23. Kenneth G. Langone
24. Merrill Lynch Pierce Fenner & Smith
25. Milledge A. Hart, III

26. Mohican Financial Management, LLC
27. Morgan Stanley Smith Barney, LLC (Broker)
28. New Generation
29. Nomura Securities International, Inc.
30. Onex Debt Opportunity Fund, Ltd.
31. OCP Investment Trust
32. Panning Capital Management, L.P.
33. Panning Master Fund, LP
34. Phoenix Investment Adviser, LLC
35. Pinnacle Holdings, LLC
36. Sciens Capital Management, LLC
37. Scoggin Capital Management II LLC
38. Scoggin International Fund Ltd.
39. Scoggin Worldwide Fund Ltd.
40. Silver Point Capital, L.P. (U.S.)
41. Silver Point Capital Offshore Master Fund, L.P.
42. SOLA Ltd.
43. Solus Alternative Asset Management, L.P.
44. Telemus/Beacon Investment Co., LLC
45. Turnpike Limited
46. Ultra Master Ltd.
47. Van Cleef, Jordan & Wood, Inc.
48. Wilfrid Aubrey LLC
49. Wilshire Alden Global Event Driven Opportunities Segregated Portfolio
50. Alathia Noles (R/O IRA)
51. Albert E Cotton
52. Ali A Kiafar IRA
53. Alice H. Whiteside Irrev Trust
54. Alice Rhine
55. Alvin H Butz
56. Angela K Kensing C/F
57. Anne Anthony
58. Arlene R Rubin
59. B C Martinez Hale Bene IRA
60. Barry Boland
61. Belinda B Posey Ttee
62. Billie J Rutherford
63. Bobby G. Hubble  &
64. Bobby Stitt (IRA)
65. Boenning & Scattergood Inc
66. Boine  Johnson Marital Trust
67. Boyd H Ray
68. C.L. King & Associates 401(K)

| | | | | |
|---|---|---|---|---|
| 69. | Charles Albert Ehm | | 115. | IRA FBO Wanda Wood |
| 70. | Charles Denny | | 116. | J.A. Glynn Investments LLC |
| 71. | Charles K Friedman | | 117. | J.V.B. Financial Group LLC |
| 72. | Chris E Monin | | 118. | Jack Banning (IRA) |
| 73. | D Jeff Hayward | | 119. | Jack Brown Family Tr |
| 74. | Dale C Johnson | | 120. | Jacob P Cikaliuk |
| 75. | Daryl  V Blair IRA | | 121. | James A Reed IRA |
| 76. | David Carpenter Roberson | | 122. | James Gentile And |
| 77. | David K Gibbs Ttee | | 123. | Jamshid Mostadim |
| 78. | David L Monin | | 124. | Janet B. Mcelroy (IRA R/O) |
| 79. | David M. Maskell | | 125. | Jason  Caron Sep IRA |
| 80. | David Vanderstuyf | | 126. | Jeffrey W Shaw |
| 81. | Dennis Eugene Brown (R/O IRA) | | 127. | Jens Gregerson |
| 82. | Donald Dibiccari | | 128. | John B Mortola Rollover IRA |
| 83. | Donald G Bowser  And | | 129. | John E Lampman Jr |
| 84. | Donna Schultz And | | 130. | John E Poarch |
| 85. | Dorotha J Fry Bene IRA | | 131. | John E Poarch Md |
| 86. | Dr. Glenn M Jones (R/O IRA) | | 132. | John Gentile & |
| 87. | Elenita B Digennaro Rev Living | | 133. | John L Carafides & |
| 88. | Emin Martinian | | 134. | John Lampman III |
| 89. | Eric A Lieberman (Sim IRA) | | 135. | John Sawyer |
| 90. | F Devin Ghavidel | | 136. | John Zucco |
| 91. | Fanny Berdugo IRA | | 137. | Joseph J Vacchiano |
| 92. | First Clearing  LLC | | 138. | Joyce A Calvitti |
| 93. | Fmt Co Cust IRA | | 139. | Judy A Kahle IRA |
| 94. | Fmt Co Cust IRA Rollover | | 140. | Kaypaul LP |
| 95. | Francisco J Villarreal Jr | | 141. | Kenneth R Moser |
| 96. | Glen D Hauck | | 142. | Larvik Investment Trust Inc. |
| 97. | Gloria E Harvey And | | 143. | Lesli Hantman |
| 98. | Glory J Crawford | | 144. | Linda Cartwright (Sep IRA) |
| 99. | Goldstein Family Tr | | 145. | Linda Johnson-Hunt (IRA) |
| 100. | Gregg William Shriber & | | 146. | Linda S Nichols & |
| 101. | Gregory Shpilman | | 147. | Lorraine M Shannon |
| 102. | Hapoalim Securities Usa Inc | | 148. | Lubbock Digestive Disease |
| 103. | Harris J Blumenthal (IRA) | | 149. | Marc I.  Johnson |
| 104. | Heather Earle | | 150. | Marc Kleinman & |
| 105. | Helen Ohara-Adler Tr | | 151. | Mark H Deibert |
| 106. | Hiroyasu Nakano Ttee | | 152. | Mark W Dickmann |
| 107. | IRA FBO Alan D Vogt | | 153. | Marlene R Sholod |
| 108. | IRA FBO Anita S Curry | | 154. | Marnie Grammas Lemonik |
| 109. | IRA FBO James Ronald Petrikin | | 155. | Marusan Usa |
| 110. | IRA FBO Janet Healy | | 156. | Meridith Management Corp |
| 111. | IRA FBO Joyce A Calvitti | | 157. | Michael Natoli Tod Frances Natoli |
| 112. | IRA FBO Linda S Vogt | | 158. | Michael P Zuke |
| 113. | IRA FBO Robert S Brent | | 159. | Michael Ranta |
| 114. | IRA FBO S.M. Alavi | | 160. | Mr Harry Hartwig |

