# MILBANK, TWEED, HADLEY & M$^{\text{c}}$CLOY LLP

**1 CHASE MANHATTAN PLAZA**

**NEW YORK, NY 10005**

212-530-5000

FAX: 212-530-5219

**LOS ANGELES**
213-892-4000
FAX: 213-629-5063

**WASHINGTON, D.C.**
202-835-7500
FAX: 202-835-7586

**LONDON**
44-20-7615-3000
FAX: 44-20-7615-3100

**FRANKFURT**
49-(0)69-71914-3400
FAX: 49-(0)69-71914-3500

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**BEIJING**
8610-5969-2700
FAX: 8610-5969-2707

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

**TOKYO**
813-5410-2801
FAX: 813-5410-2891

**SÃO PAULO**
55-11-3927-7700
FAX: 55-11-3927-7777

June 2, 2014

**VIA EMAIL & ECF**

The Honorable Sean H. Lane
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

Re:    *In re Genco Shipping & Trading Limited, et al. No. 14-11108-shl*

Dear Judge Lane:

We write on behalf of Wilmington Trust, National Association ("Wilmington Trust") in response to the Official Equity Committee's (the "Equity Committee") letter (the "Letter") to Your Honor dated May 30, 2014, wherein the Equity Committee requests a conference to discuss a purported discovery dispute regarding subpoenas served by the Equity Committee on Houlihan Lokey ("Houlihan") and Jefferies.[1]  Milbank and Wilmington Trust jointly retained Houlihan as a financial advisor to provide services at Milbank's direction.

As a threshold matter, the Letter was filed in violation of Your Honor's Chamber's Rules regarding discovery disputes.  Specifically, prior to filing the Letter, the Equity Committee did not first attempt "to make a good faith effort to resolve the dispute with opposing counsel consistent with Local Rule 7007-1(a)."  Chambers Rules, Discovery Disputes.  Indeed, prior to receipt of the Letter, neither Wilmington Trust nor Milbank was even aware that there was a discovery dispute.  In a May 25, 2014 email, Milbank informed counsel for the Equity

---

[1]    The subpoena served by the Equity Committee on Houlihan included 32 separate discovery requests.

The Honorable Sean H. Lane
June 2, 2014
Page 2

Committee of its intentions to review and produce documents from Houlihan, subject to certain limitations.[2]  The Equity Committee did not respond to the email or request a meet and confer. Five days later, with no advance notice, the Letter was filed with the Court.

Moreover, the Letter is premised on two blatant misrepresentations.  First, the Equity Committee claims that Houlihan expressed its intention to withhold "internal and external communications regarding negotiations of the RSA or other financing alternatives, including any documents regarding valuation."  Houlihan never expressed any such thing.  In fact, in the May 25 email, Milbank advised the Equity Committee that it would gather Houlihan documents for review using search terms designed "to target documents **relating to valuation of the Debtor/Debtors' vessels and documents relating to RSA negotiations**."[3]  As noted above, the Equity Committee did not respond to this communication.  Thus, Houlihan has been collecting documents, and Milbank has been reviewing those documents for production, under the (apparently mistaken) assumption that there was no dispute with the Equity Committee regarding the scope of production.

Second, the Equity Committee incorrectly alleges that Houlihan has "refused to set forth in writing the categories of documents that they have withheld and the grounds for withholding them."  This is simply a fabrication.  Houlihan planned to provide a categorical privilege log after its production is complete[4] and has never "refused" to do otherwise.  Again, the Equity Committee's misunderstanding on this point could have been easily addressed by a simple email or telephone call—as was its obligation under Your Honor's rules.

Houlihan does intend, however, to assert work product protection over documents containing any valuation work it has undertaken in this matter because it performed such work at the direction of counsel in its role as a consulting expert.  At the time Houlihan was engaged, Milbank and Wilmington Trust anticipated that a Chapter 11 filing by Genco might be necessary, and Houlihan was specifically instructed to perform its services at the direction of counsel.  As such, any valuation materials prepared by Houlihan were indisputably "created because of anticipated litigation" (*i.e.*, the Debtors' imminent restructuring) and "would not have been prepared in substantially similar form but for the prospect of that litigation."  *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998).  Such materials do not lose work product protection merely because they are "intended to assist in the making of a business decision influenced by the likely outcome of the anticipated litigation."  *Id*; *see also In re Quigley Co., Inc.*, 04-15739 SMB, 2009 WL 9034027, at *6, *13 (Bankr. S.D.N.Y. Apr. 24, 2009) (holding that a retained valuation firm's financial projections—which were created because of an anticipated bankruptcy filing—were protected work product); *S.E.C. v. Beacon Hill Asset Mgmt.*

---

[2]  Exhibit 1 to the Letter (emphasis added).

[3]  The May 25 email further advised the Equity Committee that Milbank would be excluding "emails that were exchanged between Milbank and Houlihan" because, *inter alia*, the vast majority would be protected as attorney work product and the burden of the collection and review of such documents far outweighs any potential benefit.

[4]  Milbank anticipates completing production of Houlihan's documents by June 3, 2014.

The Honorable Sean H. Lane
June 2, 2014
Page 3

*LLC*, 02 CIV. 8855 (LAK), 2004 WL 2059702, at *2 (S.D.N.Y. Sept. 14, 2004) (finding that consultations with valuation experts were protected under the work-product doctrine); *In re Tri-State Outdoor Media Grp., Inc.*, 283 B.R. 358, 364 (Bankr. M.D. Ga. 2002) (financial advisory work done by Houlihan on behalf of an ad hoc committee of bondholders prior to a bankruptcy filing held to be protected work product because they were created "in anticipation of bankruptcy"). Moreover, *Genon Mid-Atlantic, LLC v. Stone and Webster Inc.*, cited by the Equity Committee, is inapposite. 2011 WL 2207513 (S.D.N.Y. June 2, 2011). The document at issue in *Genon Mid-Altantic* was an audit report prepared for the dual purpose of assessing company debts in the ordinary course of business and analyzing the success of potential legal claims. In contrast, Houlihan's valuations served no dual purpose and were solely prepared in anticipation of the Debtors' restructuring. In short, any valuation materials prepared by Houlihan in its capacity as a consulting expert are entitled to protection as attorney work product.

Finally, the Equity Committee cites to an internal memorandum produced by Midtown Acquisitions L.P. ("Midtown") —a subpoenaed member of the 2007 Credit Facility Steering Committee—to assert that Houlihan's documents "are plainly relevant to this confirmation dispute."[5] That memorandum, an internal Midtown valuation, is not Houlihan's work product and is thus wholly irrelevant to this current discovery dispute.[6]

---

[5]     *See* Exhibit 5 to the Letter.

[6]     Furthermore, the Equity Committee's citation to the Midtown valuation is disingenuous at best. The document in question shows a current net asset value of $1.25 billion for the Debtors, and a range of value for the Debtors **at the end of 2015** of $1.7 to $1.9 billion. Importantly, the 2015 range (i) is based on a number of assumptions about the future of the shipping market which may or may not be accurate and (ii) is not even discounted to present value. In short, the figures cited by the Equity Committee do not in any way purport to be indicative of the present value of the Debtors and, given their total irrelevance to the present discovery dispute, seem to have been included as an attempt to influence the Court's view about a valuation hearing that has yet to occur.

The Honorable Sean H. Lane
June 2, 2014
Page 4

      For the foregoing reasons, we respectfully request that the Court order that Houlihan's valuation materials and other work undertaken at the direction of counsel are protected as attorney work product.

                                        Very truly yours,

                                        */s/ David S. Cohen*

                                        David S. Cohen