**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| GENCO SHIPPING & TRADING LIMITED, et al., | ) Lead Case No. 14-11108 (SHL) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**FIRST AND FINAL APPLICATION OF BLACKSTONE ADVISORY PARTNERS L.P.**
**AS FINANCIAL ADVISOR TO DEBTORS FOR ALLOWANCE AND FINAL APPROVAL OF**
**COMPENSATION FOR ACTUAL AND NECESSARY SERVICES RENDERED AND**
**REIMBURSEMENT OF ACTUAL AND NECESSARY OUT-OF-POCKET EXPENSES**
**INCURRED FOR THE PERIOD OF APRIL 21, 2014 THROUGH JULY 9, 2014**

<u>**SUMMARY SHEET**</u>

| | |
|---|---|
| Name of Applicant: | Blackstone Advisory Partners L.P. |
| Authorized to Provide Professional Services to: | Debtors |
| Date of Retention: | Order approving the retention of Blackstone Advisory Partners L.P. *nunc pro tunc* to April 21, 2014 entered on May 16, 2014 [Docket No. 177] |
| Period for which compensation and reimbursement is sought: | April 21, 2014 through July 9, 2014 |
| Amount of Compensation sought as actual, reasonable, and necessary: | $5,771,639.78 |
| Amount of Expense reimbursement sought as actual, reasonable, necessary: | $5,981.65 |
| Amount of Cash Payment Sought: | $5,590,954.77 |

The total time expended for the preparation of this application was 2 hours and the corresponding compensation requested is $0.00.

This is a ___ monthly    ___ interim    _x_ final application

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GENCO SHIPPING & TRADING LIMITED, et al., | ) | Lead Case No. 14-11108 (SHL) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**FIRST AND FINAL APPLICATION OF BLACKSTONE ADVISORY PARTNERS L.P.**
**AS FINANCIAL ADVISOR TO DEBTORS FOR ALLOWANCE AND FINAL APPROVAL OF**
**COMPENSATION FOR ACTUAL AND NECESSARY SERVICES RENDERED AND**
**REIMBURSEMENT OF ACTUAL AND NECESSARY OUT-OF-POCKET EXPENSES**
**INCURRED FOR THE PERIOD OF APRIL 21, 2014 THROUGH JULY 9, 2014**

Blackstone Advisory Partners L.P. ("Blackstone"), financial advisor to Genco Shipping & Trading Limited and certain of its direct and indirect subsidiaries, as debtors and debtors-in-possession (collectively, the "Debtors"), submits for review its final application of fees and out-of-pocket expenses (the "Final Application") for the period of April 21, 2014 through July 9, 2014 (the "Application Period"), in accordance with the Procedures Order (as hereinafter defined), U.S. Trustee Guidelines, and the local rules and orders of the U.S. Bankruptcy Court for the Southern District of New York.  In support of this Statement, Blackstone states as follows:

## I. Background

1.   On April 21, 2014 (the "Petition Date"), the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.   Since the Petition Date, the Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.

3.   On April 29, 2014, the Debtors applied to the Court for an order [Docket No. 114] authorizing the retention and employment of Blackstone as financial advisor *nunc pro tunc* to April

21, 2014, pursuant to the terms of an Agreement between the Blackstone and the Debtors dated December 23, 2013 (the "Agreement"), effective as of December 10, 2013. A copy of the Agreement is attached hereto as Appendix A.

4.   On May 16, 2014, the Court entered an order (the "Retention Order") [Docket No. 177], pursuant to sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Rules 2014-1 and 2016-1, authorizing the employment and retention of Blackstone as financial advisor to the Debtors *nunc pro tunc* to the Petition Date. A copy of the Retention Order is attached hereto as Appendix B.

5.   On July 7, 2014, the Court entered an order [Docket No. 322] confirming the *First Amended Prepackaged Plan of Reorganization of the Debtors*. The Plan became effective on July 9, 2014.

6.   Blackstone submits this Final Application for allowance and final approval of: (i) compensation for actual and necessary professional services rendered by it as financial advisor to the Debtors during the Application Period; (ii) Blackstone's Restructuring Fee; and (iii) the reimbursement of out-of-pocket expenses incurred during the Application Period.

## II. The Blackstone Engagement

7.   Blackstone was retained by the Debtors as financial advisor to provide the following financial advisory services:

   (a) Assist in the evaluation of the Debtors' businesses and prospects;

   (b) Assist in the development of the Debtors' long-term business plan and related financial projections;

   (c) Assist in the development of financial data and presentations to the Debtors' Board of Directors, various creditors and other third parties;

   (d) Analyze the Debtors' financial liquidity and evaluate alternatives to improve such liquidity;

(e) Analyze various restructuring scenarios and the potential impact of these scenarios on recoveries of those stakeholders impacted by the Restructuring;

(f) Provide strategic advice with regard to restructuring or refinancing the Debtors' Obligations;

(g) Evaluate the Debtors' debt capacity and alternative capital structures;

(h) Participate in negotiations among the Debtors, and its creditors, suppliers, lessors and other interested parties;

(i) Value securities offered by the Debtors in connection with a Restructuring;

(j) Advise the Debtors and negotiate with lenders with respect to potential waivers or amendments of various credit facilities;

(k) Assist in arranging financing for the Debtors (which may include, without limitation, debtor-in-possession financing), as requested;

(l) Provide expert witness testimony concerning any of the subjects encompassed by the other financial advisory services; and

(m) Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring, as requested and mutually agreed.

8.    Pursuant to the terms of the Agreement, as approved by the Retention Order, Blackstone

is entitled to be compensated for its services as follows:[1]

(a) A monthly advisory fee (the "Monthly Fee") in the amount of $175,000.00, per month, in cash, with the first Monthly Fee payable upon the execution of the Agreement by both parties and additional installments of such Monthly Fee payable in advance on each monthly anniversary of the effective date, provided that commencing with the fourth Monthly Fee, 50% of the Monthly Fee shall be credited against the Restructuring Fee when and if paid and commencing with the seventh Monthly Fee, 100% of the Monthly Fee shall be credited against the Restructuring Fee when and if paid;

(b) A capital raising fee (the "Capital Raising Fee") calculated as 1.0% of the total issuance size for an affirmative debtor-in-possession financing facility (exclusive of cash collateral) and 5.0% for the issuance amount for an equity financing on new money raised from external parties who are not creditors of the Debtors (excluding any public offering of securities);

(c) An additional fee (the "Restructuring Fee") equal to $5,750,000. Except as otherwise provided herein, a Restructuring shall be deemed to have been consummated upon (a)

---

[1] This description of Blackstone's compensation structure is for summary and illustrative purposes only. The terms of the Agreement and the Retention Order shall apply to any such compensation awarded to Blackstone.

the binding execution and effectiveness of all necessary waivers, consents, amendments or restructuring agreements between the Debtors and its creditors involving the compromise of the face amount of such Obligations or the conversion of all or part of such Obligations into alternative securities, including equity, in the case of an out-of-court restructuring; or (b) the execution, confirmation and consummation of a Plan of Reorganization pursuant to an order of the Bankruptcy Court, in the case of an in-court restructuring. The Restructuring Fee will be earned and payable, in immediately available funds, on consummation of the Restructuring; and

(d) Reimbursement of all reasonable and documented out-of-pocket expenses incurred during the engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of Blackstone's counsel not to exceed $75,000 except as provided in the Indemnification Agreement without the Debtors' prior consent in its sole discretion and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

### III. Services Provided by Blackstone during the Application Period

9.   During the Application Period, Blackstone professionals devoted significant time and attention providing advisory services to the Debtors. The services provided during the Application Period included, but were not limited to, the following:

- Prepared financial analyses at the request of management;

- Maintained and updated 13-week cash flow forecast with management;

- Attended various court hearings and assisted counsel with related matters;

- Participated in May 13, 2014 board of directors meeting;

- Analyzed settlement proposal of Equity Committee;

- Attended diligence meetings with advisors to Equity Committee and management;

- Responded to diligence requests from financial advisors to Equity Committee;

- Assisted counsel in responses to pleadings filed by the Equity Committee;

- Prepared declarations with respect to valuation and restructuring/business plan process;

- Deposed on valuation and restructuring/business plan process;

- Attended depositions of financial advisors to Equity Committee;

- Prepared expert report on valuation;

- Prepared rebuttal report on valuation;

- Assisted counsel with litigation strategy for trial; and

- Testified with respect to valuation and restructuring/business plan process.

### IV. The Blackstone Team

10. The financial advisory services set forth above were performed primarily by: Timothy Coleman, Senior Managing Director; John James O'Connell, Senior Managing Director; Joshua Abramson, Associate; Samuel Levine[2], Analyst; Owen Wurzbacher, Analyst; and other professionals of Blackstone, as needed. Details of the background and experience of the professionals are provided in Appendix C.

### V. Blackstone's Request for Allowance and Final Approval of Compensation

### A. Blackstone's Pre-Petition Assignment

11. Prior to the Petition Date, Blackstone was retained by the Debtors to represent them in their restructuring and reorganization efforts (the "Pre-Petition Assignment"). In connection with the Pre-Petition Assignment, the Debtors paid Blackstone a sum total of $885,636.69 for services rendered and out-of-pocket expenses incurred on behalf of the Debtors for the period of December 10, 2013 through May 9, 2014.

12. Of the $885,636.69 that Blackstone received during the Pre-Petition Assignment, Blackstone earned pre-petition monthly advisory fees totaling $764,166.67 for 131 calendar days covering the period of December 10, 2013 through April 20, 2014, and was reimbursed for $10,636.69 of pre-petition out-of-pocket expenses incurred during the Pre-Petition Assignment.

---

[2] Sam Levine is no longer employed at Blackstone.

After crediting the earned pre-petition fees and reimbursable out-of-pocket expenses from the total amount of pre-payments received prior to the Petition Date, Blackstone was holding a net unearned payment ("Unearned Payment") in the amount of $110,833.33. Accordingly, Blackstone applied the Unearned Payment towards the Monthly Fees requested in connection with it's First (Cumulative) Monthly Statement [Docket No. 339].

**B. <u>Blackstone's Request for Allowance and Final Approval of Monthly Fees</u>**

13. For the Application Period, Blackstone has provided advisory services to the Debtors and earned Monthly Fees for such services totaling $459,139.78 for the period of April 21, 2014 through July 9, 2014.

**C. <u>Blackstone's Request for Allowance and Final Approval of the Restructuring Fee</u>**

14. As set forth in the Agreement, as approved by the Retention Order, Blackstone is entitled to a Restructuring Fee upon the consummation of a restructuring. Pursuant to the Agreement, a "Restructuring shall be deemed to have been consummated upon * * * (b) the execution, confirmation and consummation of a Plan of Reorganization pursuant to an order of the Bankruptcy Court upon the confirmation of a plan pursuant to an order of the Bankruptcy Court . . ." Blackstone respectfully submits that it has earned a Restructuring Fee (net of crediting certain Monthly Fees) in the amount of $5,312,000.00[3] upon the confirmation and consummation of the Plan, which occurred on July 9, 2014. Calculation of said Restructuring Fee is provided in the table below:

---

[3] Pursuant to the Agreement, as approved by the Retention, Blackstone is to receive a gross Restructuring Fee equal to $5,750,000, less 50% of all Monthly Fees earned beginning with the fourth Monthly Fee, and less 100% of all Monthly Fees beginning with the seventh Monthly Fee.

| Advisory Periods | Monthly Fee | Crediting % | Amount(s) Credited Against Restructuring Fee |
|---|---|---|---|
| 12/10/13 – 01/09/14 | $175,000.00 | -- | ($0.00) |
| 01/10/14 – 02/09/14 | 175,000.00 | -- | (0.00) |
| 02/10/14 – 03/09/14 | 175,000.00 | -- | (0.00) |
| 03/10/14 – 04/09/14 | 175,000.00 | 50% | (87,500.00) |
| 04/10/14 – 05/09/14 | 175,000.00 | 50% | (87,500.00) |
| 05/10/14 – 06/09/14 | 175,000.00 | 50% | (87,500.00) |
| 06/10/14 – 07/09/14 | 175,000.00 | 100% | (175,000.00) |
| **Total(s)** | **$1,225,000.00** | | **($437,500.00)** |

| | |
|---|---|
| Gross Restructuring Fee | $5,750,000.00 |
| Total Credits | (437,500.00) |
| **Net Restructuring Fee** | **$5,312,500.00** |

15. Blackstone respectfully submits that the compensation sought in this Final Application for services rendered by Blackstone to the Debtors during the Application Period is fully justified and reasonable based upon (a) the time and labor required, (b) the complexity of the issues presented, (c) the skill necessary to perform the financial advisory services properly, (d) the preclusion of other employment, (e) the customary fees charged to clients in non-bankruptcy situations for similar services rendered, (f) time constraints required by the exigencies of the case and (g) the experience, reputation and ability of the professionals rendering services.

16. Blackstone respectfully submits that the services it has rendered to the Debtors have been necessary and in the best interest of the Debtors and have furthered the goals of all parties in interest. The effort expended by Blackstone in representing the Debtors, the complexity of the issues and the difficulty in negotiating these cases has been substantial.

17. Blackstone respectfully submits that under all of the criteria normally examined in chapter 11 reorganization cases, the compensation requested by Blackstone is reasonable in light of the work performed by Blackstone in these cases.

18. Blackstone respectfully requests that this Court grant approval of all fees earned and out-of-pocket expenses applied for in connection with Application Period, and deem said approval as final.

## D. Blackstone's Request for Allowance and Final of Reimbursement of Out-of-Pocket Expenses Incurred

19. In connection with the advisory services rendered during the Application Period, Blackstone has recognized actual and necessary out-of-pocket expenses in the amount of $5,981.65, which includes $1,469.11 of out-of-pocket expenses incurred but not reflected in Blackstone's prior monthly fee statements. Out-of-pocket expenses incurred by Blackstone are charged to a client if the expenses are incurred for the client or are otherwise necessary in connection with services rendered for such particular client. Blackstone does not factor general overhead expenses into disbursements charged to its clients in connection with chapter 11 cases. Blackstone has followed its general internal policies with respect to out-of-pocket expenses billed as set forth below, with any exceptions specifically explained:

(a) All airfare charges billed are based on coach rates.

(b) With respect to local travel, Blackstone's general policy enables employees to travel by taxi or, in certain circumstances private car service, to and from meetings while rendering services to a client on a client related matter, for which the client is charged. Further, and primarily for safety reasons, employees are permitted to charge to a client the cost of transportation home if an employee is required to work past 9:00 p.m. on client specific matters.

(c) Blackstone's general policy permits its professionals to charge in-office dinner meals to a client who have worked 3 hours beyond their regularly scheduled workday if the employee is required to provide services to the client during such dinnertime.

(d) The Document Production category of expenses includes charges from outside service companies that provide, for a fee, high volume photocopying services on an expedited basis to Blackstone, and charges for internal photocopying services provided by Blackstone. Blackstone bills internal Document Production charges at the rate of $0.10 per page for black and white photocopies, and $0.25 per page for color photocopies. However, and for purposes of these cases, Blackstone will bill the

Debtors at a rate of $0.10 per page for color photocopies in accordance with Administrative Order M-447.

(e)    The Publishing Services category of expenses includes charges for the production of text-based publications such as memoranda and presentations, and printing and binding services.

(f)    The External Research category of expenses includes charges from outside computer/electronic service companies that supply, for a fee, research and/or financial documents to Blackstone. The services provided by these companies primarily consist of the retrieval of financial documents from regulatory agencies and/or the retrieval of research that would not otherwise be available to Blackstone. The Internal Research category of expenses are the charges for time spent by Blackstone research staff in operating the computer/electronic terminals related to these computer/electronic service companies.

(g)    Blackstone bills outgoing long-distance facsimile charges at a rate of $1.25 per page. Blackstone does not bill local or incoming facsimile charges to clients.

20. Blackstone respectfully submits that the out-of-pocket expenses incurred during the Application Period were necessary and reasonable both in scope and amount. Invoices detailing the out-of-pocket expenses recognized during the Application Period are provided in Appendix D.

## E. Summary of Monthly Fees Earned and Out-Of-Pocket Expenses Incurred

21. A summary of the Monthly Fees earned and out-of-pocket expenses incurred during the Application Period is provided in the table below:

| Advisory Periods | Monthly Fees | Expenses | Payment(s) Received[4] | Amount(s) Due |
|---|---|---|---|---|
| 04/21/14 – 04/30/14[5] | $58,333.33 | $-- | ($46,666.66) | $11,666.67 |
| 05/01/14 – 05/31/14 | 175,000.00 | -- | (140,000.00) | 35,000.00 |
| 06/01/14 – 06/30/14 | 175,000.00 | 4,512.54 | -- | 179,512.54 |
| 07/01/14 – 07/09/14[6] | 50,806.45 | 1,469.11 | -- | 52,275.56 |
| Net Restructuring Fee | 5,312,500.00 | -- | -- | 5,312,500.00 |
| **Total(s)** | **$5,771,639.78** | **$5,981.65** | **($186,666.66)** | **$5,590,954.77** |

---

[4] Amount includes the $110,833.33 Unearned Payment allocated pro-rata between April 21 – April 30, 2014 ($46,666.66), and May 1 – 31, 2014 ($64,166.67).
[5] Pro-rated Monthly Fee calculated as follows: 10 out of 30 days multiplied by $175,000.
[6] Pro-rated Monthly Fee calculated as follows: 9 out of 31 days multiplied by $175,000.

## VI. <u>Blackstone's Time Records</u>

22. The amount of the Monthly Fees and reimbursement out-of-pocket expenses sought in this Final Application and Blackstone's billing processes are consistent with market practices both in and out of a bankruptcy context. Blackstone has never billed its clients based on the number of hours expended by its professionals. Blackstone has, however, maintained contemporaneous time records in the Debtors' case in one-half hour increments. Time records of the 1,105.0 hours expended by Blackstone professionals in providing financial advisory services to the Debtors during the Application Period are provided in Appendix E.