KL2 2832135.10

| | |
|---|---|
| 161. | Mr Jacob Sodke Or |
| 162. | Mrs Helen Davis |
| 163. | Neil Purish Trust |
| 164. | Nfs/Fmtc Sep IRA |
| 165. | Nita De Lar |
| 166. | Norman Ashbes Residuary Trust |
| 167. | Pat William Holt |
| 168. | Patsy Ho |
| 169. | Pendragon Tr |
| 170. | Peter Wille |
| 171. | Phillips Children Tr |
| 172. | Raju M Patel |
| 173. | Randall D Wolcott |
| 174. | Randall L Mather IRA |
| 175. | Richard A Martin IRA |
| 176. | Richard Byrne |
| 177. | Richard E Niederhaus |
| 178. | Richard Medhurst And |
| 179. | Rk Hill Flp |
| 180. | Robert C Marshall |
| 181. | Robert D Zimet |
| 182. | Ruby Scott |
| 183. | S Fleishaker & E J Madow Co-Ttee |
| 184. | Saint Mary S School |
| 185. | Sandra Mclaren Foote Ttee |
| 186. | Scott Miller IRA |
| 187. | Scottrade Inc Cust FBO |
| 188. | Six Harts Ltd Flp |
| 189. | Stephen C Atlas |
| 190. | Steven Tenenbaum |
| 191. | Stockcross Fincl Svc Inc |
| 192. | Susan K Roth |
| 193. | Suzanne Whittlesey (IRA) |
| 194. | Teana L Lewis |
| 195. | The Episcopal Academy |
| 196. | The Jeffrey A. Marks Living Tr |
| 197. | The Michael And Jill Mccluskey |
| 198. | The Rittgers Family Tr |
| 199. | Thomas Monahan |
| 200. | Thomas Peter Wittmann Tod |
| 201. | Thomas Shelby Ttee |
| 202. | Tim Smith & Jan Smith Jt Ten |
| 203. | Todd Davies Erskine |
| 204. | Tricia E Griffin |
| 205. | Tsu-Chieh E Wang & |
| 206. | Veronica M Schultz |

| | |
|---|---|
| 207. | Victoria Cikaliuk And |
| 208. | Wanda Lou Henderson Wood |
| 209. | Warren  Liddell Simple IRA |
| 210. | Wilma-Jeann Lynn |
| 211. | Zachary R Kranz |