23. A summary of the hours expended by Blackstone professionals in providing financial advisory services to the Debtors during the Application Period is outlined below:

| | | April 17 – May 31, 2014 | June 1 – 30, 2014 | July 1 – 9, 2014 | Total Hours |
|---|---|---|---|---|---|
| **Professional** | **Title** | | | | |
| Timothy Coleman | Senior Managing Director | 27.5 | 96.5 | 1.5 | 125.5 |
| Jamie O'Connell | Senior Managing Director | 90.5 | 112.0 | 5.0 | 207.5 |
| Joshua Abramson | Associate | 171.5 | 185.5 | 11.0 | 368.0 |
| Samuel Levine | Analyst | 188.0 | 174.0 | 0.0 | 362.0 |
| Owen Wurzbacher | Analyst | 0.5 | 28.0 | 13.5 | 42.0 |
| **Total(s)** | | **478.0** | **596.0** | **31.0** | **1,105.0** |

Summary of Hours Expended During the Application Period

24. All services provided by Blackstone for which compensation is requested were performed for and on behalf of the Debtors and were not rendered on behalf of any other person.

25. There is currently no agreement or understanding between Blackstone and any other person for the sharing of compensation received or to be received for services rendered in connection with these proceedings.

## VII. <u>Requested Relief</u>

**WHEREFORE**, Blackstone requests the Court to:

(a) Approve the allowance of (i) Blackstone's Monthly Fees for the Application Period in the amount of $459,139.78; (ii) Blackstone's net Restructuring Fee in the amount of $5,312,500.00; and (iii) the reimbursement of out-of-pocket expenses recognized by Blackstone in the amount of $5,981.65 during the Application Period;

(b) Authorize and direct the Debtors to pay Blackstone's Monthly Fees, the net Restructuring Fee, and out-of-pocket expenses for the Application Period as follows:

| | |
|---|---:|
| Monthly Fees | $459,139.78 |
| Net Restructuring Fee | 5,312,500.00 |
| Out-Of-Pocket Expenses | 5,981.65 |
| Less: Payments Received | (186,666.66)[7] |
| **Amount Due Blackstone** | **$5,590,954.77** |

(c) Grant such other and further relief as this Court deems just and proper.

---

[7] Amount reflects the Unearned Payment of $110,833.33.

Dated:   August 25, 2014

Blackstone Advisory Services L.P.
Financial Advisor to the Debtors

By: /s/ John James O'Connell III
        John James O'Connell III
        Senior Managing Director
        345 Park Avenue
        New York, NY 10154

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | )    Chapter 11 |
| | ) |
| GENCO SHIPPING & TRADING LIMITED, et al., | )    Lead Case No. 14-11108 (SHL) |
| | ) |
| Debtors. | )    Jointly Administered |
| | ) |

**CERTIFICATION UNDER GUIDELINES FOR FEES AND OUT-OF-POCKET EXPENSES FOR PROFESSIONALS IN RESPECT OF FIRST AND FINAL APPLICATION OF BLACKSTONE ADVISORY PARTNERS L.P. FOR ALLOWANCE AND FINAL APPROVAL OF COMPENSATION AND REIMBURSEMENT OF OUT-OF POCKET EXPENSES**

John James O'Connell III, being duly sworn, deposes and says:

1.  I am a Senior Managing Director with the applicant firm, Blackstone Advisory Partners L.P. ("Blackstone").

2.  In accordance with the guidelines established by the Office of the United States Trustee (the "UST Guidelines"), the Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on June 20, 1991 (the "Fee and Disbursement Guidelines"), the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, adopted by the Court on November 25, 2009 (together with the Fee and Disbursement Guidelines, the "Local Guidelines"), and the *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 137] (the "Administrative Order," and together with the UST Guidelines, the Fee and Disbursement Guidelines and the Local Guidelines, the "Guidelines"), this certification is made with respect to Blackstone's first and final fee application, dated August 25, 2014 (the "Final Application"), for allowance and final approval of compensation and reimbursement of expenses for the period of April 17, 2014 through July 9, 2014.

3. In respect of section B.1 of the Local Guidelines, I certify that:

   a. I have read the Application;

   b. To the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines and the UST Guidelines;

   c. The fees and out-of-pocket expenses sought are customarily charged by Blackstone and generally accepted by Blackstone's clients; and

   d. In providing a reimbursable service, Blackstone does not make a profit on that service, whether the service is performed by Blackstone in-house or through a third party.

4. With respect to Section B.2 of the Local Guidelines, I certify that, the Debtors, the U.S. Trustee, and the Equity Committee, have all been provided with a statement of the fees and out-of-pocket expenses accrued during each month subject to the Final Application, containing a list of professionals providing services, the work hours expended by each professional, a general description of services rendered, a reasonably detailed breakdown of the out-of-pocket expenses incurred and an explanation of billing practices. However, due to administrative limitations and the expedited and contested nature of these Chapter 11 Cases, such statements were not provided within the time frame set forth in the Local Guidelines and there was no prejudice to the parties in interest.

5. In respect of section B.3 of the Local Guidelines, I certify that the Debtor, the Office of the United States Trustee for Region 2, and counsel for the Official Debtors of Unsecured Creditors are each being provided with a copy of the Final Application.

By: /s/ John James O'Connell III
John James O'Connell III
Senior Managing Director

**APPENDIX A**

The **Blackstone** Group

December 23, 2013

Mr. John C. Wobensmith, CFA
Chief Financial Officer
Genco Shipping & Trading Limited
299 Park Avenue, 12th Floor
New York, NY 10171

Dear John:

     This letter confirms the understanding and agreement (the "**Agreement**") between Blackstone Advisory Partners L.P. ("**Blackstone**") and Genco Shipping & Trading Limited (together with any affiliates and subsidiaries, the "**Company**") regarding the retention of Blackstone by the Company effective as of December 10, 2013 (the "**Effective Date**") as its financial advisor for the purposes set forth herein.

     Under this Agreement, Blackstone will provide financial advisory services to the Company in connection with a possible restructuring of certain liabilities of the Company and will assist the Company in analyzing, structuring, negotiating and effecting the Restructuring pursuant to the terms and conditions of this Agreement. As used in this Agreement, the term "**Restructuring**" shall mean, collectively, (i) any restructuring, reorganization (whether or not pursuant to chapter 11 of the United States Bankruptcy Code ("**Chapter 11**")) and/or recapitalization of the Company and/or sale or other disposition of substantially all of the assets of the Company affecting existing or potential debt obligations or other claims, including, without limitation, senior debt, junior debt, trade claims, general unsecured claims, and preferred stock (collectively, the "**Obligations**"), and/or (ii) any complete or partial repurchase, refinancing, extension or repayment by the Company of any of the Obligations.

     The financial advisory services to be rendered by Blackstone are expected to include the following:

    (a)    Assist in the evaluation of the Company's businesses and prospects;

    (b)    Assist in the development of the Company's long-term business plan and related financial projections;

    (c)    Assist in the development of financial data and presentations to the Company's Board of Directors, various creditors and other third parties;

The Blackstone Group® L.P.
345 Park Avenue
New York, NY 10154
212 583 5000

(d)     Analyze the Company's financial liquidity and evaluate alternatives to improve such liquidity;

(e)     Analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the Restructuring;

(f)     Provide strategic advice with regard to restructuring or refinancing the Company's Obligations;

(g)     Evaluate the Company's debt capacity and alternative capital structures;

(h)     Participate in negotiations among the Company and its creditors, suppliers, lessors and other interested parties;

(i)     Value securities offered by the Company in connection with a Restructuring;

(j)     Advise the Company and negotiate with lenders with respect to potential waivers or amendments of various credit facilities;

(k)     Assist in arranging financing for the Company (which may include, without limitation, debtor-in-possession financing), as requested;

(l)     Provide expert witness testimony concerning any of the subjects encompassed by the other financial advisory services; and

(m)     Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring, as requested and mutually agreed.

Notwithstanding anything contained in this Agreement to the contrary, Blackstone shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity.  Blackstone makes no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a Restructuring. Blackstone is retained under this Agreement solely to provide advice regarding a Restructuring and is not being retained to provide "crisis management."

The Company will pay the following fees to Blackstone for its financial advisory services:

(i)     a monthly advisory fee (the "**Monthly Fee**") in the amount of $175,000, per month, in cash, with the first Monthly Fee payable upon the execution of this Agreement by both parties and additional installments of such Monthly Fee payable in advance on each monthly anniversary of the Effective Date, *provided* that commencing with the fourth Monthly Fee, 50% of the Monthly Fee shall be credited against the Restructuring Fee when and if paid and commencing with the seventh Monthly Fee, 100% of the Monthly Fee shall be credited against the Restructuring Fee when and if paid;

(ii)    a capital raising fee (the "**Capital Raising Fee**") calculated as 1.0% of the total issuance size for an affirmative debtor-in-possession financing facility (exclusive of cash collateral) and 5.0% of the issuance amount for an equity financing on new money raised from external parties who are not creditors of the Company (excluding any public offering of securities);

(iii)   an additional fee (the "**Restructuring Fee**") equal to $5,750,000. Except as otherwise provided herein, a Restructuring shall be deemed to have been consummated upon (a) the binding execution and effectiveness of all necessary waivers, consents, amendments or restructuring agreements between the Company and its creditors involving the compromise of the face amount of such Obligations or the conversion of all or part of such Obligations into alternative securities, including equity, in the case of an out-of-court restructuring; or (b) the execution, confirmation and consummation of a Plan of Reorganization pursuant to an order of the Bankruptcy Court, in the case of an in-court restructuring. The Restructuring Fee will be earned and payable, in immediately available funds, on consummation of the Restructuring.

Notwithstanding the foregoing, (a) a Restructuring specifically shall be deemed to exclude any assumption at face value of Obligations in connection with the sale or disposition of any subsidiaries, joint ventures, assets or lines of business of the Company and (b) the restructured Obligations shall exclude any Obligations in respect of which a Restructuring Fee has previously been paid; and

(iv)    reimbursement of all reasonable and documented out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of Blackstone's counsel (not to exceed $75,000 except as provided in the Indemnification Agreement (as defined below) without the Company's prior consent in its sole discretion and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

In the event that the Company is or becomes a debtor under Chapter 11, the Company shall use its commercially reasonable efforts to promptly apply to the bankruptcy court having jurisdiction over the Chapter 11 case or cases (the "**Bankruptcy Court**") for the approval pursuant to sections 327 and 328 of Chapter 11 of (A) this Agreement, including the attached indemnification agreement, and (B) Blackstone's retention by the Company under the terms of this Agreement and subject to the standard of review provided in section 328(a) of Chapter 11 and not subject to any other standard of review under section 330 of Chapter 11. The Company shall supply Blackstone with a draft of such application and any proposed order authorizing Blackstone's retention sufficiently in advance of the filing of such application and proposed order to enable Blackstone and its counsel to review and comment thereon. Blackstone shall have no obligation to provide any services under this Agreement in the event that the Company

becomes a debtor under Chapter 11 unless Blackstone's retention under the terms of this Agreement is approved under section 328(a) of Chapter 11 by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is reasonably acceptable to Blackstone in all respects. Blackstone acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, Blackstone's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of Chapter 11 and any applicable fee and expense guideline orders; provided, however, that Blackstone shall not be required to maintain time records and, provided further, that Blackstone shall not be required to maintain receipts for expenses in amounts less than $75. Blackstone represents and warrants to the Company that as of the date hereof, to its knowledge after reasonable inquiry, there is no reason why it could not be retained by the Company in the event that the Company becomes a debtor under Chapter 11. In the event that the Company becomes a debtor under Chapter 11 and Blackstone's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Blackstone hereunder as promptly as practicable in accordance with the terms hereof and the retention order. Prior to commencing a Chapter 11 case, the Company shall pay all invoiced amounts to Blackstone in immediately available funds by wire transfer.

With respect to Blackstone's retention under sections 327 and 328 of Chapter 11, the Company acknowledges and agrees that Blackstone's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Company during the term of Blackstone's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Company of Blackstone's services hereunder could not be measured merely by reference to the number of hours to be expended by Blackstone's professionals in the performance of such services. The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Blackstone and its professionals hereunder over the life of the engagement, and in light of the fact that such commitment may foreclose other opportunities for Blackstone and that the actual time and commitment required of Blackstone and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given the numerous issues which Blackstone may be required to address in the performance of its services hereunder, Blackstone's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Blackstone's services for engagements of this nature in an out-of-court context, the Company agrees that the fee arrangements hereunder (including the Monthly Fee, Capital Raising Fee, and Restructuring Fee) are reasonable under the standards set forth in 11 U.S.C. Section 328(a).

The advisory services and compensation arrangement set forth in this Agreement do not encompass other financial advisory services or transactions that may be undertaken by Blackstone at the request of the Company, including the arranging of debt or equity capital (except as provided above), issuing fairness opinions or any other specific services not set forth

in this Agreement.  The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between Blackstone and the appropriate party.

Except as contemplated by the terms hereof or as required by applicable law or legal process, for a period of two years from the date hereof, Blackstone and its Representatives (as defined below) shall keep confidential all non-public information provided to it by or at the request of the Company ("**Confidential Information**"), and shall not disclose such Confidential Information to any third party or to any of its or its affiliates' directors, officers, employees or attorneys, accountants, consultants, or professional advisors (collectively, "**Representatives**") except to those persons who have a need to know such information in connection with Blackstone's performance of its responsibilities hereunder and who are advised of the confidential nature of the Confidential Information and who agree to abide by the confidentiality provisions of this Agreement.  Blackstone will be responsible for its Representatives' compliance with the confidentiality provisions of this Agreement.  Blackstone and its Representatives will use the Confidential Information only in connection with the performance of its services under this Agreement.

Confidential Information does not include any information which (i) is or becomes publicly available other than as a result of a disclosure by Blackstone or any of its Representatives, (ii) is already in Blackstone's or any of its Representatives' possession prior to disclosure by the Company, (iii) is or becomes available to Blackstone or any of its Representatives from a source other than the Company without any violation of any known confidentiality obligation, or (iv) is independently developed by Blackstone or on its behalf without reference to Confidential Information.

In the event Blackstone or any of its Representatives are required or requested by law, rule, regulation, legal, judicial or administrative process, subpoena or court order, or by a governmental, regulatory or self-regulatory authority to disclose any Confidential Information, then Blackstone will, unless prohibited by law, give the Company as prompt prior notice as is commercially practicable in the circumstances, will reasonably cooperate with the Company's efforts (at no out of pocket cost or expense to Blackstone) to prevent or narrow the scope of such disclosure or obtain a protective order to maintain its confidentiality, and will disclose only that portion of the Confidential Information as Blackstone's counsel advises is required. Notwithstanding the foregoing, notice to the Company shall not be required where disclosure is made (i) in response to a request by a regulatory or self-regulatory authority or (ii) in connection with a routine audit or examination by a bank examiner or auditor and such audit or examination does not reference the Company or this Agreement.

Each party hereto recognizes its responsibilities under applicable U.S. securities laws regarding material, non-public information.

Promptly after written request by the Company following the termination of this Agreement, Blackstone shall return or destroy, at its sole option, all Confidential Information received during the course of its engagement and shall confirm in writing that all such

Confidential Information has been so returned or destroyed. Notwithstanding the foregoing, Recipient and its Representatives may retain Confidential Information to comply with applicable law or regulation or professional standards, subject to all other obligations of Recipient and its Representatives in this Agreement.

Blackstone's breach or threatened breach of the confidentiality provisions of this Agreement may present the Company with difficulty in proving monetary damages. Accordingly, the Company shall be entitled to obtain an injunction or other equitable relief related to Blackstone's alleged breach or imminent breach of such confidentiality provisions without posting a bond or other security. The Company's delay in enforcing or deciding not to enforce the confidentiality provisions of this Agreement on one or more occasions does not represent a waiver that would foreclose the Company from petitioning a court for performance of such term or any other term in the future. Only a written waiver or amendment executed by both parties will have legal effect.

The Company will furnish or cause to be furnished to Blackstone such information as Blackstone reasonably believes appropriate to its assignment (all such information so furnished being the "**Information**"). The Company further agrees that it will provide Blackstone with reasonable access to the Company and its directors, officers, employees and advisers. The Company shall inform Blackstone promptly upon becoming aware of any material developments relating to the Company which the Company reasonably expects may impact on the proposed Restructuring or if the Company becomes aware that any Information provided to Blackstone is, or has become, untrue, unfair, inaccurate or misleading in any way. Furthermore, the Company warrants and undertakes to Blackstone in respect of all Information supplied by the Company, that the Company has not obtained any such Information other than by lawful means and that disclosure to Blackstone will not breach any agreement or duty of confidentiality owed to third parties. The Company recognizes and confirms that Blackstone (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, (c) is entitled to rely upon the Information without independent verification, and (d) will not make an appraisal of any assets in connection with its assignment.

In the event that the Information belonging to the Company is stored electronically on Blackstone's computer systems, Blackstone shall not be liable for any damages resulting from unauthorized access, misuse or alteration of such information by persons not acting on its behalf, provided that Blackstone exercises the same degree of care in protecting the confidentiality of, and in preventing unauthorized access to, the Company's information that it exercises with regard to its own most sensitive proprietary information.

Except as required by applicable law, any advice to be provided by Blackstone under this Agreement shall not be disclosed publicly or made available to third parties (other than the Company's other professional advisors or, if appropriate in the Company's judgment, in any

filings, other required disclosure, or testimony in a Chapter 11 proceeding) without the prior written consent of Blackstone. All services, advice and information and reports provided by Blackstone to the Company in connection with this assignment shall be for the sole benefit of the Company and shall not be relied upon by any other person.

The Company acknowledges and agrees that Blackstone will provide its financial advisory services exclusively to the members of the Board of Directors and senior management of the Company and not to the Company's shareholders or other constituencies. The Board of Directors and senior management will make all decisions for the Company regarding whether and how the Company will pursue a Restructuring and on what terms and by what process. In so doing, the Board of Directors and senior management will also obtain the advice of the Company's legal, tax and other business advisors and consider such other factors which they consider appropriate before exercising their independent business judgment in respect of a Restructuring. The Company further acknowledges and agrees that Blackstone has been retained to act solely as financial advisor to the Company and does not in such capacity act as a fiduciary for the Company or any other person. Blackstone shall act as an independent contractor and any duties of Blackstone arising out of its engagement pursuant to this Agreement shall be owed solely to the Company.

Certain communications and correspondence from Blackstone and work product and analyses prepared by Blackstone for the Company in connection with its engagement hereunder will be in preparation for litigation over the restructuring of the Company or for the assistance of counsel and, accordingly, will be subject to the attorney-client privilege and work-product doctrine and will be designated as such.

In consideration of Blackstone's agreement to provide financial advisory services to the Company in connection with this Agreement, it is agreed that the Company will indemnify Blackstone and its agents, representatives, members and employees. A copy of our standard form of indemnification agreement is attached to this Agreement as Attachment A.