### Professionals

| | |
|---|---|
| 1. | Accura |
| 2. | Baker Botts LLP |
| 3. | BIMCO |
| 4. | Brian Foley & Company, Inc |
| 5. | Bugge, Arentz-Hansen & Rasmussen |
| 6. | Caesar & Napoli |
| 7. | Chalos, O'Connor & Duffy |
| 8. | Choi & Kam Law Office |
| 9. | Clarksons Valuations Limited |
| 10. | Computershare Inc |
| 11. | Computershare Shareowner Services |
| 12. | Constantine P. Georgiopoulos |
| 13. | Curtis, Mallet-Prevost, Colt & Mosle LLP |
| 14. | Dahlman Rose & Co LLC |
| 15. | Deloitte & Touche LLP |
| 16. | Eversheds |
| 17. | Fragomen, Del Rey, Bernsen & Loewy LLP |
| 18. | Hedge Trackers |
| 19. | Holland  & Knight LLP |
| 20. | Holman Fenwick and Willan |
| 21. | Ince & Co. |
| 22. | International Registries LLC |
| 23. | Joele Frank |
| 24. | Johnson Stokes |
| 25. | Joseph Tan Jude Benny LLP |
| 26. | Junge & Mele, LLP |
| 27. | K & L Gates LLP |
| 28. | Kaye Scholer LLP |
| 29. | Keesal, Young & Logan |
| 30. | Kegels & Co |
| 31. | Kramer Levin Naftalis & Frankel LLP |
| 32. | Leaf & Associates LLC |
| 33. | Mahoney & Keane LLP |
| 34. | Marsoft |
| 35. | Mello Jones & Martin |
| 36. | MJM Limited |
| 37. | Norton Rose |
| 38. | Patton, Moreno & Asvat |
| 39. | Pershing LLC |

| | |
|---|---|
| 40. | Phelps Dunbar LLP |
| 41. | Poles,Tublin, Tratakis, Gonzalez LLP |
| 42. | Reed Smith LLP |
| 43. | Reeder & Simpson P.C. |
| 44. | Rothstein, Kass & Company, P.C. |
| 45. | Sammarco E Associados Advocacia |
| 46. | Seward and Kissel |
| 47. | Society Of Maritime Arbitrators Inc. |
| 48. | Stembridge Solicitors |
| 49. | Stephenson Harwood |
| 50. | Steven Hall & Partners |
| 51. | The Blackstone Group, L.P. |
| 52. | The IGB Group |
| 53. | Thomson Reuters (Markets) LLC |
| 54. | VesselValue Ltd |
| 55. | Watson, Farley & Williams LLP |
| 56. | White & Case LLP |
| 57. | Wintell & Co. |
| 58. | Winter Scott Solicitors |

**Insurance and Benefits Carriers, Brokers and Administrators**

| | |
|---|---|
| 1. | ACE American Insurance Company |
| 2. | AIG, Illinois National Insurance Company |
| 3. | Allianz Global Corporate & Specialty (France) |
| 4. | Arch Underwriting at Lloyds Ltd. Syndicate 2012 |
| 5. | Argo |
| 6. | Argonaut Insurance Company |
| 7. | Ascot |
| 8. | Ascot via Scandinavian Market Agency |
| 9. | Aspen Managing Agency Ld Syndicate 4711 |
| 10. | Association (Bermuda) Ltd |
| 11. | Assuanceforningen Gard (gjensidig) |
| 12. | Assuranceforeningen Skuld (GJENSIDIG) |
| 13. | Assuranceforningen Gard (gjensidig) |
| 14. | Beazley Furlonge Ltd. Syndicate 2623 |
| 15. | Brit Syndicate Ltd. 2987 |
| 16. | CNA |
| 17. | Castle Point National Insurance Company |
| 18. | Chernoff Diamond & Co., LLC |
| 19. | Cigna Global Health Benefits |
| 20. | Concept Special Risks |
| 21. | Continental Casualty Company |