Blackstone's engagement hereunder may be terminated upon 30 days' written notice without cause by either the Company or Blackstone; termination for cause by either party will occur forthwith. Notwithstanding the foregoing, (a) the provisions relating to the payment of fees and expenses accrued through the date of termination, the status of Blackstone as an independent contractor and the limitation as to whom Blackstone shall owe any duties will survive any such termination, (b) any such termination shall not affect the Company's obligations under the indemnification agreement attached as Attachment A or Blackstone's confidentiality obligations hereunder and (c) Blackstone shall be entitled to the Restructuring Fee in the event that at any time prior to the expiration of 12 months following the termination of this Agreement a definitive agreement with respect to a Restructuring is executed and a Restructuring is thereafter consummated, except that if Blackstone terminates its engagement for any reason or the Company terminates Blackstone's engagement for cause, Blackstone shall not be entitled to any

Restructuring Fee. For purposes of this paragraph, "cause" shall mean gross negligence, willful misconduct or a material breach of this Agreement.

The Company represents that neither it nor any of its subsidiaries, any director or officer of the Company or any of its subsidiaries, nor, to the knowledge of the Company or any of its subsidiaries, any affiliate of the Company or any of its subsidiaries, is an individual or entity ("Person") that is, or is owned or controlled by a Person that is: (i) the subject of any U.S. economic sanctions (including those administered or enforced by the U.S. Department of Treasury's Office of Foreign Assets Control) or similar sanctions imposed by another relevant sanctions authority (collectively, "Sanctions"); (ii) located, organized or resident in a country or territory that is the subject of Sanctions that broadly prohibit dealings with that country or territory; or (iii) not in compliance in all material respects with all applicable anti-money laundering laws and Sanctions.

Notwithstanding anything to the contrary provided elsewhere herein, none of the provisions of this Agreement shall in any way limit the activities of The Blackstone Group L.P. and its affiliates in their businesses distinct from the restructuring advisory business of The Blackstone Group L.P., provided that the confidential information is not made available to representatives of The Blackstone Group L.P. and its affiliates who are not involved in the restructuring advisory business of The Blackstone Group L.P. Should the confidential information be made available to a representative of The Blackstone Group L.P. and its affiliates who is not involved in the restructuring advisory business of The Blackstone Group L.P., such representative shall be bound by this Agreement in accordance with its terms. While this Agreement is in effect and for a one year period following its termination, Blackstone will not represent any other client in any effort to purchase or exercise control over equity, debt, or assets of the Company or in any effort to collect any debt from the Company, except with the prior written approval of the Company.

This Agreement (including the attached indemnification agreement) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect or impair such provision or the remaining provisions of this Agreement in any other respect, which will remain in full force and effect. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

Any action or proceeding brought by either party hereto against the other based hereon or arising out of or relating to Blackstone's engagement hereunder (including without limitation with respect to the Indemnification Agreement but solely as it relates to any action, claim, suit, investigation or proceeding between the parties; in the event that any action, claim, suit, investigation or proceeding is commenced by a third party in a separate jurisdiction, each party hereto may enforce the indemnification agreement in such jurisdiction, including without limitation by joinder), shall be brought and maintained exclusively in the courts of the State of

New York located in the City and County of New York or in the United States District Court for the Southern District of New York; provided, if the Company commences a Chapter 11 case, all legal proceedings pertaining to this engagement arising after such case is commenced may be brought in the Bankruptcy Court handling such case.  Each party hereto irrevocably submits to the jurisdiction of the courts of the State of New York located in the City and County of New York and the United States District Court for the Southern District of New York and appellate courts from any thereof for the purpose of any action or proceeding based hereon or arising out of or relating to Blackstone's engagement hereunder and irrevocably agrees to be bound by any judgment rendered thereby in connection with such action or proceedings.  Each party hereto hereby irrevocably waives, to the fullest extent permitted by law, any objection it may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that such action or proceeding has been brought in an inconvenient forum and agrees not to plead or claim the same.

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to Blackstone the duplicate copy of this Agreement and the indemnification agreement attached hereto as Attachment A.

Very truly yours,

BLACKSTONE ADVISORY PARTNERS L.P.

By:_____

Name:    Timothy R. Coleman
Title:     Senior Managing Director

Accepted and Agreed to as
of the date first written above:

GENCO SHIPPING & TRADING LIMITED

By: _____

Name:  John C. Wobensmith
Title:  Chief Financial Officer

ATTACHMENT A

December 23, 2013

Blackstone Advisory Partners L.P.
345 Park Avenue
New York, NY 10154

INDEMNIFICATION AGREEMENT

Ladies and Gentlemen:

This letter will confirm that we have engaged Blackstone Advisory Partners L.P. ("**Blackstone**") to advise and assist us in connection with the matters referred to in our letter of agreement dated as of December 23, 2013 (the "**Engagement Letter**"). In consideration of your agreement to act on our behalf in connection with such matters, we agree to indemnify and hold harmless you and your affiliates and your and their respective partners (both general and limited), members, officers, directors, employees and agents and each other person, if any, controlling you or any of your affiliates (you and each such other person being an "**Indemnified Party**") from and against any losses, claims, damages, expenses and liabilities whatsoever, whether they be joint or several, related to, arising out of or in connection with the engagement (the "**Engagement**") under the Engagement Letter and will reimburse each Indemnified Party for all expenses (including reasonable fees, expenses and disbursements of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, or otherwise responding to, or assisting in the defense of any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement or this agreement, whether or not pending or threatened, whether or not any Indemnified Party is a party, whether or not resulting in any liability and whether or not such action, claim, suit, investigation or proceeding is initiated or brought by us. You and we also agree that the party not assuming the defense of such action, claim, suit, investigation or proceeding shall cooperate with the party assuming the defense the ("**Defending Party**") and give, and so far as it is able to procure the giving of, all such information and render all such assistance to the Defending Party as the Defending Party may reasonably request in connection with any such action, claim, suit, proceeding, investigation or judgment and not to take any action which might reasonably be expected to prejudice the defense of any such action, claim, suit, proceeding, investigation or judgment without the consent of the Defending Party (such consent not to be unreasonably withheld). In the event that Blackstone is requested or authorized by us or required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, arising as a result of or in connection with the Engagement, we will, so

long as Blackstone is not a party to the proceeding in which the information is sought, pay Blackstone the reasonable fees and expenses of its counsel incurred in responding to such a request. We will not, however, be liable under the foregoing indemnification provision for any losses, claims, damages or liabilities (or fees, expenses, or disbursements relating thereto) to the extent finally judicially determined by a court of competent jurisdiction to have resulted from Blackstone's gross negligence, or willful misconduct. We also agree that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to us or our owners, parents, affiliates, security holders or creditors for or in connection with the Engagement except to the extent of any such liability for losses, claims, damages or liabilities incurred by us that are finally judicially determined by a court of competent jurisdiction to have resulted from Blackstone's gross negligence, or willful misconduct.

If the indemnification provided for in the preceding paragraph is for any reason (other than the gross negligence or willful misconduct of Blackstone as provided above) unavailable to an Indemnified Party in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such Indemnified Party hereunder, we shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages or liabilities (and reasonable fees, expenses, and disbursements of counsel relating thereto) in such proportion as is appropriate to reflect not only the relative benefits received (or anticipated to be received) by you, on the one hand, and us, on the other hand, from the Engagement but also the relative fault of each of you and us, as well as any other relevant equitable considerations; provided, however, to the extent permitted by applicable law, in no event shall your aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by you under the Engagement Letter. For the purposes of this agreement, the relative benefits to us and you of the Engagement shall be deemed to be in the same proportion as (a) the total value paid or contemplated to be paid or received or contemplated to be received by us, our security holders and our creditors in the transaction or transactions that are subject to the Engagement, whether or not any such transaction is consummated, bears to (b) the fees paid or to be paid to Blackstone under the Engagement Letter (excluding any amounts paid as reimbursement of expenses).

Neither party to this agreement will, without the prior written consent of the other party (which consent will not be unreasonably withheld), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder (a "**Judgment**"), whether or not we or any Indemnified Party are an actual or potential party to such claim, action, suit or proceeding. In the event that we seek to settle or compromise or consent to the entry of any Judgment, we agree that such settlement, compromise or consent (i) shall include an unconditional release of Blackstone and each other Indemnified Party hereunder from all liability arising out of such claim, action, suit or proceeding, (ii) shall not include a statement as to, or an admission of, fault, culpability or a failure to act by or on behalf of Blackstone or each other Indemnified Party, and (iii) shall not impose any continuing obligations or restrictions on Blackstone or each other Indemnified Party.

Promptly after receipt by an Indemnified Party of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such person will notify us in writing of such complaint or of the commencement of such action or proceeding, but failure to so notify us will not relieve us from any liability which we may have hereunder or otherwise, except to the extent that such failure materially prejudices our rights or the defense of such action or proceeding.  If we so elect or are requested by such Indemnified Party, we will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to Blackstone and the payment of the fees and disbursements of such counsel.

In the event, however, that having common counsel would present such counsel with a conflict of interest that would prevent such counsel as serving as common counsel or if we fail to assume the defense of the action or proceeding in a timely manner, then such Indemnified Party may employ separate counsel reasonably satisfactory to us to represent or defend it in any such action or proceeding and we will pay the fees and disbursements of such counsel; provided, however, that we will not be required to pay the fees and disbursements of more than one separate counsel for all Indemnified Parties in any jurisdiction in any single action or proceeding or, where the retention of only one separate counsel would be reasonable, any related actions or proceedings.  In any action or proceeding the defense of which we assume, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense.

The foregoing reimbursement, indemnity and contribution obligations of ours under this agreement shall be in addition to any rights that an Indemnified Party may have at common law or otherwise, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of ours and such Indemnified Party.  We agree that the indemnity and reimbursement obligations of ours set out herein shall be in addition to any liability which we may otherwise have under the Engagement Letter and applicable law.

The provisions of this agreement shall apply to the Engagement, as well as any additional engagement of Blackstone by us in connection with the matters which are the subject of the Engagement, and any modification of the Engagement or additional engagement and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

This agreement and the Engagement Letter shall be governed by, and construed in accordance with the laws of the State of New York applicable to contracts executed in and to be performed in that state.

Very truly yours,

GENCO SHIPPING & TRADING LIMITED

By: _____
Name:  John C. Wobensmith
Title:  Chief Financial Officer

Accepted and Agreed
to as of the date first
written above:

BLACKSTONE ADVISORY PARTNERS L.P.

By: _____
      Senior Managing Director

**APPENDIX B**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                      :

In re:                             :     Chapter 11
                                        :

GENCO SHIPPING & TRADING LIMITED, et al.,  :     Lead Case No. 14-11108 (SHL)
                                        :

           Debtors.         :     Jointly Administered
                                        :     Related Docket No. 114
------------------------------------------------------------X

## ORDER AUTHORIZING THE EMPLOYMENT AND
## RETENTION OF BLACKSTONE ADVISORY PARTNERS L.P.
## AS FINANCIAL ADVISOR TO THE
## DEBTORS NUNC PRO TUNC TO THE PETITION DATE

Upon the application (the "**Application**")[1] of Genco Shipping & Trading Limited
("**Genco")** and certain of its direct and indirect subsidiaries, as chapter 11 debtors and debtors in
possession (each a "**Debtor**" and collectively the "**Debtors**" or the "**Company**") in the above-
referenced chapter 11 cases for entry of an order pursuant to sections 327(a) and 328 of the
Bankruptcy Code, Rules 2014(a) and 2016 of the Bankruptcy Rules and Rules 2014-1 and 2016-
1 of the Local Rules, authorizing the Company to retain and employ Blackstone Advisory
Partners L.P. ("**Blackstone**") as their financial advisor in accordance with the terms and
conditions set forth in the Engagement Letter, *nunc pro tunc* to the Petition Date, as described in
the Application and the O'Connell Declaration; and the Court having jurisdiction to consider the
Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and
consideration of the Application and the relief requested therein being a core proceeding
pursuant to 28 U.S.C. § 157(b)(2); and venue being proper in this Court pursuant to 28 U.S.C.
§§ 1408 and 1409; and due and proper notice of the Application being adequate and appropriate

---

[1]Capitalized terms used but not otherwise defined herein shall have the meanings set for such terms in the
Application or the Prepack Plan, as applicable.

under the particular circumstances has been given; and a hearing having been held to consider the relief requested in the Application (the "**Hearing**"); and upon consideration of the Application, the O'Connell Declaration, the record of the Hearing and all proceedings had before the Court; and the Court having found and determined that the relief sought in the Application is in the best interests of the Company's estates, their creditors and other parties-in-interest, and that the legal and factual bases set forth in the Application and the O'Connell Declaration establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and the Court being satisfied based on the representations made in the Application and the O'Connell Declaration, and the Court hereby finds that (a) Blackstone does not hold or represent an interest adverse to the Company's estates and (b) Blackstone is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code as required by section 327(a) of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Rule 2014-1; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Application is hereby granted as set forth herein.

2.      In accordance with sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Rules 2014-1 and 2016-1, the Company is authorized to employ and retain Blackstone in accordance with the terms and conditions set forth in the Engagement Letter, to pay fees and reimburse expenses, and to provide indemnification, contribution and/or reimbursement to Blackstone on the terms and at the times specified in the Engagement Letter, *nunc pro tunc* to the Petition Date.

3.      The provisions set forth in the Engagement Letter (and all attachments thereto) are hereby approved, except as otherwise expressly provided herein to the contrary.

4.      Blackstone will file applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code and such Bankruptcy Rules as may then be applicable, from time to time, and such procedures as may be fixed by order of this Court; *provided, however*, that the requirements of the Bankruptcy Code, the Bankruptcy Rules, Local Rule 2016-1 and General Order M-447 are hereby modified such that Blackstone's professionals shall be required only to keep summary time records in half-hour increments, Blackstone's professionals shall not be required to keep time records on a project category basis and Blackstone shall not be required to provide or conform to any schedules of hourly rates.

5.      Blackstone shall be compensated in accordance with the terms of the Engagement Letter and, in particular, all of Blackstone's fees and expenses in these Chapter 11 Cases, including the Monthly Fee, the Capital Raising Fee and the Restructuring Fee, are hereby approved pursuant to section 328(a) of the Bankruptcy Code.  Notwithstanding anything to the contrary herein, the fees and expenses payable to Blackstone pursuant to the Engagement Letter shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code, except by the U.S. Trustee.  This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Blackstone's compensation and expense reimbursements under sections 330 and 331 of the Bankruptcy Code, and the U.S. Trustee retains all rights to object to Blackstone's interim and final fee applications (including the Monthly Fee, the Capital Raising Fee, the Restructuring Fee and expense reimbursement) on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of

the Bankruptcy Code. If the U. S. Trustee raises an objection to Blackstone's interim or final fee applications based on the standard provided for in section 330 of the Bankruptcy Code, then the Court retains the right to review such interim or final applications pursuant to section 330 of the Bankruptcy Code, but only as to any such objection raised by the U. S. Trustee. Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding on the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of Blackstone's compensation.

6.      Pursuant to the terms of the Engagement Letter, Blackstone is entitled to reimbursement by the Company for reasonable expenses incurred in connection with the performance of its engagement under the Engagement Letter, including, without limitation, the reasonable fees, disbursements and other charges of Blackstone's counsel (which counsel shall not be required to be retained pursuant to section 327 of the Bankruptcy Code or otherwise), in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, any applicable orders of this Court and the Fee Guidelines promulgated by the Office of the United States Trustee, provided, that Blackstone shall not seek reimbursement for any services provided by Blackstone's counsel to the Company and, provided further, that Blackstone may only seek reimbursement for services in connection with retention and fee application preparation, except as otherwise provided herein with respect to claims for indemnification and, provided further, that Blackstone shall submit the invoices of Blackstone's counsel together with any application seeking allowance of reimbursement for the fees, disbursements and other charges of its counsel.

4

7.      In the event that the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, then Blackstone shall be entitled to be paid any fee to the extent such fee is earned by Blackstone in accordance with the terms of the Engagement Letter.

8.      Notwithstanding anything to the contrary in the Engagement Letter, indemnification, contribution and reimbursement provisions are hereby modified and restated in their entirety as follows::

    a.   All requests of Blackstone for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall Blackstone be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

    b.   In the event that Blackstone seeks reimbursement from the Company for reasonable attorneys' fees in connection with a request by Blackstone for payment of indemnity pursuant to the Engagement Letter, as modified by this Order, the invoices and supporting time records from such attorneys shall be included in Blackstone's own application (both interim and final) and such invoices and time records shall be subject to the Fee Guidelines and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

    c.   Blackstone shall not be entitled to reimbursement by the Company for any fees, disbursements and other charges of Blackstone's counsel other than those incurred in connection with a request of Blackstone for payment of indemnity and as otherwise provided in this Order.

    d.   In no event shall Blackstone be indemnified if the Company or representatives of the estates assert a claim

5

for, and a court determines by final order that such claim arose out of, Blackstone's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

9.      Notwithstanding anything in the Application or the Engagement letter to the contrary, Blackstone shall (i) to the extent that Blackstone uses the services of independent contractors, subcontractors or employees of foreign affiliates or subsidiaries (collectively, the "Contractors") in the Chapter 11 Cases, Blackstone shall pass-through the cost of such Contractors to the Company at the same rate that Blackstone pays the Contractors; (ii) seek reimbursement for actual costs only; and (iii) ensure that the Contractors are subject to the same conflict checks as required for Blackstone and (iv) shall file with the Court such disclosures required by Bankruptcy Rule 2014.

10.     The Company and Blackstone are authorized and empowered to take all actions necessary to implement the relief granted in and pursuant to this Order.