| | |
|---|---|
| 22. | Endurance American Specialty |
| 23. | First Reliance Standard Life |
| 24. | Gard Marine & Energy Limited |
| 25. | Gard P&I (Bermuda) Ltd. |
| 26. | Gard Services AS |
| 27. | Generali IARD |
| 28. | Gold Circle Benefits, Inc. |
| 29. | Granite State Insurance |
| 30. | Great Lake Reinsurance UK, PLC (Munich Re Group) |
| 31. | Groupe La Securite Nouvelle |
| 32. | Hartford Fire Insurance Company |
| 33. | HDI - Gerling Industrie Versicherung AG |
| 34. | Henschien Insurance Services Ltd AS |
| 35. | Hiscox Insurance Servics (Guernsey) Limited |
| 36. | Insurance Company of the State of Pennsylvania |
| 37. | Inter Hannover Sweden |
| 38. | La Securie Nouvelle |
| 39. | Leeds & Leeds Company, Inc. |
| 40. | Liberty Mutual Insurance Europe Limited |
| 41. | Lockton Insurance Brokers, LLC |
| 42. | Mapfre Global Risks |
| 43. | Markel Syndicate Management Ltd. 3000 |
| 44. | Marsh USA, Inc. |
| 45. | Metropolitan Life Insurance Company |
| 46. | Mitsui Sumitomo Insurance Co (EU), Ltd |
| 47. | Mitsui Sumitomo Insurance Co., Ltd. |
| 48. | Mitsumi Sumitomo Insurance Co (EU), Ltd |
| 49. | Montpelier Syndicate 5151 |
| 50. | National Benefit Life Insurance Company |
| 51. | National Vision Adminisrators, LLC |
| 52. | Norwegian Hull Club |
| 53. | Oxford Health Plans |
| 54. | Skuld Lloyds Syndicate 1897 |
| 55. | Skuld Mutual Protection & Indemnity Association (Bermuda) Ltd. |
| 56. | Skuld Syndicate 1897 |
| 57. | SSL Insurance Brokers Limited |
| 58. | Strike Club |
| 59. | Talbot Underwriting Syndicate 1183 |
| 60. | The Shipowners Insurance and Guaranty Company Ltd. |
| 61. | The Shipowners Mutual Strike Association (Bermuda) Ltd. |

| | | | | |
|---|---|---|---|---|
| 62. | The United Kingdom Mutual Steamship Assurance Association (Bermuda) Limited | | 14. | Clipper Group (Management) Ltd. |
| 63. | Association (Europe) Limited | | 15. | Clipper Logger Pool |
| 64. | Tower Group Companies | | 16. | Cosco Bulk Carrier Co. Ltd |

62.     The United Kingdom Mutual Steamship Assurance Association (Bermuda) Limited
63.     Association (Europe) Limited
64.     Tower Group Companies
65.     Travelers
66.     Travelers Syndicate 5000
67.     UK Defense Club
68.     UK P&I CLUB
69.     XL Marine & Offshore Energy
70.     XL Specialty Insurance Company
71.     XL Specialty Insurance Company

**Deposit Banks**

1.     Credit Agricole
2.     Deutsche Bank
3.     DnB Nor Bank ASA
4.     J.P Morgan Asset Management
5.     Nordea Bank AB

**Litigation Adversaries**

1.     D'Amico Shipping Singapore
2.     Dadi Impex PVT Ltd
3.     Korea Line Corporation
4.     NYK Bulkship (Atlantic) N.V. Antwerp
5.     Rizzo-Bottiglieri-de Carlini Armatori SPA, Italy
6.     Samsun Logix Corporation
7.     Nathan Lewis

**Current and Recent Charterers**

1.     A/C BULKMARINE  LTD
2.     AMN Bulk Carriers Inc.
3.     Asia Maritime Pacific Chartering Ltd.
4.     Bagadiya Brothers (Singapore) PTE. LTD.
5.     BHP Billiton Freight Singapore PTE. LTD.
6.     BHP Billiton Marketing  AG
7.     C Transport Panamax  LTD.
8.     Cargill International S.A.
9.     Cargill Ocean Transportation (S) PTE Limited Singapore
10.     Centurion Bulk PTE Ltd.
11.     Chartering Ltd.
12.     Clipper Bulk Shipping N.V.
13.     Clipper Bulk (USA) Inc.