11.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.     The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

Dated: New York, New York
        May 16, 2014


                                    /s/ Sean H. Lane
                                    THE HONORABLE SEAN H. LANE
                                    UNITED STATES BANKRUPTCY JUDGE

6

**APPENDIX C**

**Biographies of Blackstone Professionals**

- **Timothy Coleman.** Tim Coleman is a Senior Managing Director and Head of the Restructuring and Reorganization group. Mr. Coleman also serves as a member of Blackstone's Executive Committee. Since joining Blackstone in 1992, Mr. Coleman has worked on a variety of restructuring and reorganization assignments for companies, municipalities, creditor groups, special committees of corporate boards, corporate parents of troubled companies and acquirers of distressed assets. The International Financing Review recognized Mr. Coleman's efforts in the restructurings of C-BASS and Ford Motor Company by naming them Restructuring of the Year in 2008 and 2009, respectively, and by naming Blackstone Global Restructuring Advisor of the Year in 2012. Mr. Coleman was named Global Investment Banker of the Year in 2011 by the Turnaround Atlas Awards. In 2013, he was inducted into the Turnaround Restructuring, and Distressed Investing Industry Hall of Fame by the Turnaround Management Association. In 2014, Mr. Coleman received the Turnaround Leadership Award from the M&A Advisor. Mr. Coleman is a frequent guest lecturer at Columbia University and NYU Stern Business Schools. He is a member of the Teach for America New York Board of Directors, the Her Justice Board of Directors, the Board of Leaders of the Marshall School of Business at the University of Southern California, and the Yale-New Haven Children's Hospital Council. Mr. Coleman's most notable public assignments include Adelphia, Los Angeles Dodgers, Quad/Graphics (Re: Vertis), AMBAC, Financial Guaranty Insurance Company, Rescap, Asian Art Museum, FLAG Telecom, R.H. Macy & Co., AT&T (AT&T Canada, Alestra, and Excite@Home, Ford Motor Company, Roust Trading (Re: CEDC), State of Kansas, Bear Stearns Asset Management, Guangdong Enterprises, The Weinstein Company, Cable & Wireless Holdings, Lee Enterprises, Travelport, Credit-Based Asset Servicing and Securitization LLC ("C-BASS") MBIA (Re: BofA and Detroit) Tribune, Williams Communications, Delta Air Lines, Delta (Re: Pinnacle Airlines), Mohegan Sun, Mirant Corp., Xerox Corporation, and XL Capital. Mr. Coleman received a BA from the University of California at Santa Barbara and an MBA from the University of Southern California.

- **John James O'Connell III.** Jamie O'Connell is a Senior Managing Director in the Restructuring & Reorganization Group. Since joining Blackstone in 2004, Mr. O'Connell has advised management teams, corporate boards, lenders, bondholders, investors and public officials in restructurings involving over $75 billion of liabilities. He has also advised on M&A transactions, debt financings and equity investments. Representative matters include AIG, American General Finance, Babcock & Wilcox, Cecon ASA (re: Davie Shipyard), Central European Distribution Corp. (CEDC), Flextronics (re: Nortel), Excel Maritime Carriers, Hammonia Shipping, Houston Sports Authority, International Lease Finance Corporation (ILFC), Jefferson County (Birmingham, Ala.), Mrs. Fields Famous Brands, New World Pasta, Simmons Bedding, Solutia, Specialty Products Holding Corp. (Bondex), the State of Kansas, W. R. Grace & Co. and Winn-Dixie Stores. Before joining Blackstone, Mr. O'Connell worked at Dolphin Equity Partners and in the Corporate Recovery Services Group of Arthur Andersen. Mr. O'Connell graduated magna cum laude from Notre Dame and received an MBA with honors from the Wharton School. He serves as a guest lecturer on restructuring topics at Columbia Law School and Harvard Business School.

- **Joshua Abramson.** Josh Abramson is an associate in the Restructuring & Reorganization Group and a member of Blackstone's dedicated shipping team.   Mr. Abramson has worked on several shipping transactions including Excel Maritime, Overseas Shipholding Group and ZIM. Mr. Abramson has also advised companies and creditors in a variety of restructuring transactions, including Kerzner International Limited, Harry & David, Covalent Materials Corp, and Central European Distribution Corporation.  Before joining Blackstone, Mr. Abramson worked in the Interest Rate Derivatives Group at Lehman Brothers and Barclays Capital.  Mr. Abramson received a B.A. from Wesleyan University.  Mr. Abramson also received a JD from the University of Pennsylvania Law School where he graduated Magna Cum Laude and Order of the Coif, and an MBA from the Wharton School of the University of Pennsylvania.

- **Owen Wurzbacher.** Owen Wurzbacher is an Analyst in the Restructuring & Reorganization Group and a member of Blackstone's dedicated shipping team. Mr. Wurzbacher has worked on several shipping transactions including ZIM Integrated Shipping and Genco Shipping and Trading. Mr. Wurzbacher has also advised companies in a variety of restructuring transactions, including Endeavor International Corp. and BCBG MAXAZRIA. Before joining Blackstone, Mr. Wurzbacher received a B.A. in Biology and Economics from Harvard College, where he graduated magna cum laude.

**APPENDIX D**

# Blackstone Advisory Partners L.P.

August 5, 2014

Mr. John C. Wobensmith, CFA
Chief Financial Officer
Genco Shipping & Trading Limited
299 Park Avenue, 12th Floor
New York, NY 10171

| | | |
|---|---|---:|
| Monthly Fee pro-rated for the period of April 21, 2014 through April 30, 2014: | $ | 58,333.33 |
| Monthly Fee for the period of May 1, 2014 through May 31, 2014: | | 175,000.00 |
| Subtotal | | 233,333.33 |
| Less: Payments Received | | (186,666.66) |
| **Total Amount Due** | **$** | **46,666.67** |

**Please wire transfer funds to:**

JP Morgan Chase
One Chase Manhattan Plaza
New York, NY 10017
ABA# 021 000 021
Credit Account: Blackstone Advisory Partners L.P.
Account Receivable Dept. 16th Floor
Account # 066-287472

**Invoice No.  3027**

**Blackstone Advisory Partners L.P.**
345 Park Avenue
New York, NY 10154
212 583-5000

# Blackstone Advisory Partners L.P.

August 5, 2014

Mr. John C. Wobensmith, CFA
Chief Financial Officer
Genco Shipping & Trading
299 Park Avenue, 12th Floor
New York, NY 10171

Monthly Fee for the period of June 1, 2014 through June 30, 2014:                    $                175,000.00

Out-of-pocket expenses processed for the period through June 30, 2014:

| | | |
|---|---|---|
| Ground Transportation | $ 617.12 | |
| Communications | 123.90 | |
| Meals | 1,848.49 | |
| Document Production | 792.27 | |
| Research | 973.26 | |
| Publishing Services | 157.50 | 4,512.54 |

**Total Amount Due**                                                        $                **179,512.54**

**Please wire transfer funds to:**

JP Morgan Chase
One Chase Manhattan Plaza
New York, NY 10017
ABA# 021 000 021
Credit Account: Blackstone Advisory Partners L.P.
Account Receivable Dept. 16th Floor
Account # 066-287472

**Invoice No. 3265**

[1] Expenses incurred, but not yet processed due to timing differences will be billed at a later date.

**Blackstone Advisory Partners L.P.**
345 Park Avenue
New York, NY 10154
212 583-5000

**Genco Shipping & Trading**
**Summary of Expenses**

| | GL Detail Jun-14 | | Total Expenses |
|---|---|---|---|
| Ground Transportation | $ | 617.12 | $ | 617.12 |
| Communications - Teleconferencing | | 44.00 | | **44.00** |
| Communications - Internet Expenses | | 79.90 | | **79.90** |
| Meals with Clients | | 1,005.20 | | **1,005.20** |
| Employee Meals | | 843.29 | | **843.29** |
| Document Production | | 792.27 | | **792.27** |
| Internal Research | | 180.00 | | **180.00** |
| External Research - Online Database | | 793.26 | | **793.26** |
| Publishing Services | | 157.50 | | **157.50** |
| **Total Expenses** | $ | **4,512.54** | $ | **4,512.54** |
| | | | | |
| **Ground Transportation** | | | $ | **617.12** |
| **Communications** | | | | **123.90** |
| **Meals** | | | | **1,848.49** |
| **Document Production** | | | | **792.27** |
| **Research** | | | | **973.26** |
| **Publishing Services** | | | | **157.50** |
| | | | | |
| **Total Expenses** | | | $ | **4,512.54** |

**Genco Shipping & Trading Ltd**
**Details of Expenses Processed**
**Through June 30, 2014**
**Invoice No. 3265**

**Ground Transportation**

| | | |
|---|---|---|
| Abramson (weeknight taxi home from Blackstone after working late) | 04/21/14 | 14.40 |
| Abramson (weeknight taxi home from Blackstone after working late) | 04/22/14 | 13.80 |
| Abramson (weeknight taxi home from Blackstone after working late) | 04/28/14 | 11.90 |
| Abramson (taxi to Blackstone from home for early morning meeting) | 04/29/14 | 17.40 |
| Abramson (weeknight taxi home from Blackstone after working late) | 04/29/14 | 18.00 |
| Abramson (weeknight taxi home from Blackstone after working late) | 04/30/14 | 10.10 |
| Levine (weeknight taxi home from Blackstone after working late) | 04/21/14 | 11.30 |
| Levine (weeknight taxi home from Blackstone after working late) | 04/22/14 | 13.70 |
| Levine (weeknight taxi home from Blackstone after working late) | 04/28/14 | 11.40 |
| Levine (weeknight taxi home from Blackstone after working late) | 04/29/14 | 12.60 |
| Levine (weeknight taxi home from Blackstone after working late) | 04/30/14 | 6.50 |
| Levine (weeknight taxi for return travel to Blackstone from home) | 04/30/14 | 19.00 |
| Levine (weeknight taxi home from Blackstone after working late) | 05/01/14 | 10.80 |
| Levine (weeknight taxi home from Blackstone after working late) | 05/05/14 | 13.20 |
| Levine (weeknight taxi home from Blackstone after working late) | 05/06/14 | 11.40 |
| Levine (weeknight taxi home from Blackstone after working late) | 05/07/14 | 10.62 |
| Levine (weeknight taxi home from Blackstone after working late) | 05/09/14 | 12.60 |
| Levine (weekend taxi to Blackstone from home) | 05/10/14 | 10.70 |
| Levine (weekend taxi home from Blackstone) | 05/10/14 | 11.50 |
| Levine (weeknight taxi home from Blackstone after working late) | 05/12/14 | 11.30 |
| Levine (weeknight taxi home from Blackstone after working late) | 05/13/14 | 7.50 |
| Levine (weeknight taxi home from Blackstone after working late) | 05/14/14 | 25.70 |
| Levine (weeknight taxi home from Blackstone after working late) | 05/15/14 | 11.25 |
| Levine (weeknight taxi home from Blackstone after working late) | 05/16/14 | 10.20 |
| Levine (weekend taxi to Blackstone from home) | 05/18/14 | 9.60 |
| Levine (weekend taxi home from Blackstone) | 05/18/14 | 9.00 |
| Levine (weeknight taxi home from Blackstone after working late) | 05/19/14 | 10.80 |
| Levine (weeknight taxi home from Blackstone after working late) | 05/20/14 | 10.10 |
| Levine (weeknight taxi home from Blackstone after working late) | 05/21/14 | 11.30 |
| Levine (weeknight taxi home from Blackstone after working late) | 05/22/14 | 22.20 |
| Levine (weeknight taxi for return travel to Blackstone from home) | 05/22/14 | 10.20 |
| Levine (weeknight taxi home from Blackstone after working late) | 05/27/14 | 8.90 |
| Levine (weeknight taxi home from Blackstone after working late) | 05/28/14 | 10.20 |
| Levine (weeknight taxi home from Blackstone after working late) | 05/29/14 | 7.10 |
| Levine (weeknight taxi home from Blackstone after working late) | 06/02/14 | 19.70 |
| Levine (weeknight taxi home from Blackstone after working late) | 06/03/14 | 11.75 |
| Levine (weeknight taxi home from Blackstone after working late) | 06/04/14 | 13.00 |
| Levine (weeknight taxi home from Blackstone after working late) | 06/05/14 | 11.40 |
| Levine (weekend taxi home from Blackstone) | 06/07/14 | 11.40 |
| Levine (weekend taxi home from Blackstone) | 06/08/14 | 14.50 |
| Levine (weeknight taxi home from Blackstone after working late) | 06/09/14 | 11.90 |
| Levine (weeknight taxi home from Blackstone after working late) | 06/12/14 | 12.50 |
| Levine (weeknight taxi home from Blackstone after working late) | 06/16/14 | 17.30 |
| Levine (taxi to client meeting in New York, NY from Blackstone) | 06/17/14 | 13.70 |
| Levine (weeknight taxi home from Blackstone after working late) | 06/17/14 | 10.10 |
| Levine (taxi to client meeting in New York, NY from Blackstone) | 06/18/14 | 11.90 |
| Levine (weeknight taxi home from Blackstone after working late) | 06/18/14 | 16.20 |
| O'Connell (taxi to courthouse in New York, NY from Blackstone) | 05/14/14 | 18.00 |
| O'Connell (taxi to client meeting in New York, NY from Blackstone) | 05/19/14 | 7.50 |
| **Subtotal - Ground Transportation** | | **$ 617.12** |

**Communications - Teleconferencing**

| | | |
|---|---|---|
| O'Connell (attended court hearing via teleconferencing call) | 05/05/14 | 44.00 |
| **Subtotal Communications - Teleconferencing** | | **44.00** |

**Communications - Internet Expenses**

| | | |
|---|---|---|
| Levine (wireless internet access while traveling) | 05/06/14 | 39.95 |
| Levine (wireless internet access while traveling) | 06/05/14 | 39.95 |
| **Subtotal Communications - Internet Expenses** | | **79.90** |

**Meals with Clients**

| | | |
|---|---|---|
| Levine (catered meal for 6 people during client meeting held @ Blackstone) | 05/12/14 | 109.00 |
| Levine (catered meal for 23 people during client meeting held @ Blackstone) | 05/13/14 | 460.00 |
| Levine (catered meal for 12 people during client meeting held @ Blackstone) | 05/20/14 | 218.20 |
| Levine (catered meal for 12 people during client meeting held @ Blackstone) | 05/27/14 | 218.00 |
| **Subtotal - Meals with Clients** | | **1,005.20** |

**Employee Meals**

| | | |
|---|---|---|
| Abramson (weeknight working dinner meal @ Blackstone while working late) | 04/22/14 | 20.00 |
| Abramson (weeknight working dinner meal @ Blackstone while working late) | 04/24/14 | 20.00 |
| Abramson (weekend working lunch meal @ Blackstone) | 04/27/14 | 6.86 |
| Abramson (weeknight working dinner meal @ Blackstone while working late) | 04/29/14 | 20.00 |
| Abramson (weeknight working dinner meal @ Blackstone while working late) | 05/07/14 | 20.00 |

**Genco Shipping & Trading Ltd**
**Details of Expenses Processed**
**Through June 30, 2014**
**Invoice No. 3265**

| | | | |
|---|---|---|---|
| Abramson (weeknight working dinner meal @ Blackstone while working late) | 05/20/14 | 20.00 | |
| Abramson (weeknight working dinner meal @ Blackstone while working late) | 06/10/14 | 20.00 | |
| Abramson (weeknight working dinner meal @ Blackstone while working late) | 06/16/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 04/21/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 04/22/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 04/24/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 04/25/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 04/28/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 05/01/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 05/02/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 05/06/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 05/09/14 | 20.00 | |
| Levine (weekend working lunch meal @ Blackstone) | 05/10/14 | 11.50 | |
| Levine (weekend working dinner meal @ Blackstone) | 05/10/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 05/13/14 | 17.42 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 05/15/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 05/16/14 | 20.00 | |
| Levine (weekend working lunch meal @ Blackstone) | 05/18/14 | 17.75 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 05/19/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 05/20/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 05/27/14 | 15.51 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 05/28/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 05/29/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 06/02/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 06/04/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 06/06/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone) | 06/07/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 06/09/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 06/10/14 | 20.00 | |
| Levine (weekend working lunch meal @ Blackstone) | 06/15/14 | 15.25 | |
| Levine (weekend working dinner meal @ Blackstone) | 06/15/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 06/16/14 | 20.00 | |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 06/19/14 | 19.00 | |
| O'Connell (weeknight working dinner meal @ Blackstone with S. Levine while working late) | 05/12/14 | 40.00 | |
| O'Connell (weeknight working dinner meal @ Blackstone while working late) | 05/20/14 | 20.00 | |
| O'Connell (weeknight working dinner meal @ Blackstone while working late) | 05/23/14 | 20.00 | |
| O'Connell (weeknight working dinner meal @ Blackstone while working late) | 06/06/14 | 20.00 | |
| O'Connell (weeknight working dinner meal @ Blackstone while working late) | 06/10/14 | 20.00 | |
| | **Subtotal - Employee Meals** | | **843.29** |
| | | | |
| **Document Production** | | | |
| Levine (copies of documents @ FedEx for court hearing) | 04/23/14 | 45.07 | |
| Levine (432 black & white photocopies calculated @ a rate of $0.10 per page) | 05/02/14 | 43.20 | |
| Levine (441 color photocopies calculated @ a rate of $0.10 per page) | 05/06/14 | 44.10 | |
| Levine (224 color photocopies calculated @ a rate of $0.10 per page) | 05/12/14 | 22.40 | |
| Levine (750 color photocopies calculated @ a rate of $0.10 per page) | 05/13/14 | 75.00 | |
| Levine (339 color photocopies calculated @ a rate of $0.10 per page) | 05/14/14 | 33.90 | |
| Levine (312 color photocopies calculated @ a rate of $0.10 per page) | 05/20/14 | 31.20 | |
| Levine (368 color photocopies calculated @ a rate of $0.10 per page) | 05/29/14 | 36.80 | |
| Levine (858 color photocopies calculated @ a rate of $0.10 per page) | 06/03/14 | 85.80 | |
| Levine (790 color photocopies calculated @ a rate of $0.10 per page) | 06/11/14 | 79.00 | |
| Levine (2,958 black & white photocopies calculated @ a rate of $0.10 per page) | 06/11/14 | 295.80 | |
| | **Subtotal - Document Production** | | **792.27** |
| | | | |
| **Internal Research** | | | |
| Wurzbacher (online data research) | 06/13/14 | 45.00 | |
| Wurzbacher (online data research) | 06/14/14 | 135.00 | |
| | **Subtotal - Internal Research** | | **180.00** |
| | | | |
| **External Research - Online Database** | | | |
| Levine (online data research) | 05/09/14 | 337.50 | |
| Levine (online data research) | 06/07/14 | 330.71 | |
| Levine (online data research) | 06/08/14 | 125.05 | |
| | **Subtotal - External Research - Online Database** | | **793.26** |
| | | | |
| **Publishing Services** | | | |
| Wurzbacher (preparation of materials) | 06/14/14 | 157.50 | |
| | **Subtotal - Publishing Services** | | **157.50** |
| | | | |
| | **Total Expenses** | **$** | **4,512.54** |