14.     Clipper Group (Management) Ltd.
15.     Clipper Logger Pool
16.     Cosco Bulk Carrier Co. Ltd
17.     D/S Norden A/S
18.     D'Amico Dry Ltd.
19.     Dadi Impex PVT Ltd.
20.     Dalian Suntime International Col, Ltd.
21.     Dampskibsselskabet Norden A/S (Norden)
22.     DHL Project & Chartering (China) Limited
23.     ED & F MAN Shipping Ltd
24.     Global Maritime Investments Ltd.
25.     Global Maritime Investments Cyprus Limited
26.     Global Maritime Trust (S) PTE Ltd.
27.     Great Pacific Navigaion (Holdings) Corp., Ltd
28.     Grieg Star Bulk A/S
29.     Hamburg Bulk Carriers
30.     Hanjin Shipping Co., Ltd.
31.     Hyndai Merchant Marine Co. Ltd.
32.     Hyundai Glovis Co. Ltd
33.     J. Aron and Co.
34.     Jaldhi Overseas PTE Ltd.
35.     JIT International Co., Ltd.
36.     Klaveness Chartering
37.     Korea Line Corporation
38.     Lauritzen Bulkers A/S or LB/IVS Pool, in which Lauritzen Bulkers A/S acts as the pool manager
39.     Louis Dreyfus  Commodities Suisse SA
40.     Louis Dreyfus Corp.
41.     Morgan Stanley Captal Group INC
42.     Navig8 Inc.
43.     Noble Chartering  SA
44.     Noble Chartering INC BVI
45.     Oceanwide Services GMBH
46.     Olam International Limited
47.     Olendorff GMBH & Co.
48.     Pacific Basin Chartering Ltd. (Pacbasin)
49.     Pacific Bulk Shipping
50.     Pacific Glory Shipping PTE LTD
51.     Pacific World Shipping PTE Ltd.
52.     PCL (Shipping) PTE Ltd
53.     Pioneer Navigation Ltd.
54.     Platina Bulkers PTE Ltd
55.     Refined Success Ltd.

56. Rizzo-Bottiglieri-de Carlini Armatori SPA, Italy
57. Samsun Logix Corporation
58. Sangamon Transportaition  Group
59. Setaf– Saget SAS
60. Siva Bulk  LTD
61. SK Shipping Co.,  Ltd.
62. STX Pan Ocean Co, Ltd
63. Swissmarine Services S.A.
64. Thoresen Shipping Singapore PTE Ltd.
65. Trafigura Beheer B.V.
66. TTMI Sarl
67. UltraBulk A/S
68. U-Sea Bulk A/S
69. Wan Bong Chartering Co Limited
70. West Line Shipping Co., Ltd.
71. Western Bulk PTE Ltd
72. WOL Ocean International Co., Ltd.

## Brokers

1. Ace Chartering
2. Arrow Shipbrokers
3. Bancosta
4. Banchero-Costa & C Spa
5. Bancosta Monaco Sam
6. BBT Tradeship LLC
7. Braemar Technical Services Ltd
8. H Clarkson & Company LTD
9. Clarksons (London)
10. Clarksons UK
11. Clarkson Research Services Limited
12. Clarksons Asia Pte Ltd
13. Jf Dillion & Co, LLC
14. Genco Shipping & Trading
15. Hannah Shipping Corp
16. Hyundae Express Co., Ltd
17. ICAP Shipping USA Inc
18. ICAP Shipping Limited
19. IFCHOR Capes S.A.
20. ICAP Hyde & Company Limited
21. Larsen & Niclasen A/s
22. Lsssa
23. Peraco Chartering (USA) LLC
24. Rs Platou
25. Salient Maritime Inc.
26. Scandmar Carriers S.A. (Bery Maritime)

27. Skarrup
28. SSY London
29. Superior Maritime Services
30. Transpacific Maritime Inc.
31. VS Chartering INC
32. Wallem Shipbroking (HK) Ltd.