# Blackstone Advisory Partners L.P.

August 5, 2014

Mr. John C. Wobensmith, CFA
Chief Financial Officer
Genco Shipping & Trading
299 Park Avenue, 12th Floor
New York, NY 10171

| | | | |
|---|---|---|---|
| Monthly Fee pro-rated for the period of July 1, 2014 through July 9, 2014: | | $ | 50,806.45 |
| | | | |
| Out-of-pocket expenses processed for the period through June 30, 2014: | | | |
| | | | |
| Ground Transportation | $ 859.70 | | |
| Meals | 591.91 | | |
| Publishing Services | 17.50 | | 1,469.11 |
| | | | |
| **Total Amount Due** | | **$** | **52,275.56** |

**Please wire transfer funds to:**

JP Morgan Chase
One Chase Manhattan Plaza
New York, NY 10017
ABA# 021 000 021
Credit Account: Blackstone Advisory Partners L.P.
Account Receivable Dept. 16th Floor
Account # 066-287472

**Invoice No. 3415**

**Blackstone Advisory Partners L.P.**
345 Park Avenue
New York, NY 10154
212 583-5000

**Genco Shipping & Trading**
**Summary of Expenses**

| | GL Detail Jun-14 | Total Expenses |
|---|---|---|
| Ground Transportation | $ 859.70 | $ 859.70 |
| Meals with Clients | 260.00 | 260.00 |
| Employee Meals | 331.91 | 331.91 |
| Publishing Services | 17.50 | 17.50 |
| **Total Expenses** | **$ 1,469.11** | **$ 1,469.11** |
| | | |
| **Ground Transportation** | | **$ 859.70** |
| **Meals** | | **591.91** |
| **Publishing Services** | | **17.50** |
| **Total Expenses** | | **$ 1,469.11** |

**Genco Shipping & Trading Ltd**
**Details of Expenses Processed**
**Through June 30, 2014**
**Invoice No. 3415**

**Ground Transportation**

| | | |
|---|---|---|
| Abramson (weeknight taxi home from Blackstone after working late) | 05/06/14 | 8.90 |
| Abramson (weeknight taxi home from Blackstone after working late) | 05/07/14 | 18.00 |
| Abramson (weekend taxi to Blackstone from home) | 05/10/14 | 13.10 |
| Abramson (weekend taxi for return travel to Blackstone from home) | 05/10/14 | 11.90 |
| Abramson (weekend taxi home from Blackstone) | 05/10/14 | 9.60 |
| Abramson (weekend taxi home from Blackstone) | 05/11/14 | 12.50 |
| Abramson (weeknight taxi home from Blackstone after working late) | 05/19/14 | 12.00 |
| Abramson (weeknight taxi home from Blackstone after working late) | 05/20/14 | 11.90 |
| Abramson (weeknight taxi home from Blackstone after working late) | 05/21/14 | 11.90 |
| Abramson (weeknight taxi home from Blackstone after working late) | 05/22/14 | 12.00 |
| Abramson (weeknight taxi home from Blackstone after working late) | 05/23/14 | 15.00 |
| Abramson (weeknight taxi home from Blackstone after working late) | 05/30/14 | 10.50 |
| Abramson (weekend taxi to Blackstone from home) | 05/31/14 | 10.80 |
| Abramson (weekend taxi home from Blackstone) | 05/31/14 | 11.90 |
| Abramson (weeknight taxi home from Blackstone after working late) | 06/01/14 | 13.20 |
| Abramson (weeknight taxi home from Blackstone after working late) | 06/02/14 | 13.10 |
| Abramson (weeknight taxi home from Blackstone after working late) | 06/03/14 | 11.40 |
| Abramson (taxi to client meeting in New York, NY from Blackstone) | 06/04/14 | 12.50 |
| Abramson (taxi to client meeting in New York, NY from Blackstone) | 06/05/14 | 14.40 |
| Abramson (weeknight taxi home from Blackstone after working late) | 06/05/14 | 13.10 |
| Abramson (weeknight taxi home from Blackstone after working late) | 06/06/14 | 15.60 |
| Abramson (weekend taxi home from Blackstone) | 06/07/14 | 12.60 |
| Abramson (weekend taxi home from Blackstone) | 06/08/14 | 10.10 |
| Abramson (weeknight taxi home from Blackstone after working late) | 06/12/14 | 12.00 |
| Abramson (weeknight taxi home from Blackstone after working late) | 06/13/14 | 11.40 |
| Abramson (weekend taxi to Blackstone from home) | 06/14/14 | 12.50 |
| Abramson (weekend taxi home from Blackstone) | 06/14/14 | 11.40 |
| Abramson (weekend taxi to Blackstone from home) | 06/15/14 | 10.80 |
| Abramson (weekend taxi home from Blackstone) | 06/15/14 | 13.20 |
| Abramson (weekend taxi for return travel to Blackstone from home) | 06/15/14 | 12.00 |
| Abramson (weekend taxi home from Blackstone) | 06/15/14 | 11.90 |
| Abramson (weeknight taxi home from Blackstone after working late) | 06/16/14 | 12.50 |
| Abramson (weeknight taxi home from Blackstone after working late) | 06/17/14 | 19.10 |
| Abramson (weeknight taxi home from Blackstone after working late) | 06/18/14 | 13.10 |
| Abramson (weeknight taxi home from Blackstone after working late) | 06/19/14 | 17.40 |
| Abramson (weeknight taxi home from Blackstone after working late) | 06/20/14 | 13.10 |
| Abramson (weekend taxi to Blackstone from home) | 06/22/14 | 12.60 |
| Abramson (weekend taxi home from Blackstone) | 06/22/14 | 11.90 |
| Abramson (taxi to client meeting in New York, NY from Blackstone) | 06/23/14 | 18.60 |
| Abramson (weeknight taxi home from Blackstone after working late) | 06/23/14 | 12.50 |
| Abramson (weeknight taxi home from Blackstone after working late) | 06/24/14 | 30.00 |
| Abramson (weeknight taxi home from Blackstone after working late) | 06/25/14 | 11.30 |
| Abramson (weekend taxi home from Blackstone) | 06/29/14 | 14.90 |
| Abramson (weeknight taxi home from Blackstone after working late) | 06/30/14 | 14.90 |
| Levine (weeknight taxi home from Blackstone after working late) | 06/06/14 | 13.20 |
| Levine (weekend taxi home from Blacksktone) | 06/08/14 | 8.30 |
| Levine (weeknight taxi home from Blackstone after working late) | 06/10/14 | 11.40 |
| Levine (weeknight taxi home from Blackstone after working late) | 06/13/14 | 10.80 |
| Levine (weeknight taxi home from Blackstone after working late) | 06/16/14 | 10.20 |
| Levine (taxi to Blackstone from home) | 06/19/14 | 10.10 |
| Levine (weeknight taxi home from Blackstone after working late) | 06/20/14 | 11.00 |
| Levine (weekend taxi to Blackstone from home) | 06/21/14 | 19.70 |
| Levine (weekend taxi home from Blackstone) | 06/21/14 | 19.20 |
| Levine (weekend taxi to Blackstone from home) | 06/22/14 | 9.50 |
| Levine (weekend taxi home from Blackstone) | 06/22/14 | 12.50 |
| Levine (taxi to courthouse in New York, NY from home) | 06/23/14 | 15.60 |
| Levine (taxi to Blackstone from courthouse in New York, NY) | 06/23/14 | 22.20 |
| Levine (weeknight taxi home from Blackstone after working late) | 06/23/14 | 10.10 |
| Levine (taxi to courthouse in New York, NY from home) | 06/24/14 | 23.30 |
| Levine (taxi to Blackstone from courthouse in New York, NY) | 06/24/14 | 24.60 |
| Levine (weeknight taxi home from Blackstone after working late) | 06/24/14 | 10.80 |
| Levine (weeknight taxi home from Blackstone after working late) | 06/25/14 | 19.10 |
| O'Connell (weeknight taxi home from train station after working late) | 06/03/14 | 15.00 |
| | **Subtotal - Ground Transportation** | **$    859.70** |

**Meals with Clients**

| | | |
|---|---|---|
| Abramson (working lunch meal with J. O'Connell, S. Levibe, J. Wobensmith, A. Zafolias & A. Rogoff in New York, NY) | 06/02/14 | 120.00 |
| Abramson (working dinner meal with T. Coleman, S. Levine, A. Zafolias, B. O'Neill, K. Eckstein & A. Dove in New York, NY) | 06/24/14 | 140.00 |
| | **Subtotal - Meals with Clients** | **260.00** |

**Employee Meals**

| | | |
|---|---|---|
| Abramson (weeknight working dinner meal @ Blackstone while working late) | 04/23/14 | 20.00 |
| Abramson (weekend working breakfast meal @ Blackstone) | 05/10/14 | 4.30 |
| Abramson (weekend working lunch meal @ Blackstone) | 05/10/14 | 2.50 |
| Abramson (weeknight working dinner meal @ Blackstone while working late) | 05/19/14 | 20.00 |
| Abramson (weeknight working dinner meal @ Blackstone while working late) | 05/21/14 | 20.00 |
| Abramson (weeknight working dinner meal w/ S. Levine @ Blackstone while working late) | 05/22/14 | 40.00 |
| Abramson (weeknight working dinner meal w/ J. O'Connell @ Blackstone while working late) | 05/27/14 | 40.00 |
| Abramson (weekend working breakfast meal @ Blackstone) | 05/31/14 | 4.36 |
| Abramson (weekend working lunch meal @ Blackstone) | 05/31/14 | 9.80 |
| Abramson (weeknight working dinner meal @ Blackstone while working late) | 06/12/14 | 20.00 |
| Abramson (weekend working breakfast meal @ Blackstone) | 06/14/14 | 10.05 |
| Abramson (weekend working dinner meal @ Blackstone) | 06/14/14 | 20.00 |
| Abramson (weekend working breakfast meal @ Blackstone) | 06/15/14 | 9.25 |
| Abramson (weeknight working dinner meal @ Blackstone while working late) | 06/20/14 | 20.00 |
| Abramson (weekend working lunch meal @ Blackstone) | 06/22/14 | 7.35 |
| Abramson (weeknight working dinner meal @ Blackstone while working late) | 06/26/14 | 6.80 |
| Levine (weeknight working dinner meal @ Blackstone while working late) | 06/20/14 | 20.00 |
| Levine (weekend working dinner meal @ Blackstone) | 06/21/14 | 20.00 |
| Levine (weekend working lunch meal @ Blackstone) | 06/22/14 | 17.50 |

**Genco Shipping & Trading Ltd**
**Details of Expenses Processed**
**Through June 30, 2014**
**Invoice No. 3415**

| | | | |
|---|---|---|---|
| Levine (weekend working dinner meal @ Blackstone) | 06/22/14 | 20.00 | |
| | **Subtotal - Employee Meals** | | **331.91** |
| **Publishing Services** | | | |
| Wurzbacher (preparation of materials) | 06/23/14 | 17.50 | |
| | **Subtotal - Publishing Services** | | **17.50** |
| | **Total Expenses** | **$** | **1,469.11** |

# Blackstone Advisory Partners L.P.

August 5, 2014

Mr. John C. Wobensmith, CFA
Chief Financial Officer
Genco Shipping & Trading Limited
299 Park Avenue, 12th Floor
New York, NY 10171

| | | |
|---|---|---|
| Gross Restructuring Fee: | $ | 5,750,000.00 |
| Less: 50% of Monthly Fees beginning with the fourth Monthly Fee: [1] | | (262,500.00) |
| Less: 100% of Monthly Fees beginning with the seventh Monthly Fee: [1] | | (122,500.00) |
| **Total Amount Due** | **$** | **5,365,000.00** |

**Please wire transfer funds to:**

JP Morgan Chase
One Chase Manhattan Plaza
New York, NY 10017
ABA# 021 000 021
Credit Account: Blackstone Advisory Partners L.P.
Account Receivable Dept. 16th Floor
Account # 066-287472

**Invoice No. 3349**

---

[1] See paragraph 15 of Blackstone's First and Final Application.

**Blackstone Advisory Partners L.P.**
345 Park Avenue
New York, NY 10154
212 583-5000

**APPENDIX E**

**BLACKSTONE ADVISORY PARTNERS L.P.**
**SUMMARY OF HOURS FOR THE PERIOD OF**
**APRIL 21, 2014 THROUGH MAY 31, 2014**

| Professionals | Title | Hours |
|---|---|---|
| Timothy Coleman | Senior Managing Director | 27.5 |
| Jamie O'Connell | Senior Managing Director | 90.5 |
| Josh Abramson | Associate | 171.5 |
| Sam Levine | Analyst | 188.0 |
| Owen Wurzbacher | Analyst | 0.5 |
| **Total** | | **478.0** |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**HOURLY DETAILS FOR THE PERIOD OF**
**APRIL 21, 2014 THROUGH MAY 31, 2014**

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Jamie O'Connell | 04/22/14 | 0.5 | Business Analysis | Financial analysis and discussion regarding related matters |
| Josh Abramson | 04/22/14 | 0.5 | Business Analysis | Financial analysis and discussion regarding related matters |
| Sam Levine | 04/22/14 | 0.5 | Business Analysis | Financial analysis and discussion regarding related matters |
| Josh Abramson | 04/25/14 | 0.5 | Business Analysis | Review financial analysis prepared by S. Levine |
| Sam Levine | 04/25/14 | 1.0 | Business Analysis | Update of financial analyses and review of industry developments |
| Jamie O'Connell | 04/26/14 | 3.0 | Business Analysis | Review and comment on financial analyses |
| Josh Abramson | 04/26/14 | 1.0 | Business Analysis | Reviewing comments made by Jamie O'Connell to various financial analyses |
| Sam Levine | 04/26/14 | 2.0 | Business Analysis | Financial analysis supporting response to equity committee requests |
| Jamie O'Connell | 04/27/14 | 0.5 | Business Analysis | Review and comment on financial analyses; related call with J. Abramson |
| Josh Abramson | 04/27/14 | 0.5 | Business Analysis | Review and comment on financial analyses; related call with J. O'Connell |
| Jamie O'Connell | 04/28/14 | 0.5 | Business Analysis | Calls with management regarding various matters |
| Josh Abramson | 04/28/14 | 0.5 | Business Analysis | Calls with management regarding various matters |
| Josh Abramson | 04/28/14 | 1.0 | Business Analysis | Prepared and discussed financial analyses |
| Sam Levine | 04/28/14 | 0.5 | Business Analysis | Financial analysis and due diligence regarding share issuance |
| Sam Levine | 04/28/14 | 0.5 | Business Analysis | Reviewing comments made by Jamie O'Connell to various financial analyses |
| Jamie O'Connell | 04/29/14 | 0.5 | Business Analysis | Calls with management regarding various matters |
| Josh Abramson | 04/29/14 | 1.0 | Business Analysis | Preparing and reviewing analysis |
| Josh Abramson | 04/30/14 | 1.5 | Business Analysis | Preparing and reviewing financial analyses |
| Sam Levine | 04/30/14 | 2.0 | Business Analysis | Update of financial analyses and review of industry developments |
| Jamie O'Connell | 05/01/14 | 0.5 | Business Analysis | Correspondence and call with management regarding financial matter |
| Sam Levine | 05/01/14 | 2.5 | Business Analysis | Update of financial analyses and discussions with retained experts |
| Sam Levine | 05/01/14 | 0.5 | Business Analysis | Conference call regarding financial matter |
| Sam Levine | 05/01/14 | 2.0 | Business Analysis | Analysis of industry developments and relevant bankruptcies |
| Sam Levine | 05/01/14 | 0.5 | Business Analysis | Conference call regarding financial matter |
| Jamie O'Connell | 05/02/14 | 0.5 | Business Analysis | Internal team meeting regarding financial analyses |
| Josh Abramson | 05/02/14 | 0.5 | Business Analysis | Internal team meeting regarding financial analyses |
| Josh Abramson | 05/02/14 | 1.5 | Business Analysis | Call with Kramer Levin to discuss financial analysis |
| Sam Levine | 05/02/14 | 0.5 | Business Analysis | Internal team meeting regarding financial analyses |
| Sam Levine | 05/02/14 | 1.5 | Business Analysis | Conference call regarding financial matter |
| Jamie O'Connell | 05/04/14 | 0.5 | Business Analysis | Conference call with counsel and management regarding various matters |
| Jamie O'Connell | 05/05/14 | 1.0 | Business Analysis | Internal team meeting regarding financial analyses |
| Josh Abramson | 05/05/14 | 1.0 | Business Analysis | Internal team meeting regarding financial analyses |
| Josh Abramson | 05/05/14 | 1.5 | Business Analysis | Preparing follow up financial analyses |
| Sam Levine | 05/05/14 | 1.0 | Business Analysis | Discussion of financial methodology with retained experts |
| Sam Levine | 05/05/14 | 1.0 | Business Analysis | Internal team meeting regarding financial analyses |
| Sam Levine | 05/05/14 | 4.0 | Business Analysis | Analysis of industry developments and relevant transactions |
| Jamie O'Connell | 05/06/14 | 0.5 | Business Analysis | Internal team meeting regarding various matters |
| Jamie O'Connell | 05/06/14 | 0.5 | Business Analysis | Follow-up team meeting regarding various matters and call with counsel |
| Jamie O'Connell | 05/06/14 | 2.0 | Business Analysis | Meeting with management and counsel to discuss various matters |
| Josh Abramson | 05/06/14 | 0.5 | Business Analysis | Internal team meeting regarding various matters |
| Josh Abramson | 05/06/14 | 0.5 | Business Analysis | Follow-up team meeting regarding various matters and call with counsel |
| Josh Abramson | 05/06/14 | 2.0 | Business Analysis | Meeting with management and counsel to discuss various matters |
| Sam Levine | 05/06/14 | 0.5 | Business Analysis | Internal team meeting regarding various matters |
| Sam Levine | 05/06/14 | 0.5 | Business Analysis | Follow-up team meeting regarding various matters and call with counsel |
| Sam Levine | 05/06/14 | 8.0 | Business Analysis | Financial analysis |
| Jamie O'Connell | 05/07/14 | 1.0 | Business Analysis | Conference call regarding financial analyses |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**HOURLY DETAILS FOR THE PERIOD OF**
**APRIL 21, 2014 THROUGH MAY 31, 2014**