## Pool-Related Entities

1. Clipper Group (Management), Ltd.
2. Clipper Logger Pool
3. Lauritzen Pool (pool manager of LB/IVS Pool)
4. LB/IVS Pool

## Contract Counter-Parties

1. American Funds Distributors, Inc.
2. Intercargo International Association of Dry Cargo Shipowners
3. ACC Business
4. Accelerated Information Systems
5. Aegean Marine Petroleum SA
6. American Bureau of Shipping
7. Anglo-Eastern Group
8. Anglo-Eastern Ship Management Limited
9. Baltic Trading Limited
10. Bolero International Limited
11. Broadridge Investor Communications Solutions Inc.
12. Chengxi Shipyard Co., Ltd.
13. Cogent Communications
14. Discovery Benefits, Inc.
15. DnB Bank ASA (f/k/a NOR Bank ASA)
16. DnB Nor Bank ASA
17. DnV GL AS
18. Doric Shipbrokers USA LLC
19. Dynamic Business Systems
20. Future Care, Inc.
21. Globe Wireless, LLC
22. Hans Jensen Lubricators
23. Hedge Trackers, LLC
24. Heidenreich Innovations LLC
25. Herbert-ABS Software Solutions, LLC
26. Hiscox Insurance Services (Guernsey) Limited
27. I-deal LLC

28. International Paint LLC
29. Iron Mountain Information Management, Inc.
30. John C. Wobensmith
31. Light Ship Ekko Chartering
32. Lloyd's Register North America, Inc.
33. Maritime Equity Partners LLC
34. Maritime Services Limited
35. MML Investors Services, Inc.
36. Neopost USA Inc.
37. Net Access Corporation
38. Oino ShipBrokers Co. Ltd.
39. Paychex, Inc
40. Penguin Maintenance and Service
41. PK Kakoulidis Shipping Co. Ltd.
42. Retirement & Benefit Systems, LLC
43. RightShips Pty Ltd
44. Shell Marine Products (US) Company
45. Shipnet AS
46. SK Marine Consultancy, Ltd.
47. Thomson Reuters Governance Risk and Compliance
48. V.Ships Limited
49. V.Ships UK Limited
50. VL International Ltd dba Viswa Lab
51. Wallem Shipmanagement Limited
52. Wallem Shipmanagement, Hong Kong
53. Wells Fargo Financial Leasing, Inc.

## Utilities

1. Acc Business
2. AT&T Mobility
3. Cogent Communications
4. Dynamic Business System
5. Net Access Corporation
6. Precision Interconnect
7. Premiere Global Service
8. Premiere Global Service
9. Time Warner Cable
10. World Link Communications

## Lessors/Lessees (Sub and Super) and Professional

1. Cerberus Capital Management, L.P.
2. Fisher Brothers Management Co. LLC

3. Fisher-Park Lane Owner LLC
4. MeadWestvaco Corporation
5. Paul Hastings LLP
6. The 51st St. Realty Corporation
7. West Virginia Pulp and Paper Company

## Vendors

1. Acc Business
2. ACE Chartering
3. Admiral Marine Services PVT LTD
4. Aegean Marine Petroleum Network, Inc.
5. Ambrey Risk
6. American Bureau Of Shipping
7. American Express
8. American Funds
9. Applied Weather Technology Inc
10. Arrow Shipping
11. Avant Garde Maritime Services
12. Bolero International Limited
13. BP Marine Limited
14. Braemar Technical Services Ltd
15. Brookes Bell
16. Budd  S.A
17. Bunkers International Corp
18. Burgoynes Consulting Scientists
19. Chemoil Adani Pte Ltd
20. Chemoil Corporation
21. Chimbusco Pan Nation
22. China Ocean Shipping Agency
23. China Shipping International
24. Cockett Marine Oil Limited
25. Cosco (guangdong) Shipyard Co. Ltd
26. Credit Agricole
27. Dan-bunkering (america) Inc
28. Dexia Group
29. Discovery Benefits, Inc.
30. Djibouti Maritime Security
31. Dooley Sea Weather Analysis
32. Drydocks World
33. Dynamic Business Systems
34. ED&F Man
35. Equatorial Marine Fuel Management
36. Flex Spending & Transit
37. Fratelli Cosulich Bunker (HK)
38. Fratelli Cosulich Bunkers (s) PTE
39. Future Care, Inc.