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Josh Abramson | 05/07/14 | 1.0 | Business Analysis | Conference call regarding financial analyses |
| Josh Abramson | 05/07/14 | 2.0 | Business Analysis | Reviewing and preparing financial analyses |
| Josh Abramson | 05/07/14 | 2.0 | Business Analysis | Analysis, preparation and formatting of presentation materials |
| Sam Levine | 05/07/14 | 1.0 | Business Analysis | Preparation of financial analyses requested by management |
| Sam Levine | 05/07/14 | 2.0 | Business Analysis | Analysis, preparation and formatting of presentation materials |
| Sam Levine | 05/07/14 | 3.0 | Business Analysis | Updating financial analysis |
| Sam Levine | 05/07/14 | 2.5 | Business Analysis | Analysis of industry developments and comparable companies |
| Josh Abramson | 05/08/14 | 6.0 | Business Analysis | Analysis, preparation and formatting of presentation materials |
| Sam Levine | 05/08/14 | 0.5 | Business Analysis | Edits to presentation materials |
| Jamie O'Connell | 05/09/14 | 0.5 | Business Analysis | Call with J. Abramson regarding various matters |
| Jamie O'Connell | 05/09/14 | 0.5 | Business Analysis | Correspondences regarding various matters |
| Josh Abramson | 05/09/14 | 0.5 | Business Analysis | Call with J. O'Connell regarding various matters |
| Josh Abramson | 05/09/14 | 1.0 | Business Analysis | Calls with counsel on various matters |
| Josh Abramson | 05/09/14 | 1.0 | Business Analysis | Reviewing and preparing financial analyses |
| Sam Levine | 05/09/14 | 0.5 | Business Analysis | Conference call regarding financial matter |
| Sam Levine | 05/09/14 | 5.0 | Business Analysis | Updating financial analysis |
| Sam Levine | 05/09/14 | 1.0 | Business Analysis | Diligence on comparable bankruptcies |
| Sam Levine | 05/09/14 | 0.5 | Business Analysis | Miscellaneous financial analyses prepared at the request of management |
| Sam Levine | 05/09/14 | 0.5 | Business Analysis | Discussion regarding financial matters |
| Jamie O'Connell | 05/10/14 | 0.5 | Business Analysis | Calls and correspondences regarding various matters |
| Jamie O'Connell | 05/10/14 | 0.5 | Business Analysis | Review and comment on financial analyses |
| Josh Abramson | 05/10/14 | 2.0 | Business Analysis | Reviewing and preparing financial analyses |
| Josh Abramson | 05/10/14 | 2.0 | Business Analysis | Preparing, reviewing and updating presentation materials |
| Sam Levine | 05/10/14 | 0.5 | Business Analysis | Discussion regarding financial matters |
| Sam Levine | 05/10/14 | 4.0 | Business Analysis | Updating financial analysis |
| Jamie O'Connell | 05/11/14 | 0.5 | Business Analysis | Review and comment on financial analyses |
| Jamie O'Connell | 05/11/14 | 0.5 | Business Analysis | Call with S. Levine regarding financial analyses |
| Josh Abramson | 05/11/14 | 0.5 | Business Analysis | Call with BX Team members regarding analysis |
| Josh Abramson | 05/11/14 | 1.0 | Business Analysis | Performing and reviewing financial analysis |
| Sam Levine | 05/11/14 | 0.5 | Business Analysis | Call with J. O'Connell regarding financial analyses |
| Sam Levine | 05/11/14 | 1.5 | Business Analysis | Adjustment to presentation, including updates to financial analyses |
| Timothy Coleman | 05/11/14 | 1.0 | Business Analysis | Review and comment on analyses |
| Jamie O'Connell | 05/12/14 | 1.5 | Business Analysis | Meeting with management and counsel to discuss various matters |
| Jamie O'Connell | 05/12/14 | 0.5 | Business Analysis | Meeting with S. Levine regarding various matters |
| Jamie O'Connell | 05/12/14 | 0.5 | Business Analysis | Calls and correspondences with management and counsel to prepare for board meeting |
| Josh Abramson | 05/12/14 | 2.5 | Business Analysis | Review of financial analyses and methodologies |
| Sam Levine | 05/12/14 | 0.5 | Business Analysis | Preparation for meeting with management and counsel |
| Sam Levine | 05/12/14 | 2.5 | Business Analysis | Review of financial analyses and methodologies |
| Sam Levine | 05/12/14 | 0.5 | Business Analysis | Discussion regarding financial matters |
| Sam Levine | 05/12/14 | 0.5 | Business Analysis | Miscellaneous financial analyses prepared at the request of management |
| Jamie O'Connell | 05/13/14 | 0.5 | Business Analysis | Attend (telephonically) Board of Directors meeting |
| Jamie O'Connell | 05/13/14 | 0.5 | Business Analysis | Follow-up internal meeting |
| Jamie O'Connell | 05/13/14 | 0.5 | Business Analysis | Meeting with S. Levine regarding various matters |
| Sam Levine | 05/13/14 | 0.5 | Business Analysis | Attend (telephonically) Board of Directors meeting |
| Jamie O'Connell | 05/14/14 | 0.5 | Business Analysis | Meeting with S. Levine regarding various matters |
| Josh Abramson | 05/14/14 | 1.0 | Business Analysis | Preparing and reviewing financial analyses |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**HOURLY DETAILS FOR THE PERIOD OF**
**APRIL 21, 2014 THROUGH MAY 31, 2014**

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Sam Levine | 05/14/14 | 3.0 | Business Analysis | Preparation of financial analyses and related presentation materials |
| Jamie O'Connell | 05/15/14 | 0.5 | Business Analysis | Internal team meeting regarding various matters |
| Jamie O'Connell | 05/15/14 | 2.0 | Business Analysis | Calls with counsel, S. Levine and J. Abramson regarding various matters |
| Jamie O'Connell | 05/15/14 | 1.0 | Business Analysis | Review and comment on financial analyses |
| Josh Abramson | 05/15/14 | 0.5 | Business Analysis | Internal team meeting regarding various matters |
| Josh Abramson | 05/15/14 | 2.0 | Business Analysis | Calls with counsel, Sam Levine, and J. O'Connell regarding various matters |
| Josh Abramson | 05/15/14 | 3.0 | Business Analysis | Preparation and review of financial analyses and related presentation materials |
| Josh Abramson | 05/15/14 | 2.0 | Business Analysis | Discussion and analysis of initial proposal by Official Committee of Equity Security Holders |
| Sam Levine | 05/15/14 | 0.5 | Business Analysis | Internal team meeting regarding various matters |
| Sam Levine | 05/15/14 | 5.0 | Business Analysis | Preparation of financial analyses and related presentation materials |
| Sam Levine | 05/15/14 | 1.0 | Business Analysis | Discussion regarding financial matters |
| Sam Levine | 05/15/14 | 2.0 | Business Analysis | Analysis of initial proposal by Official Committee of Equity Security Holders |
| Timothy Coleman | 05/15/14 | 0.5 | Business Analysis | Internal team meeting regarding various matters |
| Jamie O'Connell | 05/16/14 | 0.5 | Business Analysis | Review and comment on financial analyses |
| Jamie O'Connell | 05/16/14 | 0.5 | Business Analysis | Discuss financial analyses with S. Levine |
| Timothy Coleman | 05/18/14 | 1.0 | Business Analysis | Review and comment on financial analyses |
| Jamie O'Connell | 05/20/14 | 1.0 | Business Analysis | Internal team meeting regarding financial analyses |
| Jamie O'Connell | 05/20/14 | 1.0 | Business Analysis | Meeting with management regarding various matters |
| Jamie O'Connell | 05/20/14 | 0.5 | Business Analysis | Call with management regarding various matters |
| Jamie O'Connell | 05/20/14 | 1.0 | Business Analysis | Follow-up internal team meeting regarding financial analyses |
| Josh Abramson | 05/20/14 | 1.0 | Business Analysis | Internal team meeting regarding financial analyses |
| Josh Abramson | 05/20/14 | 1.0 | Business Analysis | Follow-up internal team meeting regarding financial analyses |
| Sam Levine | 05/20/14 | 1.0 | Business Analysis | Meeting with management regarding various matters |
| Sam Levine | 05/20/14 | 1.0 | Business Analysis | Follow-up internal team meeting regarding financial analyses |
| Sam Levine | 05/20/14 | 3.0 | Business Analysis | Financial analysis of comparable companies for financial report |
| Sam Levine | 05/20/14 | 6.0 | Business Analysis | Prepared and reviewed financial analysis related to expert report |
| Jamie O'Connell | 05/21/14 | 1.0 | Business Analysis | Various financial analysis and calls with management |
| Josh Abramson | 05/24/14 | 1.0 | Business Analysis | Prepared financial analysis |
| Josh Abramson | 05/28/14 | 5.0 | Business Analysis | Preparing and reviewing financial analysis |
| Josh Abramson | 05/29/14 | 1.0 | Business Analysis | Meeting with management |
| Sam Levine | 05/29/14 | 3.0 | Business Analysis | Preparation of schedule of backstop commitments |
| Josh Abramson | 05/30/14 | 1.0 | Business Analysis | Review and comment on financial analysis |
| | | **166.5** | | |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**HOURLY DETAILS FOR THE PERIOD OF**
**APRIL 21, 2014 THROUGH MAY 31, 2014**

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Sam Levine | 04/22/14 | 0.5 | Case Administration | Discussion with counsel regarding various matters |
| Sam Levine | 04/24/14 | 1.5 | Case Administration | Preparation for discussion with litigation experts |
| Josh Abramson | 04/25/14 | 0.5 | Case Administration | Review of SOFAs |
| Josh Abramson | 04/25/14 | 2.0 | Case Administration | Conference calls with counsel and client on bankruptcy matters |
| Jamie O'Connell | 04/26/14 | 0.5 | Case Administration | Review and comment on draft document in response to correspondence from counsel |
| Jamie O'Connell | 04/26/14 | 0.5 | Case Administration | Conference call with counsel with respect to draft document |
| Josh Abramson | 04/26/14 | 0.5 | Case Administration | Conference call with counsel with respect to draft document |
| Josh Abramson | 04/26/14 | 2.0 | Case Administration | Assisting lawyers in preparing letter to trustee |
| Sam Levine | 04/26/14 | 1.0 | Case Administration | Review of SOFAs |
| Jamie O'Connell | 04/28/14 | 0.5 | Case Administration | Conference call with management and counsel regarding various matters |
| Josh Abramson | 04/28/14 | 1.5 | Case Administration | Conference call with management and counsel regarding various matters and follow up work |
| Josh Abramson | 04/30/14 | 0.5 | Case Administration | Calls with Company management and Kramer Levin |
| Josh Abramson | 05/01/14 | 1.0 | Case Administration | Call with Kramer Levin regarding retention of professionals |
| Sam Levine | 05/01/14 | 1.5 | Case Administration | Procurement of equity holder schedule from US Trustee |
| Sam Levine | 05/01/14 | 0.5 | Case Administration | Calls with Kramer Levin status and case updates |
| Josh Abramson | 05/02/14 | 1.0 | Case Administration | Call with Kramer Levin regarding retention of professionals |
| Josh Abramson | 05/03/14 | 0.5 | Case Administration | Call with Counsel to discuss next steps |
| Josh Abramson | 05/04/14 | 1.0 | Case Administration | Reviewing timeline and conversations with counsel |
| Sam Levine | 05/04/14 | 0.5 | Case Administration | Conference call with counsel and management regarding various matters |
| Timothy Coleman | 05/04/14 | 0.5 | Case Administration | Conference call with counsel and management regarding various matters |
| Josh Abramson | 05/05/14 | 1.5 | Case Administration | Calls with counsel and management on various matters |
| Sam Levine | 05/06/14 | 2.0 | Case Administration | Meeting with management and counsel to discuss various matters |
| Timothy Coleman | 05/06/14 | 0.5 | Case Administration | Correspondences regarding case developments |
| Josh Abramson | 05/07/14 | 1.0 | Case Administration | Calls with retained professionals on various matters |
| Sam Levine | 05/07/14 | 1.0 | Case Administration | Conference call regarding data analysis |
| Sam Levine | 05/07/14 | 1.5 | Case Administration | Calls with retained professionals on various matters |
| Timothy Coleman | 05/07/14 | 0.5 | Case Administration | Correspondences regarding case developments |
| Sam Levine | 05/08/14 | 0.5 | Case Administration | Discussion regarding case matters |
| Sam Levine | 05/09/14 | 0.5 | Case Administration | Call with counsel regarding various matters |
| Jamie O'Connell | 05/12/14 | 0.5 | Case Administration | Calls and correspondences with management and counsel to prepare for meeting with Equity Committee |
| Sam Levine | 05/12/14 | 1.5 | Case Administration | Meeting with management and counsel to discuss various matters |
| Sam Levine | 05/12/14 | 0.5 | Case Administration | Meeting with J. O'Connell regarding various matters |
| Timothy Coleman | 05/12/14 | 1.5 | Case Administration | Meeting with management and counsel to discuss various matters |
| Jamie O'Connell | 05/13/14 | 2.0 | Case Administration | Prepare for meeting with Equity Committee |
| Jamie O'Connell | 05/13/14 | 2.0 | Case Administration | Meeting with Equity Committee and its advisors (did not attend entire meeting) |
| Josh Abramson | 05/13/14 | 3.0 | Case Administration | Meeting with Equity Committee and its advisors; subsequent meeting with client |
| Josh Abramson | 05/13/14 | 2.0 | Case Administration | Follow-up conversation with counsel and Company |
| Sam Levine | 05/13/14 | 3.0 | Case Administration | Meeting with Equity Committee and its advisors; subsequent meeting with client |
| Sam Levine | 05/13/14 | 0.5 | Case Administration | Follow-up internal meeting |
| Sam Levine | 05/13/14 | 0.5 | Case Administration | Meeting with J. O'Connell regarding various matters |
| Timothy Coleman | 05/13/14 | 3.0 | Case Administration | Meeting with Equity Committee and its advisors; subsequent meeting with client |
| Timothy Coleman | 05/13/14 | 0.5 | Case Administration | Follow-up internal meeting |
| Sam Levine | 05/14/14 | 0.5 | Case Administration | Meeting with J. O'Connell regarding various matters |
| Sam Levine | 05/15/14 | 2.0 | Case Administration | Calls with counsel, J. Abramson and J. O'Connell regarding various matters |
| Timothy Coleman | 05/15/14 | 0.5 | Case Administration | Discussions with members of the equity committee |
| Josh Abramson | 05/16/14 | 3.0 | Case Administration | Review of legal documents |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**HOURLY DETAILS FOR THE PERIOD OF**
**APRIL 21, 2014 THROUGH MAY 31, 2014**

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Josh Abramson | 05/17/14 | 0.5 | Case Administration | Call with Counsel on various matters |
| Jamie O'Connell | 05/19/14 | 0.5 | Case Administration | Calls to prepare for financial advisor meeting |
| Josh Abramson | 05/19/14 | 1.5 | Case Administration | Calls with Counsel and Blackstone on various matters |
| Jamie O'Connell | 05/20/14 | 0.5 | Case Administration | Correspondences and calls regarding various matters |
| Jamie O'Connell | 05/20/14 | 0.5 | Case Administration | Internal team meeting regarding various matters |
| Jamie O'Connell | 05/20/14 | 2.5 | Case Administration | Meeting with management and Rothschild regarding business plan |
| Josh Abramson | 05/20/14 | 0.5 | Case Administration | Internal team meeting regarding various matters |
| Josh Abramson | 05/20/14 | 2.5 | Case Administration | Meeting with management and Rothschild regarding business plan |
| Josh Abramson | 05/20/14 | 1.0 | Case Administration | Meeting with management regarding various matters |
| Sam Levine | 05/20/14 | 2.5 | Case Administration | Meeting with management and Rothschild regarding business plan |
| Jamie O'Connell | 05/21/14 | 0.5 | Case Administration | Conference call with counsel regarding financial advisor meeting |
| Sam Levine | 05/21/14 | 0.5 | Case Administration | Conference call with counsel regarding financial advisor meeting |
| Jamie O'Connell | 05/23/14 | 0.5 | Case Administration | Calls and correspondences regarding various matters |
| Jamie O'Connell | 05/24/14 | 1.0 | Case Administration | Correspondences with counsel and management |
| Josh Abramson | 05/24/14 | 1.0 | Case Administration | Calls with counsel and management |
| Jamie O'Connell | 05/25/14 | 0.5 | Case Administration | Correspondences with counsel and management |
| Jamie O'Connell | 05/26/14 | 0.5 | Case Administration | Correspondences with Rothschild regarding meeting agenda |
| Jamie O'Connell | 05/26/14 | 0.5 | Case Administration | Correspondences with counsel and management |
| Jamie O'Connell | 05/27/14 | 0.5 | Case Administration | Conference call with management and counsel regarding various matters |
| Jamie O'Connell | 05/27/14 | 0.5 | Case Administration | Pre-meeting with management before Rothschild meeting |
| Jamie O'Connell | 05/27/14 | 1.5 | Case Administration | Meeting with management and Rothschild regarding business plan |
| Jamie O'Connell | 05/27/14 | 0.5 | Case Administration | Post-meeting with management after Rothschild meeting |
| Josh Abramson | 05/27/14 | 0.5 | Case Administration | Pre-meeting with management before Rothschild meeting |
| Josh Abramson | 05/27/14 | 1.5 | Case Administration | Meeting with management and Rothschild regarding business plan |
| Josh Abramson | 05/27/14 | 0.5 | Case Administration | Post-meeting with management after Rothschild meeting |
| Josh Abramson | 05/28/14 | 2.0 | Case Administration | Calls with counsel and management |
| Josh Abramson | 05/30/14 | 1.0 | Case Administration | Calls with Kramer Levin |
| | | **79.5** | | |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**HOURLY DETAILS FOR THE PERIOD OF**
**APRIL 21, 2014 THROUGH MAY 31, 2014**

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Jamie O'Connell | 04/22/14 | 0.5 | Fee/Employment Applications | Meeting with J. Abramson and internal counsel to coordinate retention |
| Josh Abramson | 04/22/14 | 0.5 | Fee/Employment Applications | Meeting with J. O'Connell and internal counsel to coordinate retention |
| Josh Abramson | 04/25/14 | 0.5 | Fee/Employment Applications | Preparing Blackstone Retention Application |
| Josh Abramson | 04/25/14 | 0.5 | Fee/Employment Applications | Discussions regarding potential retention |
| Sam Levine | 04/25/14 | 0.5 | Fee/Employment Applications | Discussions regarding potential retention |
| Jamie O'Connell | 04/26/14 | 1.0 | Fee/Employment Applications | Drafting of declaration in connection with Blackstone retention application |
| Josh Abramson | 04/29/14 | 1.0 | Fee/Employment Applications | Discussions regarding potential retention |
| Josh Abramson | 04/30/14 | 1.0 | Fee/Employment Applications | Discussions regarding potential retention |
| | | **5.5** | | |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**HOURLY DETAILS FOR THE PERIOD OF**
**APRIL 21, 2014 THROUGH MAY 31, 2014**