| | |
|---|---|
| 40. | Genius Success Industrial Limited |
| 41. | GHL Enterprises Inc |
| 42. | Globe Wireless Inc. |
| 43. | Guangzhou Css Oceanline Gws |
| 44. | Hans Jensen Lubricators |
| 45. | Headway |
| 46. | Heidenreich Innovations LLC |
| 47. | Herbert-abs Software Solutions LLC |
| 48. | I.C.S. Petroleum Ltd |
| 49. | IFCHOR Capes SA |
| 50. | Integra Fuels Inc |
| 51. | Intercargo |
| 52. | International Marine Security Cons. |
| 53. | International Paint |
| 54. | J.E Hyde |
| 55. | Jiangsu Xinrong Shipyard Co Ltd |
| 56. | John Odwazny |
| 57. | John C. Wobensmith |
| 58. | Ktb Oil Corporation |
| 59. | Lauritzen Bulkers A/S |
| 60. | LISCR, Llc - Registration Account VA |
| 61. | Lloyd's Register |
| 62. | Long Island Maritime Co Ltd |
| 63. | M.U.S.C. FZE |
| 64. | Marine Services USA |
| 65. | Mariserv Consulting |
| 66. | Maritime Asset Security and |
| 67. | Metlife Service Group Benefits |
| 68. | Metro Tours & Travel, Inc |
| 69. | Minton Treharne & Davies |
| 70. | Mladen Cvrljak |
| 71. | Monjasa Inc |
| 72. | Morales Petroleum Services Corp |
| 73. | Neptune Maritime Security Group Ltd |
| 74. | Net Access Corporation |
| 75. | Nexus Consulting Group |
| 76. | Novosealand Services Ltd |
| 77. | O.W. Bunker China Ltd |
| 78. | O.w. Bunker Malta Limited |
| 79. | O.w. Bunker Middle East Dmcc |
| 80. | O.W. Bunker USA Inc |
| 81. | Ocean Energy Ltd |
| 82. | Ocean Protection Services |
| 83. | Pandiman Philippines |
| 84. | Protection Vessels Int Ltd |
| 85. | Redfour Security Group |

| | |
|---|---|
| 86. | Rightship Pty Ltd |
| 87. | Rothstein Kass |
| 88. | RS Platou |
| 89. | Sea Marshals Ltd |
| 90. | Seamarshals Ltd |
| 91. | Security Service (Maritime) LTD |
| 92. | Service Marshals Ltd |
| 93. | Shell Marine Products (us) Co. |
| 94. | Shipnet AS |
| 95. | Sk Energy Co Ltd |
| 96. | SK Marine Consultancy Ltd |
| 97. | South African Bunkering & Trading |
| 98. | Sun Quest Maritime Co Ltd. |
| 99. | The Trident Group Inc |
| 100. | Trafigura Beheer BV |
| 101. | Trust Company Of The Marshall |
| 102. | Uni Petroleum Pte Ltd |
| 103. | United Bunkering & Trading |
| 104. | Verbeke Bunkering NV |
| 105. | VL International Ltd dba Viswa Lab |
| 106. | Wallem Ship Broking (HK) Ltd |
| 107. | World Fuel Services (Europe) |

**Top Unsecured Creditors**

| | |
|---|---|
| 1. | 299 Cleaning Service Co LP |
| 2. | Acc Business |
| 3. | American Express |
| 4. | American Funds |
| 5. | Anglo Eastern Ship Management |
| 6. | Arrow Shipping |
| 7. | Bancosta |
| 8. | The Bank of New York Mellon |
| 9. | BBT Tradeship LLC |
| 10. | Bistro Cafe Inc |
| 11. | Bloomberg |
| 12. | Brittany P&I Services |
| 13. | Budd S.A |
| 14. | Cargill International SA |
| 15. | Cerberus Capital Management L.P |
| 16. | Chengxi Shipyard and Co Ltd |
| 17. | China Shipowners Mutual Association |
| 18. | Clarkson |
| 19. | Computershare Inc. |
| 20. | Corporate Coffee Systems |
| 21. | Credit Agricole |
| 22. | Deutsche Bank |