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Jamie O'Connell | 05/05/14 | 0.5 | Financing | Meeting with internal team and call with management regarding 13-week cash flow |
| Josh Abramson | 05/05/14 | 0.5 | Financing | Meeting with internal team and call with management regarding 13-week cash flow |
| Sam Levine | 05/05/14 | 0.5 | Financing | Meeting with internal team and call with management regarding 13-week cash flow |
| Jamie O'Connell | 05/07/14 | 0.5 | Financing | Call with management and counsel regarding 13-week cash flow forecast |
| Josh Abramson | 05/07/14 | 0.5 | Financing | Call with management and counsel regarding 13-week cash flow forecast |
| Josh Abramson | 05/07/14 | 0.5 | Financing | Calls with management regarding financial analysis and 13-week cash flow |
| Josh Abramson | 05/07/14 | 2.0 | Financing | Calls with counsel regarding financial analysis, 13-week cash flow and various matters |
| Sam Levine | 05/07/14 | 0.5 | Financing | Calls with management regarding financial analysis and 13-week cash flow |
| Sam Levine | 05/07/14 | 2.0 | Financing | Calls with counsel regarding financial analysis, 13-week cash flow and various matters |
| | | 7.5 | | |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**HOURLY DETAILS FOR THE PERIOD OF**
**APRIL 21, 2014 THROUGH MAY 31, 2014**

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Sam Levine | 05/01/14 | 0.5 | Litigation Consulting | Discussion with litigation experts |
| Jamie O'Connell | 05/07/14 | 0.5 | Litigation Consulting | Read discovery request submitted by Kirkland & Ellis |
| Jamie O'Connell | 05/08/14 | 1.0 | Litigation Consulting | Conference call with counsel regarding various case matters |
| Jamie O'Connell | 05/08/14 | 0.5 | Litigation Consulting | Call with counsel regarding discovery requests |
| Josh Abramson | 05/15/14 | 1.0 | Litigation Consulting | Discussion regarding financial matters |
| Sam Levine | 05/15/14 | 2.0 | Litigation Consulting | Preparation of financial analyses and related presentation materials |
| Jamie O'Connell | 05/18/14 | 1.0 | Litigation Consulting | Hearing preparation with S. Levine and Counsel |
| Sam Levine | 05/18/14 | 1.0 | Litigation Consulting | Hearing preparation with J. O'Connell and Counsel |
| Sam Levine | 05/18/14 | 1.5 | Litigation Consulting | Preparation of materials at the request of counsel |
| Sam Levine | 05/18/14 | 2.5 | Litigation Consulting | Internal meeting with Counsel regarding discovery |
| Jamie O'Connell | 05/19/14 | 1.0 | Litigation Consulting | Attend deposition of N. Augustine |
| Jamie O'Connell | 05/19/14 | 1.0 | Litigation Consulting | Internal team meeting regarding expert report (did not attend entire meeting) |
| Josh Abramson | 05/19/14 | 3.0 | Litigation Consulting | Internal team meeting regarding expert report |
| Josh Abramson | 05/19/14 | 3.0 | Litigation Consulting | Prepared follow-up financial analysis |
| Sam Levine | 05/19/14 | 3.0 | Litigation Consulting | Internal team meeting regarding expert report |
| Sam Levine | 05/19/14 | 9.0 | Litigation Consulting | Preparation and development of expert report |
| Timothy Coleman | 05/19/14 | 3.0 | Litigation Consulting | Internal team meeting regarding expert report |
| Josh Abramson | 05/20/14 | 6.0 | Litigation Consulting | Prepared and reviewed financial analysis related to expert report |
| Sam Levine | 05/20/14 | 0.5 | Litigation Consulting | Internal team meeting regarding various matters |
| Sam Levine | 05/20/14 | 1.0 | Litigation Consulting | Internal team meeting regarding financial analyses |
| Timothy Coleman | 05/20/14 | 2.5 | Litigation Consulting | Internal team meeting regarding expert report |
| Jamie O'Connell | 05/21/14 | 2.0 | Litigation Consulting | Internal team meeting regarding expert report |
| Jamie O'Connell | 05/21/14 | 0.5 | Litigation Consulting | Internal team call regarding expert report |
| Josh Abramson | 05/21/14 | 2.0 | Litigation Consulting | Internal team meeting regarding expert report |
| Josh Abramson | 05/21/14 | 3.0 | Litigation Consulting | Follow-up internal team meeting regarding expert report |
| Josh Abramson | 05/21/14 | 0.5 | Litigation Consulting | Internal team call regarding expert report |
| Josh Abramson | 05/21/14 | 5.0 | Litigation Consulting | Reviewed and prepared expert report |
| Josh Abramson | 05/21/14 | 1.0 | Litigation Consulting | Internal team meetings regarding expert report |
| Sam Levine | 05/21/14 | 2.0 | Litigation Consulting | Internal team meeting regarding expert report |
| Sam Levine | 05/21/14 | 3.0 | Litigation Consulting | Follow-up internal team meeting regarding expert report |
| Sam Levine | 05/21/14 | 0.5 | Litigation Consulting | Internal team call regarding expert report |
| Sam Levine | 05/21/14 | 7.0 | Litigation Consulting | Prepared and reviewed financial analysis related to expert report |
| Timothy Coleman | 05/21/14 | 2.0 | Litigation Consulting | Internal team meeting regarding expert report |
| Timothy Coleman | 05/21/14 | 4.0 | Litigation Consulting | Follow-up internal team meeting regarding expert report |
| Jamie O'Connell | 05/22/14 | 1.0 | Litigation Consulting | Internal team meetings regarding expert report |
| Jamie O'Connell | 05/22/14 | 3.0 | Litigation Consulting | Multiple calls with management and counsel regarding case matters and expert report |
| Josh Abramson | 05/22/14 | 3.0 | Litigation Consulting | Follow-up internal team meeting regarding expert report |
| Josh Abramson | 05/22/14 | 4.0 | Litigation Consulting | Prepared and reviewed financial analysis related to expert report |
| Josh Abramson | 05/22/14 | 1.0 | Litigation Consulting | Calls with retained experts |
| Josh Abramson | 05/22/14 | 2.0 | Litigation Consulting | Reviewed drafts of analysis with counsel |
| Sam Levine | 05/22/14 | 1.0 | Litigation Consulting | Internal team meetings regarding expert report |
| Timothy Coleman | 05/22/14 | 1.0 | Litigation Consulting | Internal team meetings regarding expert report |
| Timothy Coleman | 05/22/14 | 1.0 | Litigation Consulting | Review and comment on expert report |
| Jamie O'Connell | 05/23/14 | 0.5 | Litigation Consulting | Review draft expert report |
| Josh Abramson | 05/23/14 | 4.0 | Litigation Consulting | Prepared analysis and reviewed analysis related to expert report |
| Timothy Coleman | 05/23/14 | 0.5 | Litigation Consulting | Review correspondences relating to court hearing and other various matters |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**HOURLY DETAILS FOR THE PERIOD OF**
**APRIL 21, 2014 THROUGH MAY 31, 2014**

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Timothy Coleman | 05/25/14 | 1.0 | Litigation Consulting | Review and comment on expert report |
| Sam Levine | 05/26/14 | 3.0 | Litigation Consulting | Research on precedent transactions |
| Jamie O'Connell | 05/27/14 | 0.5 | Litigation Consulting | Review draft expert report |
| Jamie O'Connell | 05/27/14 | 1.0 | Litigation Consulting | Internal team meeting regarding expert report |
| Jamie O'Connell | 05/27/14 | 2.0 | Litigation Consulting | Follow-up internal team meeting regarding expert report |
| Josh Abramson | 05/27/14 | 2.0 | Litigation Consulting | Follow-up internal team meeting regarding expert report |
| Josh Abramson | 05/27/14 | 3.0 | Litigation Consulting | Reviewed draft of expert report |
| Josh Abramson | 05/27/14 | 3.0 | Litigation Consulting | Reviewed draft of expert report |
| Owen Wurzbacher | 05/27/14 | 0.5 | Litigation Consulting | Financial analysis of industry transactions |
| Sam Levine | 05/27/14 | 1.0 | Litigation Consulting | Internal team meeting regarding expert report |
| Sam Levine | 05/27/14 | 0.5 | Litigation Consulting | Conference call with management and counsel regarding various matters |
| Sam Levine | 05/27/14 | 2.0 | Litigation Consulting | Follow-up internal team meeting regarding expert report |
| Timothy Coleman | 05/27/14 | 1.0 | Litigation Consulting | Internal team meeting regarding expert report |
| Timothy Coleman | 05/27/14 | 0.5 | Litigation Consulting | Conference call with management and counsel regarding various matters |
| Timothy Coleman | 05/27/14 | 1.0 | Litigation Consulting | Internal team meeting regarding expert report |
| Timothy Coleman | 05/27/14 | 0.5 | Litigation Consulting | Internal team meeting regarding expert report |
| Jamie O'Connell | 05/28/14 | 5.0 | Litigation Consulting | Analysis related to expert report |
| Josh Abramson | 05/28/14 | 3.0 | Litigation Consulting | Review of draft expert report |
| Sam Levine | 05/28/14 | 1.0 | Litigation Consulting | Review of precedent rulings and court transcripts |
| Sam Levine | 05/28/14 | 5.0 | Litigation Consulting | Incorporating changes to expert report |
| Sam Levine | 05/28/14 | 4.0 | Litigation Consulting | Detailed review of expert report |
| Josh Abramson | 05/29/14 | 2.5 | Litigation Consulting | Reviewing discovery |
| Josh Abramson | 05/29/14 | 1.0 | Litigation Consulting | Calls with Kramer Levin |
| Sam Levine | 05/29/14 | 0.5 | Litigation Consulting | Work on presentation materials |
| | | **143.5** | | |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**HOURLY DETAILS FOR THE PERIOD OF**
**APRIL 21, 2014 THROUGH MAY 31, 2014**

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Jamie O'Connell | 04/22/14 | 1.0 | Plan and Disclosure Statement | Discussion of first day presentation materials with J. Abramson and S. Levine |
| Jamie O'Connell | 04/22/14 | 2.0 | Plan and Disclosure Statement | First-day hearing preparations at Kramer Levin with management and counsel |
| Josh Abramson | 04/22/14 | 1.0 | Plan and Disclosure Statement | Drafting and discussion of first day presentation materials with J. O'Connell and S. Levine |
| Josh Abramson | 04/22/14 | 1.0 | Plan and Disclosure Statement | Financial analysis supporting first day hearings |
| Josh Abramson | 04/22/14 | 2.0 | Plan and Disclosure Statement | First-day hearing preparations at Kramer Levin with Debtors and Counsel |
| Sam Levine | 04/22/14 | 3.0 | Plan and Disclosure Statement | Drafting and discussion of first day presentation materials |
| Sam Levine | 04/22/14 | 3.0 | Plan and Disclosure Statement | Financial analysis supporting first day hearings |
| Sam Levine | 04/22/14 | 2.0 | Plan and Disclosure Statement | First-day hearing preparations at Kramer Levin with Debtors and Counsel |
| Jamie O'Connell | 04/23/14 | 5.0 | Plan and Disclosure Statement | Attended first-day hearing |
| Jamie O'Connell | 04/23/14 | 3.5 | Plan and Disclosure Statement | Meetings with counsel and management prior to and after first-day hearing |
| Josh Abramson | 04/23/14 | 5.0 | Plan and Disclosure Statement | Attended first-day hearing |
| Josh Abramson | 04/23/14 | 3.5 | Plan and Disclosure Statement | Meetings with counsel and management prior to and after first-day hearing |
| Sam Levine | 04/23/14 | 5.0 | Plan and Disclosure Statement | Attended first-day hearing |
| Sam Levine | 04/23/14 | 3.5 | Plan and Disclosure Statement | Meetings with counsel and management prior to and after first-day hearing |
| Jamie O'Connell | 04/24/14 | 0.5 | Plan and Disclosure Statement | Review letters filed on behalf of equity holders |
| Jamie O'Connell | 04/24/14 | 1.0 | Plan and Disclosure Statement | Attended telephonic hearing with respect to bench ruling on RSA |
| Josh Abramson | 04/24/14 | 3.0 | Plan and Disclosure Statement | Review of Warrant Agreement and coordination with Counsel |
| Josh Abramson | 04/24/14 | 1.0 | Plan and Disclosure Statement | Conference call with counsel with respect to draft document |
| Josh Abramson | 04/24/14 | 0.5 | Plan and Disclosure Statement | Reviewing legal documents |
| Josh Abramson | 04/24/14 | 1.0 | Plan and Disclosure Statement | Attended telephonic hearing with respect to bench ruling on RSA |
| Sam Levine | 04/24/14 | 3.0 | Plan and Disclosure Statement | Review of Warrant Agreement and coordination with Counsel |
| Sam Levine | 04/24/14 | 1.0 | Plan and Disclosure Statement | Attended telephonic hearing with respect to bench ruling on RSA |
| Sam Levine | 04/27/14 | 2.0 | Plan and Disclosure Statement | Preparation of presentation materials regarding plan requirements and alternatives |
| Sam Levine | 04/28/14 | 4.0 | Plan and Disclosure Statement | Preparation of presentation materials regarding speculative plan alternatives |
| Jamie O'Connell | 05/14/14 | 0.5 | Plan and Disclosure Statement | Preparation for court hearing |
| Jamie O'Connell | 05/14/14 | 0.5 | Plan and Disclosure Statement | Meeting with counsel before court hearing |
| Jamie O'Connell | 05/14/14 | 1.5 | Plan and Disclosure Statement | Attend May 14, 2014 court hearing |
| Jamie O'Connell | 05/14/14 | 0.5 | Plan and Disclosure Statement | Meeting with counsel after court hearing |
| Sam Levine | 05/14/14 | 1.5 | Plan and Disclosure Statement | Attend May 14, 2014 court hearing |
| Sam Levine | 05/14/14 | 0.5 | Plan and Disclosure Statement | Meeting with counsel after court hearing |
| Jamie O'Connell | 05/19/14 | 3.0 | Plan and Disclosure Statement | Attend May 19, 2014 court hearing and related meetings between court sessions |
| Josh Abramson | 05/19/14 | 2.0 | Plan and Disclosure Statement | Listened to hearing |
| Jamie O'Connell | 05/23/14 | 4.0 | Plan and Disclosure Statement | Attend May 23, 2014 court hearing and related meetings between court sessions |
| Josh Abramson | 05/23/14 | 4.0 | Plan and Disclosure Statement | Attend May 23, 2014 court hearing |
| | | **75.5** | | |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**SUMMARY OF HOURS FOR THE PERIOD OF**
**JUNE 1, 2014 THROUGH JUNE 30, 2014**

| Professionals | Title | Hours |
|---|---|---|
| Timothy Coleman | Senior Managing Director | 96.5 |
| Jamie O'Connell | Senior Managing Director | 112.0 |
| Josh Abramson | Associate | 185.5 |
| Sam Levine | Analyst | 174.0 |
| Owen Wurzbacher | Analyst | 28.0 |
| | **Total** | **596.0** |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**HOURLY DETAILS FOR THE PERIOD OF**
**JUNE 1, 2014 THROUGH JUNE 30, 2014**

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Sam Levine | 06/03/14 | 3.0 | Business Analysis | Preparation of diligence materials for Equity Committee |
| Sam Levine | 06/03/14 | 4.0 | Business Analysis | Preparation of financial analyses |
| Sam Levine | 06/04/14 | 1.0 | Business Analysis | Preparation of expert report source materials |
| Josh Abramson | 06/08/14 | 2.0 | Business Analysis | Preparing and reviewing financial analysis |
| Sam Levine | 06/08/14 | 4.0 | Business Analysis | Preparation of financial analyses for counsel |
| Sam Levine | 06/08/14 | 2.0 | Business Analysis | Review of MSI Reports |
| Sam Levine | 06/08/14 | 1.0 | Business Analysis | Review of related bankruptcies |
| Josh Abramson | 06/11/14 | 5.0 | Business Analysis | Reviewing Equity Committee Reports |
| Sam Levine | 06/11/14 | 8.0 | Business Analysis | Reviewing Equity Committee Reports |
| Josh Abramson | 06/12/14 | 12.0 | Business Analysis | Preparation of rebuttal report |
| Sam Levine | 06/12/14 | 16.0 | Business Analysis | Preparation of rebuttal report |
| Timothy Coleman | 06/12/14 | 7.0 | Business Analysis | Draft expert rebuttal report |
| Jamie O'Connell | 06/13/14 | 2.0 | Business Analysis | Financial analysis |
| Timothy Coleman | 06/13/14 | 9.5 | Business Analysis | Draft expert rebuttal report |
| Jamie O'Connell | 06/14/14 | 8.5 | Business Analysis | Analysis and work on draft rebuttal report |
| Josh Abramson | 06/14/14 | 16.0 | Business Analysis | Prepared and reviewed financial analysis related to Blackstone Rebuttal Report |
| Owen Wurzbacher | 06/14/14 | 6.0 | Business Analysis | Preparation of rebuttal report |
| Timothy Coleman | 06/14/14 | 6.0 | Business Analysis | Draft expert rebuttal report |
| Timothy Coleman | 06/14/14 | 3.0 | Business Analysis | Draft expert rebuttal report |
| Jamie O'Connell | 06/15/14 | 2.5 | Business Analysis | Analysis and work on draft rebuttal report |
| Josh Abramson | 06/15/14 | 9.0 | Business Analysis | Prepared and reviewed financial analysis related to Blackstone Rebuttal Report |
| Owen Wurzbacher | 06/16/14 | 8.0 | Business Analysis | Preparation of rebuttal report |
| Sam Levine | 06/15/14 | 9.0 | Business Analysis | Prepared and reviewed financial analysis related to Blackstone Rebuttal Report |
| Timothy Coleman | 06/15/14 | 2.0 | Business Analysis | Draft expert rebuttal report |
| Jamie O'Connell | 06/16/14 | 2.0 | Business Analysis | Analysis and work on draft rebuttal report |
| Owen Wurzbacher | 06/17/14 | 3.0 | Business Analysis | Preparation for Coleman deposition |
| Timothy Coleman | 06/16/14 | 2.0 | Business Analysis | Draft expert rebuttal report |
| Owen Wurzbacher | 06/25/14 | 3.0 | Business Analysis | Cash flow and recovery forecasting based on potential appeal |
| Josh Abramson | 06/27/14 | 2.0 | Business Analysis | Cash flow and recovery forecasting based on potential appeal |
| Owen Wurzbacher | 06/27/14 | 2.0 | Business Analysis | Cash flow and recovery forecasting based on potential appeal |
| Josh Abramson | 06/30/14 | 3.0 | Business Analysis | Cash flow and recovery forecasting based on potential appeal |
| Owen Wurzbacher | 06/30/14 | 3.0 | Business Analysis | Cash flow and recovery forecasting based on potential appeal |
| | | **166.5** | | |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**HOURLY DETAILS FOR THE PERIOD OF**
**JUNE 1, 2014 THROUGH JUNE 30, 2014**