| | |
|---|---|
| 23. | DnB Bank ASA, New York |
| 24. | DnV GL AS |
| 25. | Dooley Sea Weather Analysis |
| 26. | Dynamic Business Systems |
| 27. | East China Marine & Cargo Surveyors |
| 28. | ED&F Man |
| 29. | EFTPS (Federal Tax) |
| 30. | Federal Express |
| 31. | Fisher-Park Lane Owner LLC |
| 32. | Gard As |
| 33. | General Maritime Agency Inc |
| 34. | General Maritime Corporation |
| 35. | Hamburg Bulk Carriers GMBH KG |
| 36. | Herbert Engineering Corp |
| 37. | Hyundae Express Co., Ltd. |
| 38. | ICAP Shipping USA (Inc) |
| 39. | IFCHOR Capes SA |
| 40. | Internal Revenue Service |
| 41. | JF Dillon & Co, LLC |
| 42. | John C. Wobensmith |
| 43. | Kennedy Lillis Schmidt & English |
| 44. | Klaveness Chartering |
| 45. | Laden Maritime Inc |
| 46. | Lauritzen Bulkers A/S |
| 47. | Leeds & Leeds Inc |
| 48. | Legero International (Holland) B.V |
| 49. | Lloyd's Register |
| 50. | Lorentzen & Stemoco (Singapore) Inc |
| 51. | Mariserv Consulting |
| 52. | Maritime Services International Ltd |
| 53. | Marsh Usa Inc |
| 54. | Mladen Cvrljak |
| 55. | Novosealand Services Ltd |
| 56. | NSL Marine Ltd |
| 57. | NYC Department of Finance |
| 58. | NYSE Market, Inc. |
| 59. | NYK Bulkship Europe Ltd |
| 60. | Oino ShipBrokers Co Ltd |
| 61. | Pacific Basin Chartering Ltd. |
| 62. | Paychex |
| 63. | Penguin Maintenance |
| 64. | Peraco Chartering (USA) LLC |
| 65. | Pioneer Navigation LTD |
| 66. | Rothstein Kass |
| 67. | RS Platou |
| 68. | Skuld |

| | |
|---|---|
| 69. | Skuld Assurance foreningen |
| 70. | SSY London |
| 71. | Staples |
| 72. | Swapan Biswas |
| 73. | Swissmarine |
| 74. | TBS Worldwide Services Inc. |
| 75. | Temporary Alternatives Corporate Resource Services |
| 76. | Thompson Reuters (Markets) LLC |
| 77. | The Bank of New York Mellon |
| 78. | The IGB Group |
| 79. | The Trident Group Inc |
| 80. | Thoresen Shipping Singapore PTD |
| 81. | Trafigura Beheer BV |
| 82. | United Kingdom Mutual Steamship Assurance |
| 83. | Venepandi |
| 84. | V.Ships Monaco Sam |
| 85. | V.Ships UK Limited |
| 86. | VS Chartering Inc. |
| 87. | W.B. Mason Co. Inc. |
| 88. | Wallem Ship Management Limited |
| 89. | Wallem Shipbroking (HK) Ltd. |
| 90. | Western Bulk Carriers |
| 91. | Wilmington Trust |
| 92. | Winter Scott Solicitors |

**Office of the United States Trustee (Manhattan Office)**

| | |
|---|---|
| 1. | Andrea B. Schwartz |
| 2. | Andy Velez-Rivera |
| 3. | Anna M. Martinez |
| 4. | Brian S. Masumoto |
| 5. | Catletha Brooks |
| 6. | Danny A. Choy |
| 7. | Ercilia A. Mendoza |
| 8. | Greg M. Zipes |
| 9. | Linda A. Riffkin |
| 10. | Maria Catapano |
| 11. | Mary V. Moroney |
| 12. | Michael Driscoll |
| 13. | Myrna R. Fields |
| 14. | Joseph Nadkarni |
| 15. | Nazar Khodorovsky |
| 16. | Paul K. Schwartzberg |
| 17. | Richard C. Morrissey |

KL2 2832135.10

18.    Richard W. Fox
19.    Serene Nakano
20.    Susan Golden
21.    Sylvester Sharp
22.    Victor Abriano
23.    William K. Harrington

## Bankruptcy Judges (S.D.N.Y.)

1.    Chief Judge Cecelia G. Morris
2.    Judge Allan L. Gropper
3.    Judge Martin Glenn
4.    Judge Robert D. Drain
5.    Judge Robert E. Gerber
6.    Judge Robert E. Grossman
7.    Judge Sean H. Lane
8.    Judge Shelley C. Chapman
9.    Judge Stuart M. Bernstein

KL2 2832135.10