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Josh Abramson | 06/06/14 | 2.0 | Case Administration | Calls with Counsel and Client |
| Josh Abramson | 06/13/14 | 3.0 | Case Administration | Meeting with J. O'Connell regarding analyses |
| Jamie O'Connell | 06/13/14 | 3.0 | Case Administration | Meeting with J. Abramson regarding analyses |
| Jamie O'Connell | 06/06/14 | 0.5 | Case Administration | Internal team call regarding various matters |
| Jamie O'Connell | 06/07/14 | 0.5 | Case Administration | Call with S. Levine regarding various matters |
| Sam Levine | 06/07/14 | 0.5 | Case Administration | Call with J. O'Connell regarding various matters |
| Sam Levine | 06/07/14 | 1.0 | Case Administration | Procurement of expert testimony materials |
| Jamie O'Connell | 06/09/14 | 1.0 | Case Administration | Internal team meeting regarding various matters |
| Jamie O'Connell | 06/09/14 | 0.5 | Case Administration | Miscellaneous calls with counsel |
| Timothy Coleman | 06/09/14 | 1.0 | Case Administration | Internal team meeting regarding various matters |
| Timothy Coleman | 06/11/14 | 8.0 | Case Administration | Meetings with counsel on litigation preparation |
| Timothy Coleman | 06/12/14 | 1.0 | Case Administration | Meetings with counsel at court house |
| Jamie O'Connell | 06/19/14 | 0.5 | Case Administration | Internal team meeting regarding various matters |
| | | **22.5** | | |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**HOURLY DETAILS FOR THE PERIOD OF**
**JUNE 1, 2014 THROUGH JUNE 30, 2014**

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Sam Levine | 06/04/14 | 2.0 | Financing | Cash collateral preparation |
| Sam Levine | 06/04/14 | 1.0 | Financing | Cash collateral discussion with Paul Weiss and Houlihan Lokey |
| Sam Levine | 06/05/14 | 1.0 | Financing | Discussion of Cash Collateral update with Houlihan Lokey |
| Josh Abramson | 06/26/14 | 3.0 | Financing | Cash collateral and budgeting |
| | | **7.0** | | |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**HOURLY DETAILS FOR THE PERIOD OF**
**JUNE 1, 2014 THROUGH JUNE 30, 2014**

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Josh Abramson | 06/02/14 | 2.5 | Litigation Consulting | Meeting with counsel and management in advance of court hearing |
| Sam Levine | 06/02/14 | 2.5 | Litigation Consulting | Meeting with counsel and management in advance of court hearing |
| Sam Levine | 06/02/14 | 2.5 | Litigation Consulting | Discussion with lawyers counsel regarding financial analyses |
| Sam Levine | 06/02/14 | 1.0 | Litigation Consulting | Preparation of diligence materials for Equity Committee |
| Jamie O'Connell | 06/03/14 | 1.5 | Litigation Consulting | Prepare for deposition |
| Sam Levine | 06/03/14 | 1.5 | Litigation Consulting | Prepare for deposition |
| Sam Levine | 06/03/14 | 1.0 | Litigation Consulting | Discussions with counsel regarding diligence materials |
| Jamie O'Connell | 06/04/14 | 7.0 | Litigation Consulting | Deposition preparation meetings with Kramer Levin and Josh Abramson |
| Jamie O'Connell | 06/04/14 | 2.0 | Litigation Consulting | Subsequent deposition preparation |
| Josh Abramson | 06/04/14 | 7.0 | Litigation Consulting | Deposition preparation with Jamie O. and Kramer Levin |
| Sam Levine | 06/04/14 | 3.0 | Litigation Consulting | Deposition preparation |
| Jamie O'Connell | 06/05/14 | 1.5 | Litigation Consulting | Deposition preparation |
| Josh Abramson | 06/05/14 | 0.5 | Litigation Consulting | Meeting with counsel |
| Jamie O'Connell | 06/06/14 | 0.5 | Litigation Consulting | Review pleading filed by Equity Committee |
| Jamie O'Connell | 06/06/14 | 1.0 | Litigation Consulting | Call with counsel regarding pleading |
| Sam Levine | 06/06/14 | 1.0 | Litigation Consulting | Call with counsel regarding pleading |
| Jamie O'Connell | 06/09/14 | 1.0 | Litigation Consulting | Review draft pleading |
| Jamie O'Connell | 06/09/14 | 2.0 | Litigation Consulting | Conference call with counsel regarding pleading |
| Josh Abramson | 06/09/14 | 4.0 | Litigation Consulting | Reviewing deposition strategy documents and responses to objection |
| Sam Levine | 06/09/14 | 2.0 | Litigation Consulting | Conference call with counsel regarding pleading |
| Jamie O'Connell | 06/10/14 | 1.0 | Litigation Consulting | Review and comment on draft response to Equity Committee objection |
| Josh Abramson | 06/10/14 | 4.0 | Litigation Consulting | Reviewing deposition strategy documents and responses to objection |
| Sam Levine | 06/10/14 | 8.0 | Litigation Consulting | Preparing and reviewing analyses supporting court pleadings |
| Josh Abramson | 06/11/14 | 7.0 | Litigation Consulting | Preparing for litigation and depositions |
| Josh Abramson | 06/13/14 | 8.0 | Litigation Consulting | Meetings with Counsel on legal strategy, depositions and expert reports |
| Josh Abramson | 06/15/14 | 6.0 | Litigation Consulting | Deposition Preparation with Tim Coleman |
| Sam Levine | 06/15/14 | 6.0 | Litigation Consulting | Deposition Preparation with Tim Coleman |
| Jamie O'Connell | 06/16/14 | 6.0 | Litigation Consulting | Assist in preparation for deposition |
| Josh Abramson | 06/16/14 | 6.0 | Litigation Consulting | Meetings with Counsel |
| Josh Abramson | 06/16/14 | 6.0 | Litigation Consulting | Deposition Preparation with Tim Coleman |
| Sam Levine | 06/16/14 | 6.0 | Litigation Consulting | Meetings with Counsel |
| Sam Levine | 06/16/14 | 6.0 | Litigation Consulting | Deposition Preparation with Tim Coleman |
| Jamie O'Connell | 06/17/14 | 9.0 | Litigation Consulting | Assist in preparation for deposition |
| Josh Abramson | 06/17/14 | 6.0 | Litigation Consulting | Deposition Preparation with Tim Coleman |
| Josh Abramson | 06/17/14 | 6.0 | Litigation Consulting | Meetings with Counsel |
| Sam Levine | 06/17/14 | 6.0 | Litigation Consulting | Deposition Preparation with Tim Coleman |
| Sam Levine | 06/17/14 | 6.0 | Litigation Consulting | Meetings with Counsel |
| Jamie O'Connell | 06/18/14 | 1.0 | Litigation Consulting | Assist in preparation for deposition |
| Josh Abramson | 06/18/14 | 3.0 | Litigation Consulting | Meetings with Counsel |
| Sam Levine | 06/18/14 | 2.0 | Litigation Consulting | Meetings with Counsel |
| Josh Abramson | 06/19/14 | 5.5 | Litigation Consulting | Assist in preparation of pleading |
| Sam Levine | 06/19/14 | 5.5 | Litigation Consulting | Assist in preparation of pleading |
| Josh Abramson | 06/20/14 | 6.0 | Litigation Consulting | Assist in preparation of pleading |
| Sam Levine | 06/20/14 | 6.0 | Litigation Consulting | Assist in preparation of pleading |
| Josh Abramson | 06/22/14 | 6.5 | Litigation Consulting | Testimony preparation |
| Timothy Coleman | 06/22/14 | 8.5 | Litigation Consulting | Testimony preparation |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**HOURLY DETAILS FOR THE PERIOD OF**
**JUNE 1, 2014 THROUGH JUNE 30, 2014**

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Sam Levine | 06/23/14 | 2.0 | Litigation Consulting | Pre-trial meeting with T. Coleman and Counsel |
| Timothy Coleman | 06/23/14 | 2.0 | Litigation Consulting | Pre-trial meeting with S. Levine and Counsel |
| Josh Abramson | 06/25/14 | 2.0 | Litigation Consulting | Calls with counsel |
| | | **198.0** | | |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**HOURLY DETAILS FOR THE PERIOD OF**
**JUNE 1, 2014 THROUGH JUNE 30, 2014**

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Owen Wurzbacher | 06/27/14 | 3.0 | Litigation Strategy | Review of Legal Documents |
| | | **3.0** | | |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**HOURLY DETAILS FOR THE PERIOD OF**
**JUNE 1, 2014 THROUGH JUNE 30, 2014**

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Jamie O'Connell | 06/11/04 | 8.0 | Plan and Disclosure Statement | Prepare for testimony |
| Jamie O'Connell | 06/02/14 | 2.5 | Plan and Disclosure Statement | Meeting with counsel and management in advance of court hearing |
| Jamie O'Connell | 06/02/14 | 4.0 | Plan and Disclosure Statement | Attend June 2, 2014 court hearings |
| Sam Levine | 06/02/14 | 1.5 | Plan and Disclosure Statement | Attend June 2, 2014 court hearing (did not attend afternoon session) |
| Josh Abramson | 06/03/14 | 1.5 | Plan and Disclosure Statement | Attend June 2, 2014 court hearing (did not attend afternoon session) |
| Josh Abramson | 06/03/14 | 1.5 | Plan and Disclosure Statement | Reviewed letters submitted by various parties |
| Josh Abramson | 06/03/14 | 2.0 | Plan and Disclosure Statement | Listened to court hearings |
| Jamie O'Connell | 06/05/14 | 4.5 | Plan and Disclosure Statement | Deposition at Kramer Levin |
| Jamie O'Connell | 06/05/14 | 0.5 | Plan and Disclosure Statement | Meeting with counsel |
| Josh Abramson | 06/05/14 | 4.5 | Plan and Disclosure Statement | Deposition at Kramer Levin |
| Sam Levine | 06/05/14 | 4.0 | Plan and Disclosure Statement | Listen to Deposition of Jamie O'Connell |
| Sam Levine | 06/05/14 | 1.5 | Plan and Disclosure Statement | Review of J. O'Connell deposition transcript |
| Sam Levine | 06/06/14 | 0.5 | Plan and Disclosure Statement | Internal team call regarding various matters |
| Jamie O'Connell | 06/09/14 | 0.5 | Plan and Disclosure Statement | Call with counsel regarding declaration and other matters |
| Jamie O'Connell | 06/09/14 | 0.5 | Plan and Disclosure Statement | Review draft declaration |
| Sam Levine | 06/09/14 | 1.0 | Plan and Disclosure Statement | Internal team meeting regarding various matters |
| Sam Levine | 06/09/14 | 0.5 | Plan and Disclosure Statement | Call with counsel regarding declaration and other matters |
| Jamie O'Connell | 06/10/14 | 7.0 | Plan and Disclosure Statement | Draft declaration and related analysis and calls |
| Sam Levine | 06/10/14 | 4.0 | Plan and Disclosure Statement | Preparing and reviewing J. O'Connell Declaration |
| Jamie O'Connell | 06/12/14 | 4.0 | Plan and Disclosure Statement | Prepare for testimony |
| Jamie O'Connell | 06/12/14 | 1.0 | Plan and Disclosure Statement | Attend June 12, 2014 court hearing |
| Timothy Coleman | 06/12/14 | 3.0 | Plan and Disclosure Statement | Attend June 12, 2014 court hearing |
| Timothy Coleman | 06/16/14 | 5.5 | Plan and Disclosure Statement | Preparation for deposition |
| Timothy Coleman | 06/17/14 | 10.0 | Plan and Disclosure Statement | Preparation for deposition |
| Jamie O'Connell | 06/18/14 | 7.0 | Plan and Disclosure Statement | Deposition at Sidley Austin |
| Josh Abramson | 06/18/14 | 8.0 | Plan and Disclosure Statement | Neil Augustine Deposition |
| Sam Levine | 06/18/14 | 8.0 | Plan and Disclosure Statement | Neil Augustine Deposition |
| Timothy Coleman | 06/18/14 | 1.5 | Plan and Disclosure Statement | Preparation for deposition |
| Timothy Coleman | 06/18/14 | 7.0 | Plan and Disclosure Statement | Deposition at Sidley Austin |
| Jamie O'Connell | 06/19/14 | 5.5 | Plan and Disclosure Statement | Assist in preparation of pleading |
| Josh Abramson | 06/19/14 | 6.0 | Plan and Disclosure Statement | Morton Artzen Deposition and Meetings with counsel |
| Sam Levine | 06/19/14 | 6.0 | Plan and Disclosure Statement | Morton Artzen Deposition and Meetings with counsel |
| Timothy Coleman | 06/19/14 | 0.5 | Plan and Disclosure Statement | Internal team meeting regarding various matters |
| Jamie O'Connell | 06/20/14 | 6.0 | Plan and Disclosure Statement | Assist in preparation of pleading |
| Jamie O'Connell | 06/22/14 | 6.5 | Plan and Disclosure Statement | Testimony preparation |
| Sam Levine | 06/22/14 | 6.5 | Plan and Disclosure Statement | Testimony preparation |
| Josh Abramson | 06/23/14 | 11.0 | Plan and Disclosure Statement | Attended court hearings and meetings with counsel |
| Sam Levine | 06/23/14 | 11.0 | Plan and Disclosure Statement | Attended court hearings and meetings with counsel |
| Timothy Coleman | 06/23/14 | 11.0 | Plan and Disclosure Statement | Attended court hearings and meetings with counsel |
| Josh Abramson | 06/24/14 | 8.0 | Plan and Disclosure Statement | Attended court hearings and meetings with counsel |
| Sam Levine | 06/24/14 | 8.0 | Plan and Disclosure Statement | Attended court hearings and meetings with counsel |
| Timothy Coleman | 06/24/14 | 8.0 | Plan and Disclosure Statement | Attended court hearings and meetings with counsel |
| | | **199.0** | | |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**SUMMARY OF HOURS FOR THE PERIOD OF**
**JULY 1, 2014 THROUGH JULY 9, 2014**

| Professionals | Title | Hours |
|---|---|---|
| Timothy Coleman | Senior Managing Director | 1.5 |
| Jamie O'Connell | Senior Managing Director | 5.0 |
| Josh Abramson | Associate | 11.0 |
| Owen Wurzbacher | Analyst | 13.5 |
| **Total** | | **31.0** |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**HOURLY DETAILS FOR THE PERIOD OF**
**JULY 1, 2014 THROUGH JULY 9, 2014**

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Owen Wurzbacher | 07/01/14 | 1.0 | Business Analysis | Claim Distribution Analysis / Calls with Garden City & Kramer Levin |
| Owen Wurzbacher | 07/02/14 | 2.0 | Business Analysis | Claim Distribution Analysis |
| Jamie O'Connell | 07/03/14 | 0.5 | Business Analysis | Financial analysis with O. Wurzbacher |
| Jamie O'Connell | 07/03/14 | 0.5 | Business Analysis | Calls with counsel to review draft Form 8-K |
| Owen Wurzbacher | 07/03/14 | 0.5 | Business Analysis | Financial analysis with J. O'Connell |
| Owen Wurzbacher | 07/07/14 | 2.0 | Business Analysis | Financial analysis regarding share distribution mechanics |
| | | **6.5** | | |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**HOURLY DETAILS FOR THE PERIOD OF**
**JULY 1, 2014 THROUGH JULY 9, 2014**

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Josh Abramson | 07/02/14 | 1.5 | Case Administration | Meetings before court hearing |
| Josh Abramson | 07/07/14 | 1.0 | Case Administration | Call with Houlihan Lokey to discuss bankruptcy closing events |
| Owen Wurzbacher | 07/07/14 | 1.0 | Case Administration | Call with Houlihan Lokey to discuss bankruptcy closing events |
| Josh Abramson | 07/08/14 | 3.0 | Case Administration | Calls with counsel on various matters related to exiting bankruptcy |
| Owen Wurzbacher | 07/08/14 | 1.0 | Case Administration | Calls with counsel on various matters |
| Owen Wurzbacher | 07/08/14 | 1.0 | Case Administration | Calls with counsel on various matters |
| Owen Wurzbacher | 07/08/14 | 3.0 | Case Administration | Calls with counsel on various matters related to exiting bankruptcy |
| Josh Abramson | 07/09/14 | 2.0 | Case Administration | Calls with counsel on various matters related to exiting bankruptcy |
| Owen Wurzbacher | 07/09/14 | 2.0 | Case Administration | Calls with counsel on various matters related to exiting bankruptcy |
| | | **15.5** | | |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**HOURLY DETAILS FOR THE PERIOD OF**
**JULY 1, 2014 THROUGH JULY 9, 2014**

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Jamie O'Connell | 07/03/14 | 1.0 | Fee/Employment Applications | Review draft April / May fee application |
| | | **1.0** | | |

**BLACKSTONE ADVISORY PARTNERS L.P.**
**HOURLY DETAILS FOR THE PERIOD OF**
**JULY 1, 2014 THROUGH JULY 9, 2014**

| Professional | Date | Hours | Category | Explanation |
|---|---|---|---|---|
| Jamie O'Connell | 07/02/14 | 1.5 | Plan and Disclosure Statement | Meetings before court hearing |
| Jamie O'Connell | 07/02/14 | 1.5 | Plan and Disclosure Statement | Attended court hearing |
| Josh Abramson | 07/02/14 | 1.5 | Plan and Disclosure Statement | Attended court hearing |
| Josh Abramson | 07/02/14 | 2.0 | Plan and Disclosure Statement | Reviewed Judge Lane's ruling |
| Timothy Coleman | 07/02/14 | 1.5 | Plan and Disclosure Statement | Attended court hearing |
| | | **8.0** | | |